**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re Grand Canyon Education, Inc. Securities Litigation* | Civil Action No. 1:20-cv-00639-MN-CJB |

**DEFENDANTS' REPLY BRIEF
IN SUPPORT OF THEIR MOTION TO DISMISS**

Ronald N. Brown, III (DE Bar No. 4831)
Peter H. Kyle (DE Bar No. 5918)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
ronald.brown@dlapiper.com
peter.kyle@dlapiper.com

John L. Latham (*pro hac vice*)
Cara M. Peterman (*pro hac vice*)
Timothy J. Fitzmaurice (*pro hac vice*)
Samuel C. Feldman (*pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
john.latham@alston.com
cara.peterman@alston.com
tim.fitzmaurice@alston.com
sam.feldman@alston.com

*Counsel for Defendants*

Dated: March 22, 2021

## TABLE OF CONTENTS

Preliminary Statement................................................................................................................ 1

I.      Plaintiffs Have Not Met Their Burden of Pleading Falsity. .............................................. 2

II.     Plaintiffs Fail to Plausibly Allege Scienter. ..................................................................... 5

III.    Plaintiffs Fail to Plausibly Allege Loss Causation. .......................................................... 8

Conclusion ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990)...........................................................................................3

*Bartesch v. Cook*,
941 F. Supp. 2d 501 (D. Del. 2013)...........................................................................3, 9

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
686 F. Supp. 2d 404 (D. Del. 2009)...............................................................................8

*Gillis v. QRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016)............................................................................6

*Grigsby v. BofI Holding, Inc.*,
979 F.3d 1198 (9th Cir. 2020) .....................................................................................10

*In re DVI, Inc. Sec. Litig.*,
No. 2:03-cv-05336, 2010 U.S. Dist. LEXIS 92888 (E.D. Pa. Sept. 3, 2010)...............9

*In re Wilmington Trust Securities Litigation*,
29 F. Supp. 3d 432 (D. Del. 2014).................................................................................9

*Institutional Investors Group v. Avaya Inc.*,
564 F.3d 242 (3d Cir. 2009)...........................................................................................8

*Labreck v. Bank of Am., N.A.*,
No. 17-015-RGA, 2018 U.S. Dist. LEXIS 206847 (D. Del. Dec. 7, 2018)...............7, 9

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) .........................................................................................9

*Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*,
720 F. Supp. 2d 517 (D.N.J. 2010) .............................................................................8, 9

*Noble Asset Mgmt. v. Allos Therapeutics, Inc.*,
No. 04-cv-1030-RPM, 2005 U.S. Dist. LEXIS 24452 (D. Colo. Oct. 20, 2005) ........4

*Sanofi Secs. Litig. v. Meeker*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015)..........................................................................4, 6

*Skiadas v. Acer Therapeutics Inc.*,
No. 1:19-cv-6137-GHW, 2020 U.S. Dist. LEXIS 129104 (S.D.N.Y. July 21,
2020) ................................................................................................................................7

*Spitzberg v. Hous. Am. Energy Corp.*,
   758 F.3d 676 (5th Cir. 2014) ...........................................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).....................................................................................................5, 7

*Winer Family Trust v. Queen*,
   503 F.3d 319 (3d Cir. 2007)........................................................................................2, 3

## PRELIMINARY STATEMENT

Defendants established in their Motion to Dismiss ("MTD" or "Motion") (DCKT #37) that:

➢ The alleged misstatements serving as the basis for Plaintiffs' claims were neither false nor misleading – the University[1] is a separate institution owned and operated by a non-profit entity, pursuant to a change-in-control Transaction *that the DOE reviewed and approved*, and the Company's proper accounting of its contractual relationship with the University has been reviewed, and never questioned, by its outside auditors and the SEC;

➢ Plaintiffs failed to establish a cogent theory of scienter, where (a) the IRS (applying the same legal test as the DOE) determined that the University is a non-profit entity, and (b) Plaintiffs proffered no logical rationale for an alleged scheme that Defendants purportedly perpetrated over multiple years and at significant cost, knowing that it would shortly be revealed to the market; and

➢ Plaintiffs failed to plausibly allege loss causation, because they did not show that the only two "corrective disclosures" alleged in the Complaint revealed any purported fraud on the market.

In response, Plaintiffs concede that Defendants' statements regarding the University's independence and its non-profit status were "literally *true*" (Pl.'s Memo. of Law in Opp. to Defendants' MTD (the "Opp." or "Opposition") at 8, 12 (emphasis added) (DCKT #43)), and they have not established that Defendants omitted any material information required to make those or any other alleged misstatements not misleading. The Opposition otherwise completely abandons Plaintiffs' sole theory of scienter: that the University's application to participate in Title IV as a

---

[1] Except as set forth herein, defined terms shall have the same meaning as in the Motion.

non-profit was so obviously deficient that Defendants must have known the DOE would deny it in short order. Plaintiffs' new theory that Defendants unsuccessfully "gambled" on a positive DOE determination, however, similarly does not establish the requisite scienter. Finally, Plaintiffs' novel loss causation arguments are not supported by Third Circuit precedent and should be rejected.

The Complaint failed to establish the requisite elements of a fraud claim under the PSLRA or Third Circuit precedent, and Plaintiffs' Opposition cannot salvage their claims. The Complaint should be dismissed in its entirety.

## I.       Plaintiffs Have Not Met Their Burden of Pleading Falsity.

The PSLRA requires a plaintiff to, among other things, "specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity." *Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007). Plaintiffs fail to meet these requirements.

Critically, Plaintiffs concede – as they must – that (a) pursuant to the terms of the Transaction approved by the DOE, GCE no longer owns the University and instead operates as a third-party educational service provider to both the University and numerous other university partners;[2] and (b) the University was and is a non-profit entity under the federal tax code and the laws of the State of Arizona. Defendants' statements regarding these indisputable facts are, therefore, "literally *true*." (Opp. at 8 (emphasis added).) Plaintiffs now attempt to recast their

---

[2] Moreover, as Defendants noted in the Motion, and as Plaintiffs do not now dispute, (a) the University is managed by an independent Board of Trustees; (b) upon the close of the Transaction, all of the University's faculty, academic leadership and related academic staff – approximately 7,400 full or part-time employees – transferred their employment from GCE to the University; and (c) no employee other than Mr. Mueller is dually employed by both entities, and Mr. Mueller's dual employment was disclosed to GCE stockholders and the DOE. (MTD at 13-14; *see also* GCE, Current Report (Form 8-K), at 4 (July 2, 2018).)

2

theory of falsity and amend their Complaint by asserting that Defendants failed to provide "complete information" regarding the University's independence and non-profit status, and they should be held liable for fraud under the federal securities laws as a result.  (Opp. at 8).

The facts that Plaintiffs now allege demonstrate the University's purported lack of independence and resulting inability to qualify as a non-profit under Title IV, however, were repeatedly disclosed to the market.  (Opp. at 7-8 (arguing that GCU's independence was "illusory" based on the parties' fee arrangements).)  Plaintiffs do not dispute, for instance, that the MSA which established the contractual relationship between GCE and the University was publicly filed with the SEC, and that throughout the relevant time period, GCE disclosed the services that it would provide to and fees it would receive from the University, including fees payable upon early termination of the contract.  (Compl. ¶ 58.)[3]  As this Court has held, "there can be no Section 10(b) claim" when "the alleged omissions are contradicted by the company's public disclosures." *Bartesch v. Cook*, 941 F. Supp. 2d 501, 508 (D. Del. 2013).[4]

In any event, the duty to disclose "does not mean that by revealing one fact . . . one must reveal all others that, too, would be interesting, market-wise, but means only such others, if any, that are needed so that what was revealed would not be so 'incomplete as to mislead.'" *Winer Family Trust*, 503 F.3d at 330 (quoting *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990)).  To the extent, therefore, that Defendants did not publicly detail which specific members

---

[3] *See also* GCE, Current Report (Form 8-K) (February 21, 2018); GCE, Current Report (Form 8-K) (July 2, 2018); GCE, Quarterly Report (Form 10-Q) Ex. 2.1 (November 8, 2018).

[4] Plaintiffs' claims based on Defendants' generic comparison between the structure of the Transaction and other similarly-structured transactions likewise must fail, because the facts that Plaintiffs assert rendered the comparison false or misleading were disclosed in GCE's public filings.  (*See* Opp. at 11 (alleging that analogies to the Purdue-Kaplan change-in-control transaction were false and misleading due to differences in the parties' fee structures and because Mr. Mueller was dually employed by both GCE and the University, facts that were disclosed to the market).)

3

of the Company's pre-Transaction "Executive Leadership team" would remain with GCE and continue to support the University as its third-party service provider, rather than become employees of the University, such purported omissions do not render false or misleading the concededly true statement that the University operates as a "separate non-profit entity under the control of an independent board of trustees and independent management." (Compl. ¶ 182.)[5]

Plaintiffs likewise cannot credibly argue that Defendants' isolated statements regarding the DOE's pre-acquisition review of the Transaction are actionable. The Complaint alleges that it was false and misleading for Defendants to state that "any regulatory limitations, such as a letter of credit or growth restrictions, that [the DOE] may choose to impose… could be managed." (Opp. at 9; Compl. ¶ 187.) The DOE, however, **approved** the Transaction and **did not impose any such regulatory limitations**. (MTD at 4 (citing Compl. Ex. A).) The statements were, therefore, neither false nor misleading. Moreover, the non-disclosure of the DOE's routine requests for information does not amount to a material omission. *See, e.g.*, *Sanofi Secs. Litig. v. Meeker*, 87 F. Supp. 3d 510, 541-42 (S.D.N.Y. 2015) ("[C]ourts have rejected claims of material omissions where pharmaceutical companies did not reveal procedural or methodological commentary, or other interim status reports, received from the FDA as to drugs under review."), *aff'd*, 816 F.3d 199 (2d Cir. 2016); *Noble Asset Mgmt. v. Allos Therapeutics, Inc.*, No. 04-cv-1030-RPM, 2005 U.S. Dist. LEXIS 24452, at *21-22 (D. Colo. Oct. 20, 2005) ("The fact that the FDA staff members raised questions did not impose a duty upon the defendants . . . to report to the public the substance of their conversations with the FDA.").

---

[5] Plaintiffs' allegation that Defendants made false and misleading statements regarding the increase in enrollments at the University, by failing to disclose purported "abusive recruitment strategies," must fail for this reason as well. (*See, e.g.*, Compl. ¶ 226.)

4

Finally, Plaintiffs' GAAP-related claims are dependent on and flow from their flawed allegations that the University was not a "true" non-profit entity, despite the fact that the IRS has determined otherwise, and that the University was not "independent" from GCE.  (Opp. at 11-12; Compl. ¶¶ 145, 152, 155.)  Plaintiffs, however, have not alleged and cannot allege that the proper accounting of GCE's financial results under GAAP is or should be based on the DOE's separate and unrelated determination of whether the University is entitled to participate in Title IV as a non-profit institution.   Indeed, throughout the relevant period, GCE's independent auditor provided its unqualified opinion that GCE's financial statements complied with GAAP.[6] Plaintiffs' GAAP-related claims fail accordingly.

## II.     Plaintiffs Fail to Plausibly Allege Scienter.

Under the Supreme Court precedent cited in Plaintiffs' Opposition, the Court "must consider, not only inferences [of scienter] urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged. . . . To qualify as 'strong' [under the PSLRA] . . . an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314 (2007).  The Complaint attempts to meet this exacting standard by alleging that the Transaction was so violative of "the most basic tenant of non-profit status," that Defendants *knew* it would not and could not withstand DOE scrutiny, but nevertheless embarked on an allegedly fraudulent scheme to convince the market otherwise.  (Compl. ¶¶ 5,

---

[6] GCE, Annual Report (Form 10-K), at 60 (February 17, 2021) ("In our opinion, the consolidated financial statements present fairly, in all material respects, the financial position of the Company as of December 31, 2020 and 2019, and the results of its operations and its cash flows for each of the years in the three-year period ended December 31, 2020, in conformity with U.S. generally accepted accounting principles."); GCE, Annual Report (Form 10-K), at 55 (February 20, 2020) (same for 2019 and 2018); GCE, Annual Report (Form 10-K), at 61 (February 20, 2019) (same for 2018 and 2017).

232.)  As Defendants established in their Motion, however, the Complaint offers no rationale for an alleged fraud purportedly conducted over several years and at significant cost to GCE, which – under Plaintiffs' own theory – Defendants knew would soon be revealed by the DOE's decision. (MTD at 9.)  "Courts regularly refuse to infer scienter . . . when confronted with [such] illogical allegations."  *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600-02 (S.D.N.Y. 2016); MTD at 6-8.  Plaintiffs do not credibly argue otherwise.[7]

Plaintiffs do not even attempt to address the compelling facts set forth in the Motion establishing *nonfraudulent* intent, including that the IRS, the Arizona tax authorities, the University's institutional accreditors, the Arizona State Board, and the NCAA have all confirmed the University's non-profit status.  (MTD at 2-3.)  And, as Plaintiffs allege, the DOE's test for non-profit participation in Title IV "mirrored" the test that had already been favorably applied by the IRS.  (Compl. ¶ 60.)  Defendants, therefore, had no reasonable basis to believe that the DOE would not reach the same conclusion as the IRS and permit the University to participate in Title IV as a non-profit.  Plaintiffs' competing theory – that even in the face of the IRS's determination, Defendants understood that the Transaction violated "the most basic tenant of non-profit status" – is neither cogent nor compelling.[8]

---

[7] Plaintiffs make a half-hearted attempt to distinguish the controlling precedent cited in the Motion as involving "allegations that defendants knew their alleged schemes could not succeed." (Opp. at 18 n.9.)  Plaintiffs' argument, however, only confirms the applicability of those cases here, where the Complaint similarly alleges that "Defendants *knew*" the University "did not satisfy the DOE's requirement for non-profit status."  (Compl. ¶ 5 (emphasis added).)

[8] Similarly, in the face of these indisputable facts, the DOE's routine inquiries into the Transaction are insufficient to demonstrate that Defendants knew the DOE would not approve the University's participation in Title IV as a non-profit.  *Sanofi Secs. Litig.*, 87 F. Supp. 3d at 550 (holding that the FDA's "interim feedback" on a drug that the agency ultimately did not approve was insufficient to establish a strong inference of scienter.)

6

Plaintiffs now seek to proffer an alternative, unpled theory that "Defendants 'gambled' by misrepresenting that DOE approval of GCU's non-profit status was virtually certain . . . when they knew facts suggesting the outcome of that process was far from guaranteed."  (Opp. at 17.)[9] "While Plaintiff[s] may have decided to change [their] theory of the case after reviewing Defendants' motion to dismiss, [they] may not amend [their] complaint through [their] opposition to the motion to dismiss."  *Labreck v. Bank of Am., N.A.*, No. 17-015-RGA, 2018 U.S. Dist. LEXIS 206847, at *10 (D. Del. Dec. 7, 2018).  Accordingly, and on this basis alone, Plaintiffs' novel "gamble" theory fails.[10]

Even accepting the unpled theory, Plaintiffs have not and cannot establish a "strong inference" of scienter, one that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs,* 551 U.S. at 314.  In the only two cases that Plaintiffs cite in support of their novel "gamble" theory, the plaintiff at a minimum plausibly alleged *why* an inference that defendants "gambled" was compelling.  *See Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 686 (5th Cir. 2014) (finding that "[b]ased on . . . pressure from the media and regulators, Defendants[] may have felt the need to substantiate the allegedly irresponsible statements they had made previously"); *Skiadas v. Acer Therapeutics Inc.*, No. 1:19-cv-6137-GHW, 2020 U.S. Dist. LEXIS 129104, at *21 (S.D.N.Y. July 21, 2020) (the defendants deliberately misrepresented that the FDA agreed that it would approve a drug, in order to "keep the company afloat").  By contrast, here, Plaintiffs offer no cogent theory for why Defendants would be motivated to take a significant

---

[9] Defendants dispute that they ever represented that the DOE's approval of the University's participation in Title IV as a non-profit entity was "virtually certain."  *See supra* at 4 (noting that Plaintiffs' claims are based on a statement that "any regulatory limitations, such as a letter of credit or growth restrictions, that [the DOE] may choose to impose. . . could be managed.").

[10] Moreover, while Plaintiffs assert that their "gamble" theory of scienter is "longstanding and widely recognized," they do not cite to a single Third Circuit decision that has applied the theory, and there is no basis for this Court to adopt it for the first time here.  (Opp. at 17-18.)

7

"gamble" and purportedly misrepresent the "virtual certainty" of DOE approval.  (Opp. at 17.)  As set forth in the Motion – and as unaddressed in the Opposition – Plaintiffs do not allege that (a) the Individual Defendants attempted to personally benefit from their purported scheme or (b) the University was at risk of non-compliance with the DOE's regulations specific to for-profit entities, nor could they.  (MTD at 9, n. 9.)[11]

Finally, Plaintiffs claim that Defendants were "on notice" of the alleged GAAP violations (Opp. at 16), but a strong inference of scienter requires allegations that Defendants "*knew* that their alleged . . . practices violated GAAP but ignored it."  *Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*, 720 F. Supp. 2d 517, 557 (D.N.J. 2010) (emphasis added); (MTD at 12.)  Here, it is undisputed that there are no such allegations in the Complaint.

## III.    Plaintiffs Fail to Plausibly Allege Loss Causation.

Finally, the Complaint should be dismissed because it does not plausibly allege loss causation.  The Complaint attempts to plead this requisite element of a claim under the PSLRA based solely on purported "corrective disclosures" published on November 6-7, 2019 and January 28, 2020.  (Compl. ¶¶ 234-37.)  As Defendants demonstrated in their Motion, however, those announcements are not, as a matter of law, corrective disclosures.[12]  (MTD at 18-20.)

---

[11] To the extent Plaintiffs continue to assert that the Individual Defendants' experience in higher education or the centrality of the University to GCE's business are sufficient to establish scienter (commonly referred to as the "core operations" theory), Plaintiffs must nevertheless plead "*particularized* allegations showing that defendants had ample reason to know of the falsity of their statements." *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 423 (D. Del. 2009) (quotations and citation omitted) (emphasis added), *aff'd*, 442 F. App'x 672 (3d Cir. 2011).  Plaintiffs have failed to do so for the reasons set forth above, and, as such, the Third Circuit's decision in *Institutional Investors Group v. Avaya Inc.*, 564 F.3d 242 (3d Cir. 2009) is not applicable.

[12] It is undisputed that neither of those alleged corrective disclosures revealed the falsity of the alleged misstatements "regarding the sources of GCE's success," which are based solely on alleged statements by former employees that were revealed for the first time in the Complaint. (MTD at 19 n.21.)  At a minimum, therefore, those allegations should be dismissed.

On November 6-7, 2019, GCE announced that the DOE approved the Transaction but would continue to treat the University as a for-profit entity for purposes of Title IV. (Compl. ¶¶ 159-60.) That announcement did not disclose any purported fraudulent scheme, and Plaintiffs do not argue otherwise in their Opposition. (MTD at 19.) Thus, GCE's announcement of the DOE's decision is not a corrective disclosure. *Nat'l Junior Baseball League*, 720 F. Supp. 2d at 559 (to plausibly allege loss causation, "plaintiff is required to plead that the decline in the stock price was caused by the market's discovery of defendant's fraud"); *In re DVI, Inc. Sec. Litig.*, No. 2:03-cv-05336, 2010 U.S. Dist. LEXIS 92888, at *88 (E.D. Pa. Sept. 3, 2010) (if an announcement does not reveal the alleged fraud, it "is not a 'corrective disclosure' because the resulting share price decline does not necessarily dissipate the particular price inflation caused by the alleged fraud") (quotations and citation omitted)).

Acknowledging as much, Plaintiffs now pivot and assert that GCE's announcement of the DOE's decision adequately pleads loss causation under a "materialization of a concealed risk" theory.[13] (Opp. at 18-19.) As this Court has held, however, "[t]he Third Circuit has not adopted the 'materialization of risk' test" and "instead, requires that there have been corrective disclosures that *exposed the alleged fraud*. Thus, the absence of any allegation of a corrective disclosure warrants dismissal" of a Section 10(b) claim. *Bartesch*, 941 F. Supp. 2d at 512 (emphasis added).[14] Accordingly, Plaintiffs' argument fails.

---

[13] The Complaint explicitly pled a theory of loss causation based on two corrective disclosures (Compl. ¶ 234), and Plaintiffs may not now amend their Complaint through the Opposition. *Labreck*, 2018 U.S. Dist. LEXIS 206847, at *10.

[14] Plaintiffs cite *In re Wilmington Trust Securities Litigation*, 29 F. Supp. 3d 432 (D. Del. 2014), but in that case, "plaintiffs . . . alleged corrective disclosures." *Id*. at 450; (Opp. at 19.) Plaintiffs also claim that loss causation can be pled "[e]ven if the announcement of the DOE's decision did not reveal the full extent of Defendants' fraud," but that argument relies on the materialization of the risk theory that has not been adopted in the Third Circuit. (Opp. at 19 (citing *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018).)

9

Citron Research's January 28, 2020 "short report" also cannot be a corrective disclosure because, as Defendants demonstrated in their Motion, it was based solely on "information . . . obtained from public sources," and it did not, therefore, disclose new information to the market. (MTD at 19-20.)  In response, Plaintiffs argue that the Citron report is nevertheless a corrective disclosure because it "was based on 870 pages of previously undisclosed information Citron had received via its FOIA request." (Opp. at 20.)  Plaintiffs, however, cite no Third Circuit authority – and Defendants are not aware of any such authority – in support of their argument that information supplied in response to a FOIA request, which is available to anyone who makes such a request, can constitute a corrective disclosure.  Moreover, the single Ninth Circuit authority cited by Plaintiffs held only that information received via a FOIA request *may* be used to plead loss causation *if* it is corrective. *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1206-07 (9th Cir. 2020). Here, however, Plaintiffs do not identify any allegedly corrective information that was derived from the documents Citron purportedly obtained via a FOIA request.

## CONCLUSION

As set forth above, Plaintiffs have abandoned the theories of falsity, scienter, and loss causation alleged in the Complaint, and now improperly attempt to replead their claims through the Opposition.  Even accepting their novel arguments, however, Plaintiffs allege a wholly implausible, illogical and unsupported claim of wrongdoing.  Critically, there is no cogent basis to infer that Defendants "knew" the DOE would reach a different conclusion than every other regulator and accreditor, all of whom determined that the University was a non-profit entity. Accordingly, the claims should be dismissed in their entirety.

10

Respectfully submitted this 22nd day of March, 2021.

/s/ Ronald N. Brown, III

Ronald N. Brown, III (DE Bar No. 4831)
Peter H. Kyle (DE Bar No. 5918)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
ronald.brown@dlapiper.com
peter.kyle@dlapiper.com

John L. Latham (*pro hac vice*)
Cara M. Peterman (*pro hac vice*)
Timothy J. Fitzmaurice (*pro hac vice*)
Samuel C. Feldman (*pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
john.latham@alston.com
cara.peterman@alston.com
tim.fitzmaurice@alston.com
sam.feldman@alston.com

*Counsel for Defendants*