# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

ATTORNEYS AT LAW

NEW YORK • CALIFORNIA • ILLINOIS • LOUISIANA • DELAWARE

The Honorable Christopher J. Burke
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street, Unit 28, Room 2325
Wilmington, DE 19801-3555

June 2, 2021

Re:  *In re Grand Canyon, Inc. Securities Litigation*
     Civil Action No. 20-639-MN-CJB

Dear Judge Burke:

Lead Plaintiffs write in response to Defendants' May 28, 2021 letter (the "Letter") (Dkt. 48) regarding extrinsic documents cited by Defendants in their Memoranda of Law in Support (Dkt. 37) and Further Support (Dkt. 44) of their Motion to Dismiss.  As set forth below, Defendants cite to three exhibits that post-date the Consolidated Complaint (Dkt. 34) (the "Complaint"), which may not be judicially noticed for their truth under governing Third Circuit law.  Moreover, Defendants' citations to documents actually incorporated into the Complaint directly contradict their arguments in favor of dismissal, making it clear that highly material information refuting the University's purported nonprofit status was ***redacted from and not included in public filings***.

The Third Circuit has emphasized that, "[a]s a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see Brody v. Hankin*, 145 F. App'x 768, 772 (3d Cir. 2005) (the plaintiffs "did not mention information from that document in their complaint, and as such it was off-limits to the District Court").  Judicial notice represents a narrow exception to this rule.[1]  Although a District Court may judicially notice SEC filings and related public disclosures, *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002), those documents cannot be offered "to prove the truth of their contents but only to determine what the documents stated." *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000).[2]  Similarly, courts routinely decline to take judicial notice of documents from unrelated litigations. *See In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 754 (E.D. Pa. 2014) (defendants' request that the court judicially notice

---

[1] The judicial notice exception is narrow for good reason: "[T]he unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery," a risk that is heightened in securities fraud litigation "where there is a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access." *Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 329 (E.D. Pa. 2020) (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-99 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2615 (2019)).

[2] *Bartesch v. Cook*, 941 F. Supp. 2d 501 (D. Del. 2013) (*cited at* Dkt. 37 at 2 n.2), which cites *In re NAHC, Inc. Sec. Litig.*, is in accord.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
The Honorable Christopher J. Burke
Page 2

pleadings from a separate litigation "to find a fact in dispute" is a "plainly improper use of the [judicial notice] doctrine").

### I.  Documents Not Incorporated in the Complaint Should Not Be Considered

These principles foreclose the Court from considering Exs. 9-11.  *First*, Defendants admit that these exhibits were not cited or referred to in the Complaint (including two that were not even cited in Defendants' briefing).  *See* Letter at 3 ("Complaint ¶ N/A.").  *See, e.g., Brody*, 145 F. App'x at 772 (lower court examining documents from unrelated litigation to find facts "converts a motion to dismiss into a motion for summary judgment").  *Second*, at oral argument, Defendants cited to a complaint and answer in an entirely separate litigation (Exs. 10, 11) that post-dates the conduct at issue and is beyond the four corners of the Complaint.³  *See, e.g., Price v. Foremost Indus., Inc.*, 2017 WL 6596726, at *5 (E.D. Pa. Dec. 22, 2017) ("A court may take judicial notice of a document filed in another court ***not for the truth of the matters asserted in the other litigation***, but rather to establish the fact of such litigation and related filings.") (emphasis added); *In re Niaspan, supra*.  *Third*, Defendants referred to the Company's later-filed 2020 Form 10-K (Ex. 9) in attempting to establish their belief that GCE's financial statements were compliant with GAAP.  *See* Reply Br. at 5 & n.6 ("GCE's independent auditor provided its unqualified opinion that GCE's financial statements complied with GAAP.").  Not only is it impermissible to use "facts" set forth within an SEC filing to resolve a motion to dismiss (*Oran*, 226 F.3d at 289), the suggestion to do so here is particularly baseless given that the auditor's purported clean audit opinion post-dated ***material changes in the Company's conversion agreement following its rejection by the Department of Education***.

Defendants' motion papers also cited to documents that are not included in Defendants' chart of cited documents or attached to their Letter.  For example, Defendants' Motion cites to the State of Arizona and IRS websites purportedly "demonstrating the University's not-for-profit status" (MTD at 2 n.3); the DOE's website purportedly demonstrating the University's cohort default rate (MTD at 9 n.9); and the University's web page on the Arizona Corporation Commission (*see* MTD at 2 n.3).  Contrary to Defendants' suggestion on page 2 of their Letter, none of these extrinsic documents, which were not incorporated by reference, may be considered as to the truth of the Company's non-profit status or any other facts in dispute.⁴  *See McMahon v. General Dynamics Corp.*, 933 F. Supp. 2d 682, 686 (D.N.J. 2013) (courts may only take judicial

---

³ Defendants offer these documents to establish facts that are in dispute.  *See* Letter at 2 ("[T]he DOE admitted … that it 'did not inform" the University of "potential problems with the Transaction . . . ."); *cf.* Compl. ¶68 ("[T]he DOE was not inclined to rubber-stamp the Conversion and in fact had serious questions about the independence of [the University] from the Company.").

⁴ Even if the State of Arizona's determination that the University was a non-profit could be considered for its truth, it would be nonsensical to credit any such determination because "Arizona law does not require separate approval to operate as a nonprofit."  DOE Letter at 10.  Defendants appear to have abandoned their claim that the NCAA and "Arizona tax authorities" determined that the University was a nonprofit (*see* MTD at 2-3; Reply at 6), since they do not point to a single document in support of this assertion.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
The Honorable Christopher J. Burke
Page 3

notice of public records for their existence, not for their truth).[5] And in any event, they only serve to highlight the fact-intensive nature of the disputes regarding what information Defendants provided to various regulators.

## II. The Documents Incorporated by Reference Support Lead Plaintiffs' Claims

The documents that the Complaint does incorporate actually support Lead Plaintiffs' arguments. For instance, the documents Defendants provided the Court make clear that the sources of the Services Fee paid to the Company under the MSA—a key fact the DOE relied on in denying the University's application for non-profit status (*see* DOE Letter at 3, 13-14)—were ***redacted*** from Defendants' public filings, despite Defendants' argument to the contrary:

**EXHIBIT D**

**PRICING AND PAYMENT TERMS; OTHER AGREEMENTS**

**1. University Adjusted Gross Revenue.**

For purposes of this Agreement, University adjusted gross revenue ("*University Adjusted Gross Revenue*") consists of all revenue received by University or its Affiliates in respect of the following (in each case net of refunds and scholarships actually granted by University to its students to the extent accounted for as a discount to tuition):

[***]

Confidential Treatment has been requested for the redacted portions of this agreement. The redactions are indicated with three asterisks [***]. A complete version of this agreement has been filed separately with the Securities and Exchange Commission.

*Compare* Reply at 3 (wrongly stating that "GCE disclosed the services that it would provide to and fees it would receive from the University" *with* Ex. 5 at 61; *see also* redactions at 45-46). Notably, this was the same information withheld from the Company's advisors, Barclays and Deloitte, during the Class Period. *See* Compl. ¶¶104-05; 108-09. Nor do Defendants point to a single document disclosing that 75% of the University's Executive Leadership Team would remain employed by the Company (*see* Compl. ¶112). Accordingly, those documents actually incorporated into the Complaint support its allegations and weigh strongly against dismissal.

Lead Plaintiffs appreciate the Court's consideration of this matter.

Respectfully Submitted,

*/s/ Gregory V. Varallo*
Gregory V. Varallo

---

[5] The University's "cohort default rate"—a concept mentioned nowhere in the Complaint—is in any event irrelevant to the motion to dismiss. As discussed during the hearing, the University had substantial motivation to undertake the gamble that the DOE would approve its application, including that (a) for-profit universities were in decline (Compl. ¶¶28-30), (b) the substantial marketing advantages that accrue to non-profit universities (Compl. ¶¶31-33), and (c) the opportunity to dramatically inflate its profit margins (Compl. ¶¶87-88).

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
The Honorable Christopher J. Burke
Page 4

| | |
|---|---|
| **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**<br>Hannah G. Ross<br>Katherine M. Sinderson (*pro hac vice*)<br>Robert Kravetz (*pro hac vice*)<br>Michael M. Mathai (*pro hac vice*)<br>Benjamin W. Horowitz (*pro hac vice*)<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 554-1400<br>Facsimile: (212) 554-1444<br>hannah@blbglaw.com<br>katiem@blbglaw.com<br>robert.kravetz@blbglaw.com<br>michael.mathai@blbglaw.com<br>benjamin.horowitz@blbglaw.com<br><br>*Counsel for Lead Plaintiffs*<br>*and the Lead Counsel for the Class* | **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**<br>Gregory V. Varallo (Bar No. 2242)<br>500 Delaware Avenue, Suite 901<br>Wilmington, DE 19801<br>Telephone: (302) 364-3601<br>greg.varallo@blbglaw.com<br><br>*Counsel for Lead Plaintiffs*<br>*and the Lead Counsel for the Class* |
| **BARRACK, RODOS & BACINE**<br>Jeffrey W. Golan (*pro hac vice*)<br>Robert A. Hoffman<br>Jeffrey B. Gittleman (*pro hac vice*)<br>Chad A. Carder (*pro hac vice*)<br>Meghan J. Talbot<br>3300 Commerce Square<br>2001 Market Street<br>Philadelphia, PA 19103<br>Telephone: (215) 963-0600<br>Facsimile: (215) 963-0838<br>jgolan@barrack.com<br>rhoffman@barrack.com<br>jgittleman@barrack.com<br>ccarder@barrack.com<br>mtalbot@barrack.com<br><br>*Counsel for Lead Plaintiffs*<br>*and Lead Counsel for the Class* | **VANOVERBEKE, MICHAUD & TIMMONY, P.C.**<br>Aaron L. Castle (*pro hac vice*)<br>79 Alfred Street<br>Detroit, MI 48201<br>Telephone: (313) 578-1200<br>Facsimile: (313) 578-1201<br>acastle@vmtlaw.com<br><br>*Additional Counsel for Lead Plaintiffs*<br>*Oakland County Employees' Retirement*<br>*System and Oakland County Voluntary*<br>*Employees' Beneficiary Association Trust* |