# Exhibit 2

**Archived:** Monday, November 8, 2021 11:17:28 AM
**From:** Karen L. Peterson
**Mail received time:** Tue, 20 Feb 2018 22:08:57
**Sent:** Wed, 21 Feb 2018 05:08:36
**To:** Barbara Gellman-Danley
**Cc:** Linnea Stenson Samuel D. Kerr Robert Rucker Michael.Frola@ed.gov sfinley@ed.gov Brian Mueller Jennifer Lech Dan Bachus Stan Meyer broberts@gcu.edu Hank Radda
**Subject:** K Peterson Conflict of Interest Correspondence
**Importance:** Normal
**Sensitivity:** None
**Attachments:**
K Peterson Ltr to Pres Barbara GellmanDanley Re GCU Conflict of Int 2-19-18.pdf;

---

All,

Please see enclosed correspondence.

Best regards,


Karen Peterson
Executive Vice President for Legal and Governmental Affairs
HLC

*The information contained in this communication is confidential and intended only for the use of the recipient named above, and may be legally privileged and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please resend it to the sender and delete the original message and copy of it from your computer system. Opinions, conclusions and other information in this message that do not relate to our official business should be understood as neither given nor endorsed by the organization.*



230 South LaSalle Street, Suite 7-500
Chicago, IL 60604-1411
312.263.0456  |  800.621.7440
Fax: 312.263.7462  |  hlcommission.org

February 19, 2018

VIA ELECTRONIC MAIL

Dr. Barbara Gellman-Danley
President
Higher Learning Commission
230 South LaSalle Street, Suite 7-500
Chicago, IL 60604-1411

Dear President Gellman-Danley:

I am writing to memorialize our conversation on Thursday, August 3, 2017.  In that conversation, I explained that I would need to recuse myself from reviewing any aspect of any forthcoming transaction related to Grand Canyon University ("GCU").  As you may recall I indicated that I had a friendship with a GCU senior staff member that may prevent my being an objective, rigorous and impartial reviewer on behalf of the Commission.  I outlined measures I had identified to assure that any such review was conducted appropriately and rigorously for the Commission.

In particular, I identified a peer reviewer, Mr. Sam Kerr, who has extensive experience as a Commission peer reviewer and lawyer, now partially retired and in private practice with Lynn, Jackson, Schultz, and Lebrun, PC, in Rapid City, South Dakota to take on my role in any such review.  He had recently agreed to take on an adjunct staff role in Legal & Governmental Affairs.  I noted that he would, in keeping with our regular practice in such reviews, work with the staff liaison, Dr. Linnea Stenson, Vice President for Accreditation Relations, to conduct the analysis of the transaction against the five Change of Control Factors and produce documentation of the analysis as per usual.  (I had previously informed Dr. Stenson of this conflict of interest on May 22, 2017 prior to scheduled meetings with Western International University in Phoenix.)  The Board of Trustees would receive this documentation, along with any institutional response and a copy of the pre-acquisition review letter produced by the U.S. Department of Education as required by Commission policy changes effective in February 2017 that required the institution under review to produce such documentation when the pre-acquisition was required by the terms of the transaction, which it would most likely have been in this and similar transactions.  As required by the Commission policy on Change of Control, Structure or Organization, the Board of Trustees would continue to make the final decision in this case.

With your consent, I subsequently met with Mr. Kerr in Pittsburgh on August 22, 2017 prior to our conducting the Fact-Finding Visit for the transaction in which the Dream Center Foundation acquired certain assets of Education Management Corporation (EDMC).  Mr. Kerr agreed to accept the assignment and work with Dr. Stenson to conduct the review.  I advised Mr. Kerr that he and Dr. Stenson might consider abbreviating some aspects of the Fact-Finding Visit process as the current Change of Control review was an extension of the previous review conducted in Fall 2015 in which a full Fact-Finding Visit was conducted with limited findings about the institution's current compliance with the Criteria for Accreditation, and GCU had subsequently undergone a full comprehensive evaluation in December 2016 with no findings.  However, I advised Mr. Kerr that he and Dr. Stenson should make the final determination about whether a more limited desk review, as allowed by the Change of Control policy, would be appropriate

President Barbara Gellman-Danley
Higher Learning Commission
February 19, 2018
Page two

in light of the extensive evaluation conducted by the Commission of the institution within the past three years.

I further formally notified Dr. Brian Mueller, President of GCU and Dr. Jennifer Lech, Senior Vice President for Academic Affairs and University Registrar and the Commission Accreditation Liaison Officer for GCU with copies to Dr. Stenson and Mr. Robert Rucker of my recusal. I asked all parties not to copy me on any further internal or external correspondence related to this matter. Dr. Lech acknowledged my e-mail on November 26, 2017. To my knowledge I have received no such correspondence subsequent to that date. I have attached a copy of that e-mail thread.

I have had no further formal involvement in this case.

The Shared Services Guidelines were produced by ad hoc committee of the Commission Board of Trustees for which I provided staff input and direction based on my experience with transactions involving these structures. I have enclosed a copy of the letter provided to President Mueller explaining the new guidelines and on which I am copied concluding my involvement in their production and application.

Sincerely,

Karen L. Peterson
Executive Vice President, Higher Learning Commission

Enclosures

cc:

Mr. Steve Finley, Associate General Counsel, Office of General Counsel, U.S. Department of Education
Mr. Michael Frola, Director, Multi-Regional and Foreign School Participation Division, U.S. Department of Education
Dr. Linnea Stenson, Vice President for Accreditation Relations, and Director/AQIP Pathway, Higher Learning Commission
Mr. Sam Kerr, Adjunct Staff Member, Legal & Governmental Affairs, and Partner, Lynn, Jackson, Schultz and Lebrun
Mr. Robert Rucker, Research Associate, Legal & Governmental Affairs, Higher Learning Commission
Ms. Sarah Byrne, Human Resources Director, Higher Learning Commission
Dr. Brian Mueller, President, Grand Canyon University
Dr. Jennifer Lech, Senior Vice President of Academic Affairs/University Registrar, Grand Canyon University
Mr. Dan Bachus, Chief Financial Officer, Grand Canyon University
Dr. Stan Meyer, Chief Operating Officer, Grand Canyon University
Mr. Brian Roberts, General Counsel, Grand Canyon University
Dr. Hank Radda, Provost, Grand Canyon University

President Barbara Gellman-Danley
Higher Learning Commission
February 19, 2018
Page two

# Re: HLC Letter to Grand Canyon University

Jennifer Lech <Jennifer.Lech@gcu.edu>

Sun 11/26/2017 10:21 AM

To:Karen Solinski <ksolinski@hlcommission.org>; Robert Rucker <rrucker@hlcommission.org>; Brian Mueller <Brian.Mueller@gcu.edu>;

Cc:Linnea Stenson <lstenson@hlcommission.org>; Sam Kerr <samdkerr@rap.midco.net>;

Happy holidays to you all as well. Got it! Sam reached out to Dan, and we are working on materials based on that conversation. I'll c.c. everyone else, and drop you off any emails going forward.

Sam, if you need anything, please feel free to let me know.

Happy holidays, Karen....talk to you later.

Sent from my T-Mobile 4G LTE Device

-------- Original message --------
From: Karen Solinski <ksolinski@hlcommission.org>
Date: 11/26/17 9:10 AM (GMT-07:00)
To: Robert Rucker <rrucker@hlcommission.org>, Brian Mueller <Brian.Mueller@gcu.edu>
Cc: Linnea Stenson <lstenson@hlcommission.org>, Sam Kerr <samdkerr@rap.midco.net>, Jennifer Lech <Jennifer.Lech@gcu.edu>
Subject: Re: HLC Letter to Grand Canyon University

Thanks, Robert.

Hi Jen, Sam will be doing the heavy lifting on this one, and he will keep me posted as appropriate. He has been an invaluable adjunct staff member for LGA this year and has given me some breathing room. (And who said HLC doesn't understand adjuncts...) So Sam will be your primary contact. Of course, Linnea is in for the long haul, and Robert keeps the whole process moving. So keep them copied as appropriate, please, and you can drop me off this circuit and the ones to come.

Hope your holiday has been tremendous. I hear Phoenix provided a warm holiday welcome for all the out-of-towners.... You still have a few holiday hours left so you should be enjoying them! Best,

Karen

---

**From:** Robert Rucker
**Sent:** Friday, November 17, 2017 2:06:40 PM
**To:** brian.mueller@gcu.edu
**Cc:** Karen Solinski; Linnea Stenson; Sam Kerr; jennifer.lech@gcu.edu
**Subject:** HLC Letter to Grand Canyon University

President Mueller,

Please see the attached letter from HLC President Barbara Gellman-Danley regarding the University's application for Change of Control, Structure or Organization.

Thank you.

Sincerely,

Robert Rucker

**Robert Rucker**
Research and Advocacy Coordinator for Legal and Governmental Affairs
Higher Learning Commission
rrucker@hlcommission.org | 800.621.7440 ext. 164

---

*The information contained in this communication is confidential and intended only for the use of the recipient named above, and may be legally privileged and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please resend it to the sender and delete the original message and copy of it from your computer system. Opinions, conclusions and other information in this message that do not relate to our official business should be understood as neither given nor endorsed by the organization.*

---

This message is private and confidential. If you have received it in error, please notify the sender and remove it from your system.

**Mueller**                    **1 of 1**

HIGHER LEARNING COMMISSION

230 South LaSalle Street, Suite 7-500
Chicago, IL 60604-1411
312.263.0456 | 800.621.7440
Fax: 312.263.7462 | hlcommission.org

November 17, 2017

VIA ELECTRONIC MAIL

Brian Mueller, President
Grand Canyon University
3300 W. Camelback Rd.
Phoenix, AZ 85017

Dear President Mueller:

At its meeting on November 2-3, 2017, the Higher Learning Commission ("HLC" or "the Commission") Board of Trustees ("the Board") endorsed new guidelines related to the determination and evaluation of shared services arrangements. The purpose of these guidelines is to provide a general framework for how HLC will evaluate such arrangements against the Criteria for Accreditation and Assumed Practices during a routine comprehensive evaluation, or as part of an application for Change of Control, Structure or Organization. The framework provided in the guidelines is effective immediately and will be applied to all future and outstanding reviews that involve shared services arrangements.

Grand Canyon University ("the University") has a pending application for Change of Control, Structure or Organization that involves one or more shared services arrangements. As you are aware, HLC notified you on July 7, 2017, that the Board would be working over the summer to develop these guidelines and that the guidelines would be used in the evaluation of shared service arrangements in your application. Commission staff will temporarily suspend review of the application to provide the University an opportunity to examine and respond to these guidelines.

The University should review the guidelines and determine whether it wishes to submit revisions and/or supplemental information to its application for Change of Control, Structure or Organization. A copy of the guidelines is enclosed for your convenience. Any information must be received by HLC within 30 days of the date of this letter, or no later than **December 18, 2017.** Please submit information to the Commission in accordance with the enclosed *Document and Submission Guidelines.* As a general note, while these guidelines are being provide for your review, they have not yet been published on HLC's website.

Following the 30-day period, HLC will resume review of the University's application. The Commission will consider any new information provided by the University in response to the guidelines during this process. The University should anticipate receiving the Summary Report and any related attachments in early January 2018.  Consideration of the application and any supplemental information remains tentatively scheduled for the February 2018 HLC Board meeting.

President Mueller, November 17, 2017    2

Thank you for your cooperation. If you have additional questions, please contact your HLC Staff Liaison, Dr. Linnea Stenson.

Sincerely,

Barbara Gellman-Danley
President

Enc:    Shared Services Arrangements Guidelines
        Document and Submission Guidelines

Cc:    Jennifer Lech, Senior Vice President of Academic Affairs and University Registrar, Grand
            Canyon University
        Sam Kerr, Adjunct Staff, Higher Learning Commission
        Linnea Stenson, Vice President for Accreditation Relations and Director of the AQIP
            Pathway, Higher Learning Commission
        Karen Peterson, Solinski, Executive Vice President for Legal and Governmental Affairs,
            Higher Learning Commission





# SHARED SERVICES ARRANGEMENTS

Guidelines for Institutions and Peer Reviewers

## Introduction

The following information provides guidance to institutions and peer reviewers in determining and evaluating shared services arrangements involving institutions accredited by HLC. These guidelines explain the Criteria for Accreditation that will be primarily considered when shared services arrangements are evaluated. These guidelines were endorsed by HLC's Board of Trustees in November 2017.

In addition, the following information provides an overview of the review process for applications for Change of Control, Structure or Organization that include a shared services arrangement. Institutions should review HLC's policy INST.B.20.040, Change of Control Structure, or Organization, and the Change of Control, Structure or Organization Procedure.

Note: HLC's processes regarding the outsourcing of academics are addressed in HLC's Substantive Change processes regarding contractual and consortial arrangements. More information is available at hlcommission.org/change.

## Background of Shared Services Arrangements Subject to HLC Oversight

HLC adopted the policy on Change of Control, Structure or Organization in June 2009. This policy establishes that HLC oversight extends beyond transactions involving a merger or transfer of assets to other transactions that affect the structure or function of an institution, and that such transactions may require HLC approval. This policy also applies to certain transactions involving a shared services arrangement that require HLC approval.

A shared services relationship is a type of arrangement, typically governed by an agreement or contract, that seeks to shift certain operating functions and/or services of an institution of higher education, to another entity. That other entity may be a corporation legally affiliated with, or related to, the accredited institution, or the entity may be independent. A shared services arrangement, in certain instances, may be considered a form of outsourcing and need not be reciprocal. Shared services relationships may occur through a variety of different arrangements.

The **formation** or **renewal** of the following shared services arrangements must be reported to HLC, and some arrangements may require formal approval through HLC's Change of Control, Structure or Organization procedure. (Note: This procedure is being separately updated to reflect this guidance.) Effective November 3, 2017, an institution is expected to report to HLC that it intends to initiate or renew such a relationship, and should provide documentation as outlined in the Change of Control, Structure or Organization procedure (the institution must submit an executable version of the services agreement). HLC will review the submission to determine whether the proposed relationship affects the organization or functionality of the institution such that it requires a full review and approval under HLC's Change of Control, Structure or Organization policy.

Audience: Institutions and Peer Reviewers
Official HLC Guidelines
Published: November 2017 © Higher Learning Commission

Process: Change of Control, Structure or Organization
Contact: legalaffairs@hlcommission.org
Page 1

The following include, but is not limited to, types of agreements that may require HLC approval:

1. The institution forms a relationship with an entity that has no corporate or financial relationship with the institution to perform certain services. An example would be an agreement wherein an institution outsources multiple aspects of its operations to a single provider of higher education services.[1] HLC will determine whether any formal approvals are required based on the documentation's description of the services being provided by the services provider.

2. The institution works with other related accredited institutions to pool or consolidate services into another related entity that may be another corporation or may be a division of one of the institutions. An example would be a state university system with several accredited institutions that consolidates at the flagship institution certain operations that previously were provided locally at each campus.[2] HLC will determine whether any approvals are required based on the documentation's description of the structure of the entity and the services provided.

3. The institution has a parent or affiliated corporation that provides various services to the institution. A variant of this situation would be when an institution purchases the assets of or merges with another accredited institution that has an existing relationship with a parent or affiliated corporation, and the relationship with the parent or affiliated entity is being maintained after the purchase through a shared service relationship with the former parent or affiliated corporation.

4. The institution forms a new related or separate corporation into which the institution transfers some of its existing operations and/or services. This new corporation would then provide services to the accredited institution. Alternatively, the institution may transfer assets related to academics and student services into the new related or separate corporation, and the institution may become the services corporation. (This new service corporation may also sell its services to other institutions with which it had no previous relationship.)

---

1 Note that HLC has a separate policy on the development of contractual relationships related to sharing of academic programs related to the teaching and learning process. These guidelines do not apply to contractual relationships referenced in policy INST.F.20.040.

2 Note that HLC has a separate policy on the development of consortial relationships related to sharing of academic programs related to the teaching and learning process. These guidelines do not apply to consortial relationships referenced in policy INST.F.20.040.

## Relevant Criteria for Accreditation and Assumed Practices

While any agreement is expected to conform to all HLC standards, the following Core Components from the Criteria for Accreditation are primarily considered regarding shared services arrangements.

**Core Component 1.A.:** The institution's mission is broadly understood within the institution and guides its operations.

**Core Component 1.D.:** The institution's mission demonstrates commitment to the public good.

**Core Component 2.A.:** The institution operates with integrity in its financial, academic, personnel, and auxiliary functions; it establishes and follows policies and processes for fair and ethical behavior on the part of its governing board, administration, faculty, and staff.

**Core Component 2.B.:** The institution presents itself clearly and completely to its students and to the public with regard to its programs, requirements, faculty and staff, costs to students, control, and accreditation relationships.

**Core Component 2.C.:** the governing board of the institution is sufficiently autonomous to make decisions in the best interest of the institution and to assure its integrity.

1. The governing board's deliberations reflect priorities to preserve and enhance the institution.

2. The governing board reviews and considers the reasonable and relevant interests of the institution's internal and external constituencies during its decision-making deliberations.

3. The governing board preserves its independence from undue influence on the part of donors, elected officials, ownership interests, or other external parties when such influence would not be in the best interest of the institution.

4. The governing board delegates day-to-day management of the institution to the administration and expects the faculty to oversee academic matters.

Audience: Institutions and Peer Reviewers
Official HLC Guidelines
Published: November 2017 © Higher Learning Commission

Process: Change of Control, Structure or Organization
Contact: legalaffairs@hlcommission.org
**Page 2**

**Core Component 3.C.:** The institution provides support for student learning and effective teaching.

**Core Component 4.A.:** The institution demonstrates responsibility for the quality of its educational programs.

**Core Component 5.B.:** The institution's governance and administrative structures promote effective leadership and support collaborative processes that enable the institution to fulfill its mission.

**Core Component 5.C.:** The institution engages in systematic and integrated planning.

**Core Component 5.D.:** The institution works systematically to improve its performance.

## Quality Assurance Expectations in Shared Services Arrangements

The following guidelines explain the Criteria as it pertains to shared service arrangements being reviewed through Change of Control, Structure or Organization or at the time of a comprehensive evaluation. Where the guidelines have implications for certain Assumed Practices, those Assumed Practices are identified.

**Mission**
The institution must be able to demonstrate that the implementation of a shared services relationship is in alignment with its mission and that the shared services provider assists in fulfillment of that mission. Ultimately, the institution remains responsible for assuring its mission is fulfilled. (1.A.)

In a scenario where the shared services relationship derives from a parent or affiliated corporation that owns or has a legal relationship with the institution, the institution must demonstrate that its educational responsibilities, including revenue allocations, take primacy over contributing to a related or parent organization. (1.D.)

**Integrity: Ethical and Responsible Conduct**
The institution must be able to demonstrate that the shared services provider possesses the same high level of integrity and ethics as the institution with respect to the services it is providing in the shared services arrangement; its history

with other similar services arrangements is also relevant in this consideration. Furthermore, the shared services provider must also have established policies and processes for fair and ethical behavior or agree explicitly in the contract with the institution to abide by the institution's ethics standards, at least regarding its work related to this relationship. A shared services provider's policies and processes will not differ significantly or be in direct conflict with that of the institution.

In addition, the institution must demonstrate accountability and transparency with regard to the shared services relationship and its impact on the institution and its students. The institution should show that it has engaged in a thorough process to review and vet the shared services provider, which may mean, as appropriate, that there has been an RFP process or that the institution has otherwise ensured that the shared services provider has a proven record of good conduct in its business dealings and is providing its services at fair market value. The institution should also show that there was broad campus involvement as appropriate for the function in selecting the shared services provider and finalizing the terms of the agreement.

Within the agreement, there should be a provision allowing the institution to terminate the agreement upon reasonable notice with or without cause. Further, the agreement should have provisions allowing the parties to the agreement to engage in a process to mitigate any issues regarding performance. The institution must also have a process to review any complaints from faculty or students about the shared services provider's fulfillment of its services, and such a process must be in alignment with the institution's established complaint policies and procedures. Finally, the payment arrangements for services provided by the shared services provider should be clearly stated in the agreement or in documents supporting the agreement.

The institution should demonstrate that it has updated its conflict of interest policies to alert institutional representatives when they might have a conflict of interest related to the shared services relationship.

Finally, the president of the institution will provide a statement to HLC when the contract or agreement for the services is finalized, assuring the institution's accountability for the actions of the services provider related to its fulfillment of the agreement. (2.A. See also Assumed Practice A.4, A.5., and A.10.)

Audience: Institutions and Peer Reviewers
Official HLC Guidelines
Published: November 2017 © Higher Learning Commission

Process: Change of Control, Structure or Organization
Contact: legalaffairs@hlcommission.org
Page 3

The institution must demonstrate that it has publicly disclosed its relationship with the shared services provider; such statements may be general in nature and posted on the institution's website. The statements may not need to be provided in each interaction between the shared services provider and students.

If the shared services agreement allows the shared services provider to use the trademarks and other intellectual property ("IP") of the institution, the public disclosure of the relationship, as noted above, should indicate that the institution's trademarks and IP may be used by the shared services provider pursuant to a licensing agreement. (2.B.)

If representatives of the shared services provider, other than administrators noted under Core Component 5.B., will have a position on the governing board of the institution or in any other governance function, the institution must demonstrate that those representatives are in an advisory role only to the duly-elected or appointed members of the governing board or any related management committees. These representatives' inclusion on the board in an advisory capacity must be approved by a majority of the independent governing board members.

With such representatives, the governing board must be sufficiently autonomous such that its decisions reflect the best interest of the institution as a whole. The institution must have conflict of interest policies to guide the board of the institution, particularly when it is voting on issues related to the shared services relationship or shared services provider. (2.C.)

## Teaching and Learning: Quality, Resources and Support

The institution must demonstrate that any student support or faculty development offered by the shared services provider is provided under quality control standards set by the institution (see Core Component 5.A.) and is comparable to such services provided to students and faculty by the institution outside of its relationship with the shared services provider.  If the shared services provider is hiring or providing student support personnel, they must meet the same or superior qualifications as such personnel hired directly by the institution. (3.C.)

## Teaching and Learning: Evaluation and Improvement

The institution must demonstrate that its instructors have an active and substantive role in the design of any curriculum developed through the relationship with the shared services provider and that instructors have a continued role in overseeing and conducting academic program review of any program developed in conjunction with the shared services provider or with which the shared services provider is engaged. If the shared services provider is hiring or providing instructors for the institution, those instructors must meet the same or superior qualifications, including academic credentials and work experience, as faculty members hired directly by the institution. The institution must also demonstrate that its academic affairs office is setting admission and graduation requirements that apply to all students including those students in academic programs in which the shared services provider has a role. (4.A.)

## Resources, Planning and Institutional Effectiveness

The institution must demonstrate that it retains oversight of a shared services provider in order to ensure the effective provision of services. The institution's oversight includes the following activities:

1. The institution must demonstrate that its governing board has reviewed the formational documents of the shared services arrangement and any documents that address the ongoing relationship between the institution and the shared services provider and has received appropriate legal and financial advice prior to executing the agreement or contract. The institution must also demonstrate that it retains its ability to set and revise acceptable performance standards for the services provided by the shared services provider. The institution should be able to demonstrate that its board has set such performance standards and has a process under the shared services agreement to revise them as needed.

2. The institution must retain sufficient leadership within its organizational structure to oversee the functions that have been transferred or outsourced to the shared services provider. For example, if the institution has transferred marketing to the shared services provider, the institution must have

Audience: Institutions and Peer Reviewers
Official HLC Guidelines
Published: November 2017 © Higher Learning Commission

Process: Change of Control, Structure or Organization
Contact: legalaffairs@hlcommission.org
Page 4

appropriate personnel to provide oversight of that function for the institution; the institution may determine how best to provide this oversight.

3. If the shared services provider is a corporation affiliated with the institution or recently formed by the institution, and the institution transferred its own resources and personnel to that corporation, the shared services provider and the institution may have overlapping senior executive leadership who may have voting or non-voting positions on the institution's board. This arrangement is appropriate provided that a majority of the board of each organization is independent and decisions with respect to the appointment, hiring and retention of any overlapping executives are made by a majority of the independent directors of each institution. However, if the shared services provider takes on other significant business interests with other institutions, its interest and that of the original institution might diverge. At that time, the institution's board is expected to review the situation and determine whether there is a conflict of interest that requires the implementation of any appropriate mitigating controls. (See also Assumed Practice D.6.)

4. The institution must demonstrate that it has appropriate policies and processes to audit or review on a regular basis the performance of the shared services provider. Alternatively, its agreement with the shared services provider must require the shared services provider to audit itself regularly. In either case, the results of these performance audit processes must be regularly reported and available to the institution and used in its quality improvement processes. Such performance audit functions may be strengthened by the use of a third-party auditor or reviewer that conducts the performance reviews. These processes must include a separate feedback mechanism from students receiving these services. The audit processes and service standards in the shared services agreement will demonstrate that there exist robust processes through which the institution can require changes in the services provided under the agreement or even terminate the arrangement, as noted elsewhere in this document. Finally, any shared services agreement should provide that any performance standards or related provisions satisfy all applicable state and federal statutes and regulations. The results of these regular performance audits should be available to HLC on request. (5.B.)

The institution must be able to demonstrate that its planning extends to the services included in a shared services agreement and takes into account the role of the shared services provider in the life of the institution. Both the institution and the shared services provider must be able to demonstrate that they are systematically and routinely assessing the provision of all services as well as the developing and changing needs of the institution and how the services provider will respond to such changes. (5.C.)

The institution must demonstrate that the shared services provider works systematically to improve its performance in the arrangement at the same level expected of the institution and that the institution has data related to the services relationship or its performance under the services agreement. (5.D.)

## HLC's Review of Shared Services Arrangements

The initiation or renewal of some shared service relationships will require HLC approval through HLC's Change of Control, Structure or Organization policy and procedure.

In addition, all ongoing shared services relationships must be disclosed to HLC during a comprehensive evaluation. Whenever HLC evaluates such a relationship within a comprehensive evaluation, the standards for determining ongoing quality are the Criteria for Accreditation and the guidelines specified in this document.

Such relationships should be listed in the appropriate section of the Federal Compliance Filing, and a copy of the agreement should be provided as an attachment to the filing. (Note: The Federal Compliance Packet for institutions will be updated for 2018–19 to provide further instructions and will include some questions relative to these guidelines.)

An HLC peer review team will take into consideration such relationships as a general part of its review in the same manner it takes into account other details related to an institution's operations.

Audience: Institutions and Peer Reviewers
Official HLC Guidelines
Published: November 2017 © Higher Learning Commission

Process: Change of Control, Structure or Organization
Contact: legalaffairs@hlcommission.org
Page 5

For example, if an institution's online program has been created or advanced based on such a relationship, this relationship will be considered by an evaluation team during a regular visit evaluating the quality of the institution's operations and academics, including its distance learning program, based on the Criteria for Accreditation.

### Evaluating Relevant Materials

As part of the review process, HLC will look for certain key documents in evaluating the relationship: the letter, agreement, contract or other document outlining the relationship, and the policies and procedures of the institution, as well as those of the shared services provider related to its work for the HLC-accredited institution.

In addition, if the formation of the relationship is being evaluated through Change of Control, Structure, or Organization, HLC will also review the formation documents and other items identified in the related HLC procedure. While it is important that the contract or agreement be fair to both the institution and the shared services provider and contain appropriate clauses related to the fee structure, indemnification, renewal, termination and related provisions, HLC will primarily focus its attention in determining quality and institutional oversight on those areas identified in these guidelines. The contract or agreement will be considered as ancillary to that process.[3] (See also Assumed Practice A.10.)

### Evaluating Academic Functions and Performance

Finally, the institution must demonstrate that it maintains the ultimate control over functions related to academics even if not directly part of the teaching and learning process such as admission policies, graduation requirements and academic content of the program. The institution must demonstrate that it conducts a performance audit, on a regular basis, of the services provided by the shared services provider to ensure that the shared services provider meets certain agreed-upon performance standards.

During the Change of Control, Structure or Organization process, HLC will look to the contract and related documents to ensure that it is clear that the institution has control over these functions and that the performance audit process has been established and is ready to be implemented should HLC approve the extension of accreditation following consummation of the agreement. During the review, HLC staff members or peer reviewers may also, at HLC's discretion, interview personnel from the shared services provider and review the shared services provider's internal protocols for assuring quality in this relationship and in general.

After the relationship has been implemented and during subsequent comprehensive evaluations or through its regular monitoring processes, HLC will review the performance audit reports being generated by the institution and may interview the shared services provider as appropriate to assure quality.

## Conclusion

This document is subject to review and endorsement by HLC's Board of Trustees. It will be periodically updated to reflect developing good practice in this area, as HLC and institutions become more familiar with how such relationships work to serve students, the institution, and the common good.

Institutions should contact their HLC staff liaison early in the process of developing such a relationship to ensure that any approval, if necessary, is secured prior to execution of any shared services arrangement.

## Questions?

Contact the institution's HLC staff liaison or HLC's Legal and Governmental Affairs.

---

3 For example, the presence of a clause in the agreement allowing the institution to terminate the relationship has been used by institutions to demonstrate oversight of the relationship. While as a general matter, a termination clause is an important item in most agreements, its presence does not necessarily establish a pattern of oversight by the institution.

Audience: Institutions and Peer Reviewers
Official HLC Guidelines
Published: November 2017 © Higher Learning Commission

Process: Change of Control, Structure or Organization
Contact: legalaffairs@hlcommission.org
Page 6



230 South LaSalle Street, Suite 7-500
Chicago, IL 60604-1411
312.263.0456 | 800.621.7440
Fax: 312.263.7462 | hlcommission.org

# Document and Submission Guidelines
## for Legal and Governmental Affairs

## Document Guidelines

All documents must be submitted in PDF format. Unless otherwise instructed, all documents within the submission should be individually bookmarked and named. The submission should also be indexed, made searchable, and should include internal links across the individual documents, as needed.

Documents should not contain links to **external** websites or files.

## Document Submission

Institutions should submit all materials electronically. Do not submit hard copies of materials or provide a separate email containing the materials to HLC unless directed to do so by HLC.

Upload the file to: https://www.hightail.com/u/HLC-LGA

In the subject line, please include the institution name and the subject of the item being uploaded (e.g., "Neverland University - Change of Control Application" or "Neverland University - Notice Report").

After selecting submit, allow the file to finish uploading before closing the browser window. The system will provide confirmation that the file uploaded and was sent to HLC. Staff will provide a separate acknowledgement of receipt of the file upon request.