**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re Grand Canyon Education, Inc. Securities Litigation* | Civil Action No. 20-639-MN-CJB |

**LEAD PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR
MOTION TO TAKE JUDICIAL NOTICE OF FACTS REVEALED
SUBSEQUENT TO MOTION TO DISMISS IN RELATED LITIGATION**

# TABLE OF CONTENTS

I.    Lead Plaintiffs' Motion for Judicial Notice Was Timely and Properly Filed ......................... 2

II.   The Admissions Made in *Rosenfelt* Are Properly Attributed to Defendants in this Action.... 4

III.  The Fact that the Admissions Are Drawn from the *Rosenfelt* Summary Judgment Decision Does Not Make Them Any Less Susceptible to Judicial Notice............................................ 6

IV.   The Existence of the Admissions Are Highly Probative of the Falsity Of Defendants' Statements and That They Were Made Intentionally and/or Recklessly................................ 8

V.    Conclusion ................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Bishop v. JPMorgan Chase & Co.*,
   2013 WL 3177826 (D. Del. June 21, 2013) ....................................................... 2, 3

*Bishop v. JPMorgan Chase & Co.*,
   2013 WL 4007508 (D. Del. Aug. 5, 2013) ........................................................... 3

*Grynberg v. Total Compagnie Francaise Des Petroles*,
   891 F. Supp. 2d 663 (D. Del. 2012) ................................................................... 2

*In re Horsehead Holding Corp. Secs. Litig.*,
   2018 WL 4838234 (D. Del. Oct. 4, 2018), *R. & R. adopted*, 2019 WL 1409454
   (D. Del. Mar. 28, 2019) ...................................................................................... 7, 8

*In re Motions for Access of Garlock Sealing Technologies LLC*,
   488 B.R. 281 (D. Del. 2013) ............................................................................... 2

*In re RNI Wind Down Corp.*,
   2008 WL 4326483 (D. Del. Sept. 22, 2008) ....................................................... 2

*In re Synchronoss Sec. Litig.*,
   705 F. Supp. 2d 367 (D.N.J. 2010) ..................................................................... 7, 8

*Mayne Pharma Int'l PTY Ltd. v. Merck & Co.*,
   2015 WL 7833206 (D. Del. Dec. 3, 2015) .......................................................... 3

*Southmark Prime Plus, L.P. v. Falzone*,
   776 F. Supp. 888 (D. Del. 1991) ......................................................................... 7, 8

*Sunoco Partners Mktg. Terminals L.P. v. Powder Springs Logistics, LLC*,
   2019 WL 8641303 (D. Del. Aug. 7, 2019) .......................................................... 3

*You Map, Inc. v. Snap Inc.*,
   2021 WL 106498 (D. Del. Jan. 12, 2021) ........................................................... 2

**Rules**

Fed. R. Evid. 201 ....................................................................................................... 1, 2, 6

Lead Plaintiffs properly filed a motion (D.I. 76, the "Motion") for this Court to judicially notice indisputably authentic statements (i) in the administrative record and (ii) made by GCU's counsel in the *Rosenfelt* action in the District of Arizona, the existence of which are relevant to and conflict with assertions made by Defendants in this Action.

Contrary to Defendants' arguments, and consistent with District precedent, a party may file a separate request for judicial notice, even if it relates to a pending motion, because the Court may "take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d).  Here, Lead Plaintiffs filed a timely request for judicial notice following the issuance of the *Rosenfelt* summary judgment decision, which referenced redacted documents in the administrative record and concessions made by GCU's counsel in connection with that motion.  The existence of these statements (the authenticity of which Defendants do not challenge) may be properly considered in this Action, given that Defendant GCE controls GCU, Defendant Mueller is the CEO of GCE and serves as President of GCU, and Defendants themselves have argued that GCU's litigation positions in *Rosenfelt* reflect Defendants' state of mind in this case.  Further, the statements are clearly relevant to rebut arguments and representations to this Court that are contrary to admissions made to the DOE and the *Rosenfelt* court concerning common matters in both proceedings (which admissions are also diametrically opposed to alleged false and misleading statements that Defendants made to investors as chronicled in Lead Plaintiffs' Second Amended Consolidated Complaint[1]).

Defendants further distort the narrow and proper purposes for which Lead Plaintiffs seek the Court to take judicial notice.  As shown below, the very fact that the admissions were made lends compelling support to the conclusion that the statements made to investors by the Defendants

---

[1] D.I. 60, the "Complaint."  "¶" designates citations to paragraphs in the Complaint.  Defendants' Opposition to Plaintiffs' Motion to Take Judicial Notice, D.I. 78, is referred to as "Def. Opp."

as presented in the Complaint in this Action were false and materially misleading when made, and that they were made intentionally and/or recklessly.

**I.      Lead Plaintiffs' Motion for Judicial Notice Was Timely and Properly Filed**

Lead Plaintiffs properly filed the timely Motion, consistent with District precedent, the Federal Rules of Evidence, and the Local Rules.  Courts in this district have explained that FRE 201 permits the Court to "take judicial notice at any stage of the proceeding," *In re Motions for Access of Garlock Sealing Technologies LLC*, 488 B.R. 281, 302 (D. Del. 2013) (Stark, J.). Consistent with FRE 201, courts have granted separately-filed motions for judicial notice in connection with other pending motions.  *See, e.g., id*. (granting separate motion to take judicial notice of certain proposed state and federal legislation to supplement the record in connection with a bankruptcy appeal); *You Map, Inc. v. Snap Inc*., 2021 WL 106498, at *4 (D. Del. Jan. 12, 2021) (granting separate motion to take judicial notice in connection with a motion to dismiss); *Grynberg v. Total Compagnie Francaise Des Petroles*, 891 F. Supp. 2d 663, 675 (D. Del. 2012), *vacated in part on other grounds by* 2013 WL 5459913 (D. Del. Sept. 30, 2013) (granting separate motions to take judicial notice of various court opinions in connection with a motion to dismiss); *In re RNI Wind Down Corp*., 2008 WL 4326483, at *2 (D. Del. Sept. 22, 2008) (granting motion for judicial notice filed separately after an appeal from an amended settlement order).

These decisions foreclose Defendants' argument that the Motion is an improper attempt to submit a sur-reply on Defendants' motion to dismiss.  Def. Opp. at 4.  Defendants' citation to *Bishop v. JPMorgan Chase & Co.*, 2013 WL 3177826 (D. Del. June 21, 2013), does not support a different conclusion.  In *Bishop*, following full briefing on defendants' motion to dismiss, *pro se* plaintiff Bishop filed a one-sentence motion for judicial notice "continu[ing] to advance his argument that defendants' motion should be denied" by asking the court to take judicial notice of

a Delaware statute whose "application and relevance" was "questionable" and, in any event, existed before briefing on the motion to dismiss. *Bishop*, 2013 WL 3177826, at *6. Bishop's request for judicial notice further related to a legal argument raised in the briefing on the defendants' motion to dismiss. *Id*. The district court ultimately denied the motion as moot. *See Bishop v. JPMorgan Chase & Co.*, 2013 WL 4007508, at *4 (D. Del. Aug. 5, 2013).[2] Thus, Defendants have not identified any authority prohibiting a party from filing a separate motion to take judicial notice; in fact, contrary authority expressly permits it.

Nor, as Defendants argue, is Lead Plaintiffs' Motion an untimely or improper attempt to amend the Complaint.[3] Here, the *Rosenfelt* court issued its summary judgment decision on December 1, 2022, nearly six months after briefing was completed on Defendants' motion to dismiss and over a month after oral argument on that motion. Lead Plaintiffs filed their motion for judicial notice just three weeks later, on December 22, 2022. Defendants do not dispute that the Complaint referenced court records from *Rosenfelt* that were public at the time of its filing, and they explicitly concede that the *Rosenfelt* summary judgment decision "did not exist when the Complaint was filed." Def. Opp. at 6. Because the *Rosenfelt* summary judgment decision (a) post-dated briefing and oral argument in this matter and (b) evidences public records and materials in

[2] Defendants' related contention that the Motion was improperly filed under D. Del. LR 7.1.2(b) is incorrect. While the Rule allows for the filing of supplemental authorities without leave of Court following the completion of briefing on a motion to dismiss, it does not bar parties from seeking other forms of relief such as the present Motion seeking judicial notice.

[3] Defendants argue that the introduction of these "new facts" constitute "an improper attempt to further amend the complaint." Def. Opp. at 4-5 (citing *Sunoco Partners Mktg. Terminals L.P. v. Powder Springs Logistics, LLC*, 2019 WL 8641303, at *5 n.4 (D. Del. Aug. 7, 2019), and *Mayne Pharma Int'l PTY Ltd. v. Merck & Co.*, 2015 WL 7833206, at *5 n.6 (D. Del. Dec. 3, 2015)). But neither *Sunoco* nor *Mayne* deals with a request for judicial notice—which the Court may properly consider at any stage of the proceedings—let alone judicial notice of relevant *new* facts directly relating to allegations set forth in the Complaint.

another proceeding that contradict Defendants' assertions in this Action, Lead Plaintiffs' request for judicial notice is proper.  *See* Motion at 2-4.

Finally, the *Rosenfelt* summary judgment decision is unquestionably relevant to Lead Plaintiffs' allegations, as the *Rosenfelt* action was specifically addressed in the Complaint (asserting that the "case remain[ed] pending," ¶¶263, 342) and has been cited **by Defendants** in favor of dismissal.  *See infra* § II.  Thus, the "new facts" that Defendants complain would be added to the record in this Action are actually admissions made in that same litigation on topics that lie at the heart of this case and relate to arguments advanced by Defendants.  Under these circumstances, Lead Plaintiffs' motion for judicial notice is entirely appropriate.

## II.    The Admissions Made in *Rosenfelt* Are Properly Attributed to Defendants in this Action

Defendants ask this Court to disregard the admissions identified in *Rosenfelt* because GCU was the party plaintiff that made the admissions in that action while the Defendants in this Action are GCE and its two senior-most executives—CEO Brian Mueller and CFO Daniel Bachus.  The argument is unfounded.  As this Court is well aware, and as pleaded in the Complaint, GCU was 100% owned by GCE prior to the Transaction that spun it off in July 2018, and the crux of this Action involves whether Defendants' statements about GCU's application to the DOE for non-profit status for purposes of Title IV of the Higher Education Act (HEA) were accurate when made. Defendant Mueller has been at all relevant times and remains to this day ***as the CEO of GCE and the President of GCU***.  Moreover, as alleged in the Complaint and as found by the DOE in its November 6, 2019 letter denying the non-profit application, nearly 75% of GCU's Executive Leadership Team is composed of personnel who work for GCE.  ¶¶177, 274-75, 293; Complaint,

Ex. A at 15-16.[4] Given these levels of control by GCE and Mueller over GCU, the admissions and statements made by GCU in the *Rosenfelt* case are properly attributable to both GCE and Mueller.

Indeed, it was the Defendants in this Action who argued that GCU's filing of the *Rosenfelt* case reflected their state of mind. Specifically, Defendants argued the following in their opening brief in support of their motion to dismiss as a basis for this Court to find that Defendants here lacked scienter:

> Moreover, as Plaintiffs allege, the University has filed litigation against the DOE challenging the denial of GCU's request to participate in federal student aid programs as a nonprofit institution. (SAC ¶¶ 123, 342.) The University's lawsuit belies Plaintiffs' allegations that Mueller knew or suspected that either (a) the University failed to meet the requirements for non-profit status or (b) the DOE was likely to reject the request. Instead, *the ongoing litigation supports the competing inference that Mueller reasonably believed – and continues to believe – that the University meets the requirements for participation in Title IV as a non-profit*. Thus, a reasonable person would not "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged" in the SAC. (R&R at 32.)

D.I. 62 at 9-10 (emphasis added). And in their reply brief on the motion to dismiss (D.I. 68 at 6 n.7), Defendants continued to press that the DOE litigation buttressed their purported lack of scienter in making the false statements alleged here:

> Indeed, Mueller and the University have *consistently* challenged the DOE's determination and publicly expressed "surprise[] and disappoint[ment]" regarding the same. *See GCU statement regarding Dept. of Education decision* (Nov. 12, 2019), https://news.gcu.edu/2019/11/gcu-statement-regarding-dept-of-education-decision/.

Having argued that the "ongoing litigation" in the *Rosenfelt* action has relevance to the issue of scienter in this Action, Defendants cannot now credibly argue that the admissions made in that

---

[4] As this Court will recall, Plaintiffs assert that these facts undermine Defendants' statements about GCU's claimed independence from GCE, including that "*there will be no overlapping management or employees between the two entities*" and that "[a]side from Mr. Mueller, *no other employee of [GCU] or [GCE] has a dual role in both organizations*" (¶176) (emphasis added).

5

case—which diametrically oppose statements they made to investors and defenses they raised in

this Action—are not similarly attributable to Mueller in his capacity as a Defendant here.

**III.    The Fact that the Admissions Are Drawn from the *Rosenfelt* Summary Judgment Decision Does Not Make Them Any Less Susceptible to Judicial Notice**

FRE 201(b)(2) provides that "[t]he court may judicially notice a fact that is not subject to

reasonable dispute because it ... can be accurately and readily determined from sources whose

accuracy cannot reasonably be questioned."  Here, contrary to Defendants' briefing (Def. Opp. at

5-7), the accuracy of documents from a certified administrative record ***quoted directly*** by a district

court in a public opinion cannot reasonably be questioned.  Notably, Defendants do not attempt to

rebut that the admissions cited in the *Rosenfelt* summary judgment decision were, in fact, contained

in the administrative record to which they undoubtedly have complete access. Nor could they,

since, as shown in Lead Plaintiffs' Motion at pages 5 and 7 (reprinted below),[5] the *Rosenfelt*

---

[5] Specifically, "[d]uring the review period," the DOE requested that GCU "identify any service providers . . . that are affiliates, owners, or former owners of the institution (including related persons and entities), and indicate whether any of the servicing agreements were entered into in conjunction with a change in ownership transaction [resulting in nonprofit conversion]." [Ex. A at 8] (citing AR-J-0156–57).   Quoting a Class Period letter from GCU to the DOE, the *Rosenfelt* court explained that "GCU did not identify any such service agreements for the DOE, instead contending that '***GCU believes that comparisons to the Kaplan transaction or any other example are not relevant . . . . [r]ather, it believes that the Transaction stands on its own.***'"  *Id*. (citing AR-J-0086) (ellipses in original, emphasis added); *see also id*. at 22 (the *Rosenfelt* court stated that "the DOE asked GCU to review its proffered list of other schools' service agreements," but that GCU responded that the sale of GCU "stands on its own." (citing AR-J-0086)).  Likewise, the district court stated that "the DOE gave GCU an opportunity to explain why other schools' service agreements were relevant to the DOE's analysis during the review period," but that "GCU declined to draw a parallel."  *Id*. at 21-22. …

Quoting the administrative record, the *Rosenfelt* court explained that "the DOE's authority to administer the HEA is distinct from the IRS's grant of § 501(c)(3) tax-exempt status" and that "GCU accepted this conclusion throughout the change-in-control application and following review period, during which GCU repeatedly acknowledged that the DOE's review is discrete." [Ex. A] at 24.  Citing to AR-J-0077–78, the *Rosenfelt* court noted GCU's recognition of the Department's position that "it must make an independent determination as to [GCU's nonprofit status]."  *Id*. And further citing Grand Canyon's summary judgment reply brief in *Rosenfelt*, the court stated

summary judgment decision cited to specifically identified documents and pages within the administrative record for these underlying, non-contested facts, which the *Rosenfelt* court found were not in genuine dispute, a required element for granting a summary judgment motion.

Defendants cite no case for such a limitation, arguing only that decisions ruling that courts may take judicial notice of "records and reports of administrative bodies" are not applicable to judicial descriptions and direct quotations from such records and reports, Def. Opp. at 7, even though the accuracy of such statements has not been questioned. The weight of authority opposes that argument, particularly where, as here, the quoted document from the administrative record is not available from any other source due to redactions, and the statements from the administrative record and court briefing are otherwise judicially noticeable. *See, e.g., In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 390 (D.N.J. 2010) (recognizing that a court may take judicial notice of public records and of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action); *Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 892 (D. Del. 1991) ("The contents of the court records that may be judicially noticed include the briefs and petitions of the parties.").

This Court's decision in *In re Horsehead Holding Corp. Secs. Litig.*, 2018 WL 4838234 (D. Del. Oct. 4, 2018), *R. & R. adopted*, 2019 WL 1409454 (D. Del. Mar. 28, 2019), does not compel a different result. Lead Plaintiffs do not seek judicial notice of *Rosenfelt's* ultimate holding that the DOE "lawfully decided that GCU is not a nonprofit under Title IV." Motion, Ex. A at 35.

---

that "GCU also acknowledges that [the DOE had] previously taken other measures to ensure that institutions are not converting to nonprofit status in bad faith." *Id.* (quoting Grand Canyon's MSJ Reply at 8–9 (explaining that the DOE can "ensure [an] institution had not converted to evade for-profit rules")).

7

Nor do Lead Plaintiffs seek judicial notice of any factual findings made by the *Rosenfelt* court, including factual findings relating to the statement and admission for which Plaintiffs seek judicial notice. Instead, Lead Plaintiffs seek judicial notice of indisputably authentic statements—contemporaneous statements that are part of the certified administrative record and statements made in legal briefing in *Rosenfelt*—the very existence of which is relevant to issues central to the resolution of the motion to dismiss. *Horsehead*, 2018 WL 4838234, at *10.

Respectfully, the Court should prevent Defendants from hiding the fact that the arguments they made to this Court are inconsistent with statements in documents before the *Rosenfelt* court—***particularly when Defendants have weaponized their prosecution of Rosenfelt to make arguments about their state of mind***. *See supra* § II. Indeed, courts have judicially noticed contradictory statements for this very reason. *See In re Synchronoss*, 705 F. Supp. 2d at 390 & n.34 (stating that a court may take judicial notice of public records and of admissions in pleadings that "contradict" a party's assertions in another action); *Southmark Prime*, 776 F. Supp. at 899 ("A party cannot change a characterization of facts in a case in order to later gain an advantage.").

For these reasons, as well as the reasons stated in Lead Plaintiffs' Motion, this Court should grant the motion and consider the admissions contained in the *Rosenfelt* court's summary judgment order as part of the record on Defendants' pending motion to dismiss.

**IV.    The Existence of the Admissions Are Highly Probative of the Falsity of Defendants' Statements and That They Were Made Intentionally and/or Recklessly**

Defendants are also wrong when they argue that the admissions made in *Rosenfelt* do not support the conclusions that the public statements at issue in this Action were false and misleading when made, and that they were made by Defendants intentionally and/or recklessly.

As shown in the Motion, Lead Plaintiffs seek that the Court judicially notice the existence of the indisputably authentic statements made by Defendants in documents within the

8

administrative record or in briefing papers, which are quoted in the *Rosenfelt* decision.  The fact

that GCU *made* the cited admissions is relevant to show that Defendants made misleading

statements to investors and to contradict opposing inferences offered by Defendants before this

Court.  For instance,

> ➤ It is relevant that a company controlled by Defendant Mueller, in a lawsuit it filed against the DOE that challenged the DOE's rejection of its non-profit application, stated that it "believes that comparisons to the Kaplan transaction or any other example ***are not relevant***" (emphasis added), when Defendants GCE, Mueller and Bachus said in their public statements that the GCE/GCU conversion was "almost identical to many others in the industry," "very similar to the Purdue and Kaplan proposal," and "almost an identical replica" of what "hundreds of universities are doing" (¶21(b); *see also* ¶¶8, 10, 74, 99-106, 182-200, 246, 296-309, 320-21, 327, 334); and

> ➤ It is relevant that Mueller-controlled GCU also acknowledged, in its litigation against the DOE, that the DOE would make an independent review of GCU's nonprofit status under the HEA that was distinct from and discrete from the IRS's earlier granting GCU nonprofit status for tax purposes, when Mueller and the other Defendants in this Action had argued that "since the IRS and every other regulator that had assessed the University's nonprofit status confirmed that status, there is no plausible basis to conclude that the Individual Defendants knew or should have known that the DOE's requests presaged its ultimate denial of the University's request for non-profit status. (R&R at 44.)".  D.I. 62 at 11.

When given the chance by the DOE to present proof of the GCE/GCU Transaction's

similarities with the Purdue/Kaplan transaction, the administrative record shows conclusively that

GCU chose not to present any such proof and, instead, that it argued the Kaplan transaction and

others like it "***are not relevant***."  And when pressed on the DOE's ability to independently review

GCU's nonprofit status in a manner that was distinct from the IRS's determination, the Mueller-

controlled GCU acknowledged the DOE's right under the HEA to undertake an independent

analysis based on the administrative record cited in the *Rosenfelt* summary judgment decision.

As a result, even when such admissions are taken for their existence, the mere fact that

GCU made the arguments and admissions cited in Lead Plaintiffs' Motion undermine any innocent

inference that Defendants would have this Court draw from the facts pleaded in the Complaint or

the filing of the lawsuit in *Rosenfelt* and, instead, buttresses the many facts alleged by Lead Plaintiffs that sufficiently establish at the pleading stage of this Action that Defendants made false and misleading statements knowingly and recklessly—thereby satisfying the falsity and scienter elements of a viable Section 10(b) claim.

## V.    Conclusion

For the foregoing reasons and the reasons set forth in Lead Plaintiffs' Motion, Lead Plaintiffs respectfully request that the Court grant the motion and take judicial notice of the indisputably authentic statements within the administrative record and Defendants' briefing in the *Rosenfelt* summary judgment opinion referenced therein.

DATED:    January 19, 2023

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Hannah G. Ross
Katherine M. Sinderson (*pro hac vice*)
Robert F. Kravetz (*pro hac vice*)
Michael M. Mathai (*pro hac vice*)
Benjamin W. Horowitz (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
katiem@blbglaw.com
robert.kravetz@blbglaw.com
michael.mathai@blbglaw.com
benjamin.horowitz@blbglaw.com

*Counsel for Lead Plaintiffs*
*and the Lead Counsel for the Class*

**BARRACK, RODOS & BACINE**
Jeffrey W. Golan (*pro hac vice*)
Robert A. Hoffman
Chad A. Carder (*pro hac vice*)
3300 Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jgolan@barrack.com
rhoffman@barrack.com
ccarder@barrack.com

*Counsel for Lead Plaintiffs*
*and Lead Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
*/s/ Gregory V. Varallo*
Gregory V. Varallo (Bar No. 2242)
500 Delaware Avenue, Suite 901
Wilmington, DE 1980
Telephone: (302) 364-3601
greg.varallo@blbglaw.com

*Counsel for Lead Plaintiffs*
*and the Lead Counsel for the Class*

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**
Aaron L. Castle (*pro hac vice*)
79 Alfred Street
Detroit, MI 48201
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
acastle@vmtlaw.com

*Additional Counsel for Lead Plaintiffs*
*Oakland County Employees' Retirement*
*System and Oakland County Voluntary*
*Employees' Beneficiary Association Trust*

11