**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re Grand Canyon Education, Inc. Securities Litigation* | Civil Action No. 20-639-MN-CJB |

**LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS**

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Gregory V. Varallo (Bar No. 2242)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
greg.varallo@blbglaw.com

Hannah G. Ross
Katherine M. Sinderson (*pro hac vice*)
Robert F. Kravetz (*pro hac vice*)
Michael M. Mathai (*pro hac vice*)
Benjamin W. Horowitz (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
hannah@blbglaw.com
katiem@blbglaw.com
robert.kravetz@blbglaw.com
michael.mathai@blbglaw.com
benjamin.horowitz@blbglaw.com

*Counsel for Lead Plaintiffs
and Lead Counsel for the Class*

**BARRACK, RODOS & BACINE**
Jeffrey W. Golan (*pro hac vice*)
Robert A. Hoffman
Chad A. Carder (*pro hac vice*)
3300 Commerce Square
2001 Market Street
Philadelphia, PA 19103
jgolan@barrack.com
rhoffman@barrack.com
ccarder@barrack.com

*Counsel for Lead Plaintiffs
and Lead Counsel for the Class*

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**
Aaron L. Castle (*pro hac vice*)
79 Alfred Street
Detroit, MI 48201
acastle@vmtlaw.com

*Additional Counsel for Lead Plaintiffs Oakland County Employees' Retirement System and Oakland County Voluntary Employees' Beneficiary Association Trust*

## TABLE OF CONTENTS

I.      The Complaint Adequately Pleads Scienter ..................................................................... 1

II.     The R&R Correctly Found That Plaintiffs Allege Actionable Misstatements ............... 7~~6~~

III.    Conclusion ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allegheny Cty. Employees' Ret. Sys. v. Energy Transfer LP,*
532 F. Supp. 3d 189 (E.D. Pa. 2021) ...........................................................................9

*In re Campbell Soup Co. Sec. Litig.,*
145 F. Supp. 2d 574 (D.N.J. 2001) ..........................................................................2, 4

*Edwards v. Bayview Loan Servicing, LLC,*
2017 WL 879283 (D. Del. Mar. 6, 2017) ....................................................................6

*Gillis v. QRX Pharm. Ltd.,*
197 F. Supp. 3d 557 (S.D.N.Y. 2016)...........................................................................5

*Indiana Pub. Ret. Sys. v. SAIC,*
818 F.3d 85 (2d Cir. 2016)............................................................................................5

*Lord Abbett Aff. Fund, Inc. v. Navient Corp.,*
363 F. Supp. 3d 476 (D. Del. 2019)..........................................................................1, 2

*Makor Issues & Rights, Ltd. v. Tellabs Inc.,*
513 F.3d 702 (7th Cir. 2008) ........................................................................................6

*Masimo Corp. v. Phillips Elec. North Amer. Corp.,*
62 F. Supp. 3d 368 (D. Del. 2014)................................................................................7

*In re Nat'l Collegiate Student Loan Trusts,*
971 F.3d 433 (3d Cir. 2020)..........................................................................................1

*Novak v. Kasaks,*
216 F.3d 300 (2d Cir. 2000)..........................................................................................2

*S.E.C. v. Infinity Grp. Co.,*
212 F.3d 180 (3d Cir. 2000)..........................................................................................4

*Sanofi Secs. Litig. v. Meeker,*
87 F. Supp. 3d 510 (S.D.N.Y. 2015) ............................................................................9

*West Run Student Housing Associates, LLC v. Huntington National Bank,*
712 F.3d 165 (3d Cir. 2013)..........................................................................................5

Judge Burke's 68-page Report and Recommendation ("R&R," dated February 17, 2023) correctly found that the Amended Complaint adequately pled securities fraud claims, satisfying the elements of falsity, materiality, scienter, and loss causation. The R&R was based on an extensive record, including over 140 pages of briefing and supplemental submissions, as well as over four hours of oral argument by the parties. In their Objections ("Obj."), Defendants largely ignore the R&R in favor of arguments that distort the record and Judge Burke's actual holdings. These Objections have no basis in the record or the governing law, and the R&R should be adopted in its entirety.

Ignoring this Court's Standing Order and prior case law, Defendants have presented extensive arguments in the Objections' footnotes. *See Lord Abbett Aff. Fund, Inc. v. Navient Corp.*, 363 F. Supp. 3d 476, 497 (D. Del. 2019) (declining to consider arguments "buried in a couple of footnotes and further obscured by the high number of footnotes overall"). Almost all of these arguments were already addressed in the parties' motion to dismiss briefing and the R&R. *Compare* Obj. 2, n.2 *with* D.I. 66 ("Opp.") 2, 16-18; Obj. 4, n.3 *with* Opp. 20; Obj. 6, n.7 *with* Opp. 18-20; Obj. 7, nn. 8-9 *with* Opp. 8-10; Obj. 8, nn.10-11 *with* Opp. 9-10, n.8; Obj. 8, n.12 *with* Opp. 7-8; Obj. 10, n.15 *with* Opp. *generally*. Other arguments not raised in the briefing before Judge Burke are waived. *See In re Nat'l Collegiate Student Loan Trusts*, 971 F.3d 433, 444 (3d Cir. 2020). Nonetheless, to the extent the waived arguments warrant a specific response, Plaintiffs address those new arguments below.

## I.      The Complaint Adequately Pleads Scienter

Judge Burke's findings regarding scienter are straightforward and consistent with established case law: "Defendants knew facts or had access to information ***contradicting specific false and misleading material misstatements*** regarding the structure of the Conversion, its

similarity to other conversions, and the DOE review process, all of which concealed the true risk

that the DOE would decline to approve GCU as a non-profit institution [to the detriment of

investors]." R&R 47-48 (emphasis added); *see also Navient Corp.*, 363 F. Supp. 3d at 498 (scienter

established where "specific information regarding the fraud around forbearance, charge-offs, and

delinquencies, was conveyed to the individual defendants"). For example:

- Defendants undoubtedly knew the terms of the Conversion because it "went to the core of GCE's business and business model" and Mueller and Bachus "indicated in SEC filings that they had reviewed the MSA, and therefore, would necessarily have had knowledge of the terms . . . set out therein" (Opp. 14-15; R&R 24, 48-49);

- Defendants repeatedly asserted that GCE and GCU would be independent after the Conversion—including by specifically telling investors that "there will be no overlapping management or employees between the two entities" and that no employee besides Mueller would have a "dual role" at GCE and GCU—while failing to disclose material facts undercutting that conclusion, including that 75% of GCU's "Executive Leadership Team" (reporting to Defendant Mueller) would actually be employed by GCE (Opp. 7-9, 11 n.9; R&R 19, 24, 34, 37, 42);

- Defendants repeatedly touted the similarity between the Conversion and the Purdue-Kaplan deal—while failing to disclose that the two deals had materially different terms and despite Bachus having been explicitly warned, by a subject-matter expert, that there were "real" and "key" differences between them (Opp. 4, 9-10 & n.7; R&R 24, 42-43, 49); and

- Defendants told investors in July 2018 that the DOE's review was taking longer than expected only because the DOE was "very understaffed," and reassured them about Defendants' "ongoing engagement" with the DOE—even though Defendants had been warned in 2016 that the DOE was unlikely to approve the Conversion (Opp. 3, 12; R&R 17) and GCU later admitted that its "only communications" with the DOE during this time concerned a lengthy set of DOE interrogatories that "indicated that the DOE was not inclined to rubber-stamp the Conversion and, in fact, had serious questions about the independence" of GCU from GCE (Opp. 11-13; R&R 10, 17, 20, 39-40, 49-52, 66-67).

Plaintiffs allege (and Defendants do not contest) that Defendants Mueller and Bachus knew

or had ready access to the very facts alleged to contradict these and their other challenged

statements. Such "specific[] alleg[ations]" of "'defendants' knowledge of facts or access to

information contradicting their public statements'" are paradigmatic allegations of scienter. *In re*

*Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001) (quoting *Novak v. Kasaks*,

216 F.3d 300, 308 (2d Cir. 2000)). Defendants **do not object** to Judge Burke's findings in this regard—and have thus waived any objection to this basic determination of scienter.

The Complaint also provides a "cogent theory" explaining why Defendants pursued the Conversion despite knowing of the risks their false and misleading statements concealed:

> Defendants took a chance on obtaining DOE approval for GCU as a non-profit and, in the interval before a decision was made, they knowingly misled the market regarding the substance of that request and about the risks of denial from the DOE. And they did so because if their gamble paid off, GCU would have obtained valuable non-profit status; but even if it did not, in the meantime, GCE could earn significant revenue from the Conversion, including by increasing enrollment through misleadingly marketing GCU as a non-profit institution. (D.I. 60 at ¶¶ 278, 319; see also id. at ¶¶ 1-23; D.I. 66 at 2 ("Defendants reaped immediate and significant advantages by implementing the one-sided MSA while GCE pursued non-profit status for GCU, regardless of whether the DOE ultimately granted such approval.")) (R&R 61.)

This conclusion of contemporaneous fraud is wholly supported by the Complaint, including allegations that (i) by May 2018, GCE had sunk enormous costs into the deal (Opp. 19-20; R&R 11-12, 59-60 & n.32); (ii) pursuant to the MSA, GCU immediately marketed itself as a non-profit and received significant financial benefits while the decision was pending regardless of what the DOE ultimately decided (Opp. 1 n.2, 6, 10-11 & n.8, 18-19; R&R 14, 19, 22, 42-44, 59-61); and (iii) Defendants were aware that the potentially favorable regulatory environment at the DOE might only be temporary (Opp. 4, 19 & n.20; R&R 5-6, 55-57).

Defendants distort Plaintiffs' scienter theory and ignore the Court's scienter holding—that Defendants knowingly and recklessly misled investors about multiple aspects of the Conversion and the risks of DOE non-approval—by recasting Plaintiffs' scienter argument as a political attack on the Trump Administration. Obj. 2. Not so. As the Court recognized, the SAC (D.I. 60) alleges *objective facts* regarding the "drastically different regulatory landscape that emerged for for-profit institutions" under the Trump Administration (R&R 5-6; SAC ¶¶53-72), making it "*plausible* (and cogent) that *Defendants thought* that their alleged scheme could be successful, in light of the

3

background of DOE's new leadership in early 2017." R&R 57 n.28 (emphasis in original). Specifically, Plaintiffs allege that President Trump's election (and the appointment of Secretary DeVos to lead the DOE) opened a "limited political window" making it more likely that a renewed conversion attempt would be approved (Opp. 4, 19 & n.20; R&R 5-6, 55-57 (noting that GCE's outside counsel advised clients "to wait until the Trump Administration took power to initiate new conversions")). Defendants' Objection disregards this record and otherwise fails to address numerous cases cited by Judge Burke in the R&R. *See, e.g.*, R&R 59-60 & n.31, 63-64.

Further, and contrary to Defendants' Objection (Obj. 6-7), Judge Burke set forth the applicable scienter standard at length (R&R 45-46) and properly weighed, in detail, Plaintiffs' scienter inference against Defendants' competing inference that they "reasonably believed" that GCU met DOE's definition of a non-profit institution. R&R 61-64; *see also* R&R 52 (section entitled "Plaintiffs' Theory is at Least as Compelling as the Opposing Inference"); *id.* ("[a]fter engaging in th[e] comparative process, the Court concludes that Plaintiffs' overall theory . . . is at least as cogent as Defendants' competing theory of no fraud."). Defendants' scienter inference was not as compelling as Plaintiffs' given specific allegations about the IRS process that "help blunt the impact of the IRS's 2015 or 2018 approval" (R&R 63), and because "Defendants knowingly made many materially false or misleading statements and/or omissions about multiple aspects of the Conversion." *Id.* As the Court correctly held, given Defendants' "false and misleading statements about nearly every aspect of the DOE non-profit approval process . . . it seems a lot harder to believe that Defendants legitimately believed that GCU was in fact a non-profit." R&R 63-64. This is a straightforward application of *Tellabs* to the facts alleged in the SAC, and Defendants raise no compelling arguments to overcome this conclusion. *S.E.C. v. Infinity Grp. Co.*, 212 F.3d 180, 193 (3d Cir. 2000) (a purported "good faith belief" will "not insulate the

4

defendants from liability if it is the result of reckless conduct"); *In re Campbell Soup Co.*, 145 F. Supp. 2d at 598 ("the purpose of the securities laws . . . would be undermined if companies were permitted to withhold materially adverse information because they believed the company's fortunes would soon turn around"). Moreover, although the Court did not need to rely on summary judgment materials from GCU's lawsuit against the DOE in order to recommend denial of Defendants' motion to dismiss, GCU's admissions in that briefing fatally undercut Defendants' arguments here. *See, e.g.*, D.I. 76 at 5, 8; D.I. 79 at § IV.

Defendants' assertion that Judge Burke "disregarded" the purported "logical flaw" in the marketing benefits theory—that Defendants knew it "could not have continued in perpetuity" (Obj. 5)—is wrong. As the Court correctly determined, "Defendants took a chance on obtaining DOE approval for GCU as a non-profit and, in the interval before a decision was made, they knowingly misled the market regarding the substance of that request and about the risks of denial from the DOE." R&R 61. It thus "makes . . . sense [that] Defendants would have chosen to move forward with the Conversion, even after receiving the May 2018 interrogatories" because of, in part, the "significant and 'risk-free' financial and marketing benefits" of touting GCU as a non-profit. R&R 59. Defendants ignore the litany of cases finding this very scienter theory viable. *See* R&R 59 n.31; Opp. 20; *see also Indiana Pub. Ret. Sys. v. SAIC*, 818 F.3d 85, 97 (2d Cir. 2016) (scienter inference where benefits of concealment over a two-month period may have exceeded costs of disclosure). Those facts distinguish this case from Defendants' only case, *Gillis v. QRX Pharm. Ltd.*, which found that a scienter theory may not be cogent where there is *no* possible benefit to an alleged fraud. 197 F. Supp. 3d 557, 600-04 (S.D.N.Y. 2016); *see also* Opp. 21 n.21.

That Plaintiffs refined their marketing theory in the SAC (Obj. 4-5 n.3) is immaterial: "As the Third Circuit has noted, '[p]laintiffs routinely amend complaints to correct factual inadequacies

5

in response to a motion to dismiss,' and '[t]hat is so even when the proposed amendment flatly contradicts the initial allegation.'" *Edwards v. Bayview Loan Servicing, LLC*, 2017 WL 879283, at *4 (D. Del. Mar. 6, 2017) (quoting *West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 172 (3d Cir. 2013)).

Defendants' remaining scienter arguments also fail. That Defendants did not "ma[k]e every effort to delay the DOE's decision" (Obj. 6 n.5) is irrelevant; failure to comply with government requests for information would have been illegal, *see* Opp. 16, and would have risked the DOE's swift rejection of both GCU's nonprofit status ***and*** the transaction as a whole. Nor does this case involve a "general business motive" that is insufficient to plead scienter. Obj. 5. While it is not necessary to allege motive to plead scienter (R&R 46 n.22), GCU's new slogan—"Private. Christian. Affordable. Nonprofit."—gave the University what Defendant Mueller himself described as "a tremendous advantage" because the "stigma" of for-profit status had been removed, resulting in a "tailwind" for GCU during the period of the fraud. *See* Opp. 11; SAC ¶¶155, 157-58, 290. As the R&R held, these specific marketing benefits contribute to a "cogent" theory of scienter that, even if the DOE ultimately rejected nonprofit status, "in the meantime, GCE could earn significant revenue from the Conversion, including by increasing enrollment through misleadingly marketing GCU as a non-profit institution." R&R 61; *see also id*. 13-14, 57-59.

Finally, Defendants fail to challenge the Court's finding of scienter based on "the sunk costs Defendants had already put into preparing the application and Conversion" (R&R 59-60), which is well supported by the case law. *See Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008) (scienter where a defendant gambled on a "chance that the situation…would right itself").

6

## II.   The R&R Correctly Found That Plaintiffs Allege Actionable Misstatements

The R&R found that Defendants made five types of "relevant, actionable false and misleading statements and/or omissions," which misrepresented (1) GCU's purported independence from GCE, in statements made before the Conversion; (2) the risks of DOE denial of the request for non-profit status for GCU; (3) GCU's purported independence from GCE, in statements made after the Conversion; (4) the Conversion's similarity to other transactions; and (5) GCE's accounting and compliance with GAAP. R&R 18, 19-24, 33-44. Defendants do not object to the R&R's findings concerning the falsity of their statements touting GCU's independence from GCE, *see* Obj. 7-10, which should be adopted without any further analysis. *See Masimo Corp. v. Phillips Elec. North Amer. Corp.*, 62 F. Supp. 3d 368, 375-76 (D. Del. 2014).

Defendants' specific objections should also be rejected. ***First***, Defendants argue that facts purportedly undermining their statements comparing the "*structure* of the [Conversion] with the *structure* of the Purdue-Kaplan transaction" actually had been disclosed, and therefore that no Section 10(b) claim could arise from those statements. Obj. 7-8 (emphasis in original). This "half-formed argument," in which Defendants failed to identify *any* applicable disclosure, was squarely and properly rejected by Judge Burke. *See* R&R 42 ("Defendants do not identify any specific page in these documents that bolsters the claim that the information-at-issue was publicly available. And the Court cannot be expected to hunt blindly for supporting material in the record that may or may not be there."). In fact, Defendants did not "meaningfully rebut" Plaintiffs' argument that "the two cited documents ***do not disclose any of the above-referenced key facts about the Conversion and how it compares to the Purdue-Kaplan Deal***." (R&R 43; Opp. 10 n.8; SAC ¶¶9, 193):

> For instance, the July 2, 2018 8-K states that post-Conversion, GCE would provide services in return for 60% of GCU's tuition and fee revenue (***not*** 95% of revenue). (D.I. 63, ex. 5 at 3)  Plus, Plaintiffs alleged in the SAC ***that the revenue sources included in GCE's 60% figure were redacted from view when the MSA was filed***

7

> *publicly in February 2019*. (D.I. 60 at ¶ 133) ***This all indicates that Defendants'***
> ***blanket claim—i.e., that the facts that allegedly made these misstatements false***
> ***were already publicly available—cannot win the day here***.

R&R 43 (footnote omitted) (emphasis added); *see also* SAC ¶246 (showing redactions, using [***]

designations, from public version of MSA); D.I. 60-2, DOE Letter, at 3-9, 13-14 (showing

information concealed by GCE's confidentiality designations, *i.e.,* payments to GCE, as detailed

in the Barclays and Deloitte reports); SAC ¶¶182-200 (referencing undisclosed Conversion terms).

Defendants' Objection simply recycles their unsupported argument, without addressing the

Court's finding that Defendants failed to point to any specific language to support their claim that

the information-at-issue (most particularly the financial terms of the MSA and Asset Purchase

Agreement) was publicly disclosed. At most, Defendants disagree with Plaintiffs' factual

assertions, denying, for example, that GCE was to receive 95% of GCU's revenues post-

Conversion. Obj. 7-8. But as stated in the R&R: "The Court cannot say Plaintiffs' side of the story

is implausible (especially in light of the DOE letter)." *Id*. at 43 n.19. Moreover, while Defendants

now argue only that the "structure" of the proposed Conversion was similar to Purdue-Kaplan and

other approved transactions, Defendants' statements were far broader than comparing just the

"structure" of the transactions. *See* SAC ¶¶297, 299-300, 302-304 (transaction "almost identical").

***Second***, Defendants dispute the R&R's findings concerning some of their statements

referencing the DOE's consideration of GCU's non-profit application. Obj. 8-9. As a threshold

matter, Defendants did not challenge the falsity ***or*** materiality of these statements before Judge

Burke and have thus waived these arguments. Opp. 12, 14. Moreover, contrary to the Objection,

Plaintiffs do not only challenge Defendants' July 2, 2018 statements that "any regulatory

limitations imposed [by the DOE] could be managed" and that the DOE's ruling on the Conversion

was delayed because the DOE was "very understaffed." Plaintiffs also allege that Defendants

falsely represented that same day that "GCU has had ongoing engagement with ED about the transaction throughout the review process." *Compare* Obj. 8 *with* SAC ¶¶279, 281-282. The SAC specifically alleges, ***based on allegations that GCU included in its complaint against the DOE***, that the only communications GCE had with the DOE in May 2018 related to the DOE's interrogatories. SAC ¶283. As the R&R noted, it was "easy" to see how such statements are plausibly alleged to have been misleading, given that the SAC alleges that: (1) the DOE never told Mueller that it was understaffed; (2) the length of the review was not due to understaffing, but to the many questions the DOE had about the Conversion; and (3) the only contact Defendants had with the DOE as of July 2018 was their receipt of the May 2018 interrogatories. R&R 40.

Such affirmative misrepresentations distinguish this case from *Sanofi Secs. Litig. v. Meeker*, 87 F. Supp. 3d 510 (S.D.N.Y. 2015) (Obj. 9), where there was no "legal duty to disclose" under an omission theory and the defendants' statements accurately disclosed the design of a clinical trial consistent with investors' understanding of the FDA's "publicly stated" preference. *See* Opp. 12 n.11. Having chosen to speak about the reasons for the DOE's delay, Defendants "cannot omit material facts related to that issue so as to make its disclosure misleading." *Allegheny Cty. Employees' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 222 (E.D. Pa. 2021); *see also* R&R 34, 41. Nor can Defendants plausibly challenge the materiality of their failure to disclose the DOE interrogatories, given that "materiality is ordinarily an issue left to the factfinder" and dismissal may be granted "only if the alleged misrepresentations or omissions are so *obviously unimportant* to an investor that reasonable minds cannot differ on the question of materiality." *Energy Transfer*, 532 F. Supp. 3d at 212 n.23 (citations omitted) (emphasis in original).

Defendants' final challenge, which concerns their alleged false and misleading financial statements following the Conversion, is similarly misplaced. In proceedings before Judge Burke,

Defendants argued that Plaintiffs' accounting and GAAP claims should be dismissed for two reasons: (1) because GCU was independent of GCE, and therefore not a related party; and (2) the SAC had not alleged that GCE's outside auditor had raised concerns with GCE's accounting. *See* D.I. 62 at 18-19; D.I. 68 at 13; R&R 43-44 & n.20. Pushing those arguments aside, Defendants now argue that the R&R "erred in allowing Plaintiffs to rely solely on the DOE's determination that GCU did not qualify for nonprofit participation in Title IV to allege that Defendants made materially false and misleading statements regarding the Company's financials and its compliance with GAAP." Obj. 9-10. This argument rests on the demonstrably false premise that Plaintiffs' GAAP allegations somehow turn on the DOE's determination that GCU was not a non-profit.

Rather, the SAC alleges that GCE violated GAAP based on, *inter alia*, ASC 810 and its required consolidation of reporting of "variable interest entities" ("VIE"); facts shown in undisclosed Barclays and Deloitte Reports (which were not presented to the IRS); and an allegation that even if the IRS had deemed GCU to be a non-profit, "the exemption [under ASC 810-10-15-17] <u>does not apply</u> if the not-profit is being 'used by business reporting entities in a manner similar to a VIE in an effort to circumvent the provisions of the Variable Interest Entities Subsections.'" SAC ¶¶213-235 (quote at ¶223) (emphasis in original). Accordingly, the R&R correctly found Defendants' statements regarding GCE's compliance with GAAP to be actionable, R&R 43-44, and its reasoning should be sustained.

## III. Conclusion

For the foregoing reasons, and the reasons set forth in Plaintiffs' Opposition to the Motion to Dismiss, Plaintiffs respectfully request that the Court overrule Defendants' Objections and adopt Judge Burke's Report and Recommendation.

DATED:    March 9, 2023

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
Hannah G. Ross
Katherine M. Sinderson (*pro hac vice*)
Robert F. Kravetz (*pro hac vice*)
Michael M. Mathai (*pro hac vice*)
Benjamin W. Horowitz (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
katiem@blbglaw.com
robert.kravetz@blbglaw.com
michael.mathai@blbglaw.com
benjamin.horowitz@blbglaw.com

*Counsel for Lead Plaintiffs*
*and Lead Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
*/s/ Gregory V. Varallo*
Gregory V. Varallo (Bar No. 2242)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3601
greg.varallo@blbglaw.com

*Counsel for Lead Plaintiffs*
*and Lead Counsel for the Class*

**BARRACK, RODOS & BACINE**
Jeffrey W. Golan (*pro hac vice*)
Robert A. Hoffman
Chad A. Carder (*pro hac vice*)
3300 Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jgolan@barrack.com
rhoffman@barrack.com
ccarder@barrack.com

*Counsel for Lead Plaintiffs*
*and Lead Counsel for the Class*

**VANOVERBEKE, MICHAUD**
  **& TIMMONY, P.C.**
Aaron L. Castle (*pro hac vice*)
79 Alfred Street
Detroit, MI 48201
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
acastle@vmtlaw.com

*Additional Counsel for Lead Plaintiffs*
*Oakland County Employees' Retirement*
*System and Oakland County Voluntary*
*Employees' Beneficiary Association Trust*

11