# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re Grand Canyon Education, Inc. Securities Litigation* | Civil Action No. 20-639-JLH-CJB |

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS AND APPOINTMENT OF CLASS COUNSEL, SCHEDULING OF A FAIRNESS HEARING, AND APPROVAL OF CLASS NOTICE

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ......................................................................................... 1

II.  BACKGROUND ............................................................................................................... 2

   A.   Procedural History ...................................................................................................... 2

   B.   Terms of the Proposed Settlement .............................................................................. 4

III. ARGUMENT .................................................................................................................... 4

   A.   The Court Should Preliminarily Certify the Proposed Settlement Class ........................... 5

      1.   The Proposed Class Satisfies the Requirements of Rule 23(a) ................................... 5

      2.   The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ................ 9

         i.   Common Questions of Law and Fact Predominate .................................................... 9

         ii.  A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action .................................................................................. 10

   B.   Lead Counsel Should Be Appointed Class Counsel .................................................... 11

   C.   The Court Should Grant Preliminary Approval of the Proposed Settlement................... 12

      1.   The Proposed Settlement Is Presumptively Fair and Falls within a Range of Fairness ............................................................................................................ 13

      2.   The Proposed Settlement Is Adequate ..................................................................... 15

   D.   The Court Should Set a Fairness Hearing, and Approve the Proposed Class Notice and Method for Sending Notice to Class Members .............................................................. 18

   E.   The Proposed Settlement Approval Deadlines .......................................................... 20

IV.  CONCLUSION................................................................................................................ 20

## TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                          **<u>Page(s)</u>**

*Allegheny Cnty. Emps. Ret. Sys. v. Energy Transfer LP*,
    623 F. Supp. 3d 470 (E.D. Pa. 2022) ................................................................ 8-9

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................................. 9

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ........................................................................................... 10

*Bing Li v. Aeterna Zentaris, Inc.*,
    324 F.R.D. 331 (D.N.J. 2018) ............................................................................. 6

*Bredbenner v. Liberty Travel, Inc.*,
    2011 WL 1344745 (D.N.J. Apr. 8, 2011) .......................................................... 15

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981) ............................................................................................. 13

*Dewey v. Volkswagen Aktiengesellschaft*,
    681 F.3d 170 (3d Cir. 2012) ................................................................................ 8

*Du ex rel. Enteromedics, Inc. v. Blackford*,
    2018 WL 4691046 (D. Del. Sept. 28, 2018) .............................................. *passim*

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) .............................................................................. 12

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ........................................................................................... 10

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ...................................................................... *passim*

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .................................................... 18

*Hurwitz v. LRR Energy L.P.*,
    2018 WL 6804481 (D. Del. Jan. 2, 2018) ...................................................... 5-6

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .......................................................................... 8, 15

*In re Cendant Corp. Sec. Litig.*,
    109 F. Supp. 2d 235 (D.N.J. 2000) ................................................................... 15

*In re Gen. Motors Corp. Pick-Up Trucks Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ........................................................................ 12

*In re Heckmann Corp. Sec. Litig.*,
  2013 WL 2456104 (D. Del. June 6, 2013) ................................................ 10

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012) ..................................................................... 14

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................. 7

*In re Nat'l Football League Players Concussion Inj. Litig.*,
  821 F.3d 410 (3d Cir. 2016) ................................................................ 12, 13

*In re Pharmaprint, Inc. Sec. Litig.*,
  2002 WL 31056813 (D.N.J. Apr. 17, 2002) ............................................... 9

*In re Ravisent Techs., Inc. Sec. Litig.*,
  2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ............................................... 18

*In re Res. Am. Sec. Litig.*,
  202 F.R.D. 177 (E.D. Pa. 2001) ............................................................... 11

*In re Signet Jewelers Ltd. Sec. Litig.*
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................................... 18

*In re Tyson Foods, Inc.*,
  2003 WL 22316548 (D. Del. Oct. 6, 2003) ................................................ 8

*In re ViroPharma Inc. Sec. Litig.*,
  2016 WL 312108 (E.D. Pa. Jan. 25, 2016) .......................................... 14, 15

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ................................................................ 12, 15

*In re Wilmington Tr. Sec. Litig.*,
  2018 WL 3369674 (D. Del. July 10, 2018) .................................. 16, 17, 19, 20

*In re Wilmington Trust Sec. Litig.*,
  310 F.R.D. 243 (D. Del. 2015) ................................................................. 10

*Marcus v. BMW of N. Am., LLC*
  Marcus v. BMW of N. Am., LLC, 687 F.3d 583 (3d Cir. 2012) .................. 6

*McDermid v. Inovio Pharms., Inc.*,
  2023 WL 227355 at *12 (E.D. Pa. Jan. 18, 2023) .................................. 18, 19

*Neale v. Volvo Cars of N. Am., LLC*,
  794 F.3d 353 (3d Cir. 2015) ...................................................................... 9

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) ............................................. 7-8

*Norman v. Trans Union, LLC*,
   479 F. Supp. 3d 98 (E.D. Pa. 2020) .................................... 5

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
   63 F. Supp. 3d 394 (D. Del. 2014) ...................................... 7

*Pope v. Navient Corp.*,
   2021 WL 926611 (D.N.J. Mar. 11, 2021) .............................. 6

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
   390 U.S. 414 (1968) ...................................................... 12

*Roofer's Pension Fund v. Papa*,
   333 F.R.D. 66 (D.N.J. 2019) .......................................... 6, 10

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
   2021 WL 1540996 (N.D. Cal. Apr. 20, 2021) ....................... 12

*Serrano v. Sterling Testing Sys., Inc.*,
   711 F. Supp. 2d 402 (E.D. Pa. 2010) ................................. 13

*Sullivan v. DB Inv., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ............................................ 7

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................... 6

*Walsh v. Great Atl. & Pac. Tea Co.*,
   96 F.R.D. 632 (D.N.J.) ................................................. 13

## **Rules**

Federal Rule of Civil Procedure 23 ..................................... *passim*

## I.   PRELIMINARY STATEMENT

Lead Plaintiffs Fire and Police Pension Association of Colorado ("Colorado FPPA"), Oakland County Employees' Retirement System ("Oakland County ERS"), and Oakland County Voluntary Employees' Beneficiary Association Trust (collectively with Oakland County ERS, "Oakland County," and together with Colorado FPPA, "Lead Plaintiffs"), on behalf of themselves and the Settlement Class (defined below), with concurrence of Defendants, seek preliminary approval of a settlement that provides a non-reversionary fund of $25,500,000 ("Settlement Amount") for the benefit of the Settlement Class.[1] Lead Plaintiffs further seek, in accordance with the Settlement Agreement, preliminary certification of the proposed Settlement Class and approval of the form, content, and manner of distribution of the proposed Notices and Proof of Claim form, as reflected in the Parties' proposed Preliminary Approval Order.

Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement represents a favorable result for the Settlement Class considering the benefits of the significant cash settlement and the serious risks faced in continuing to litigation. There were material risks attendant to continued litigation. For example, with respect to GCE's accounting treatment of Grand Canyon University ("GCU"), Defendants contended that their outside auditors and the SEC reviewed and approved GCE's accounting decisions <u>before</u> GCE made any related statements. Therefore, Lead Plaintiffs faced significant hurdles in showing that GCE's statements of accounting judgment (even if proven to be incorrect) were made with scienter. Similarly, Defendants argued that their statement that the DOE's delay in approving the transaction was due to "understaffing" was not

---

[1] Capitalized terms not otherwise defined in this memorandum, including the term "Defendants" and "Parties," have the same meaning as those defined in the Stipulation and Agreement of Settlement ("Settlement Agreement").  Defendants consist of Grand Canyon Education, Inc. ("GCE" or the "Company") and Brian E. Mueller and Daniel E. Bachus (collectively, the "Individual Defendants").

knowingly false, because it was based on information provided to them by their advisors. Defendants additionally argued that the disclosure of the Citron Report, which caused the majority of Lead Plaintiffs' damages, cannot serve as a corrective disclosure because it did not reveal any new information to the market. Considering these and myriad other risks, as well as the costs and delays of continued litigation, Lead Plaintiffs and Lead Counsel believe the $25.5 million Settlement is a very favorable result for the Settlement Class.

## II.  BACKGROUND

### A.  Procedural History[2]

On May 12, 2020, the first of the related securities class actions was filed in the United States District Court for the District of Delaware (the "Court"). On August 13, 2020, the Court appointed Lead Plaintiffs and approved their selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Barrack, Rodos & Bacine ("Barrack") as Lead Counsel. D.I. 28.

On October 20, 2020, Lead Plaintiffs filed the Consolidated Complaint, which asserted claims on behalf of all persons and entities who purchased the common stock of Grand Canyon Education, Inc. from January 5, 2018 through January 27, 2020, inclusive (the "Class Period"). D.I. 34. The Consolidated Complaint alleged that Defendants made materially false and misleading statements or omissions regarding Grand Canyon's 2018 sale of Grand Canyon University to an entity organized as an Arizona nonprofit corporation. The Consolidated Complaint asserted (i) claims under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, against all Defendants; and (ii) claims under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the Individual Defendants.

---

[2] The extensive procedural history of this Action will be set forth in greater detail in connection with Lead Plaintiffs' motion for final approval of the Settlement.

Defendants moved to dismiss the Consolidated Complaint. Following full briefing, Magistrate Judge Christopher J. Burke held oral argument on May 26, 2021. On August 9, 2021, Magistrate Judge Burke issued a Report and Recommendation recommending the Court grant Defendants' motion to dismiss and permit Lead Plaintiffs to file an amended complaint. D.I. 50 ("8/9/2021 R&R"). Lead Plaintiffs did not seek District Court review of the 8/9/2021 R&R and, on August 23, 2021, the Court adopted Magistrate Judge Burke's Report and Recommendation and permitted Lead Plaintiffs to file an amended complaint. D.I. 54.

Lead Plaintiffs filed a Second Amended Consolidated Complaint (the "SAC" or the "Complaint") on January 21, 2022, which contained new allegations meant to address the concerns identified by Magistrate Judge Burke. D.I. 60. Defendants filed a motion to dismiss the SAC and, following full briefing, oral argument on the motion was held on October 25, 2022. On February 17, 2023, Magistrate Judge Burke issued a Report and Recommendation to deny Defendants' motion to dismiss the SAC. D.I. 80 ("2/17/2023 R&R"). On March 28, 2023, District Judge Noreika held oral argument on Defendants' objections to the 2/17/2023 R&R, after which she overruled Defendants' objections and adopted the Report and Recommendation.

Discovery in the Action commenced in April 2023. Defendants produced more than 250,000 pages of documents to Lead Plaintiffs, and third parties additionally produced thousands of documents. At the time the Parties reached a settlement, Lead Plaintiffs had filed for class certification (D.I. 126-128) and the Parties were about to commence depositions.

The Parties began exploring the possibility of a settlement in the fall of 2023. The Parties agreed to engage in private mediation and retained Michelle Yoshida, of Phillips ADR Enterprises, to act as mediator in the Action (the "Mediator"). After exchanging detailed mediation statements, the Parties conducted their first mediation before Ms. Yoshida on November 14, 2023, which

ended without any agreement being reached.

On February 21, 2024, after again exchanging and submitting mediation statements, the Parties participated in a second full-day mediation session before the Mediator. At the conclusion of the mediation session, the Mediator made a recommendation that the Action be settled for $25.5 million, which the Parties accepted. The agreement's terms were memorialized in a term sheet executed on February 23, 2024. The Parties entered into the final binding Settlement Agreement on March 25, 2024.

### B.  Terms of the Proposed Settlement

The Settlement Agreement is attached as Exhibit 1 to the accompanying Motion. The proposed Settlement Agreement is intended to resolve all Settlement Class Members' claims arising out of the misstatements and omissions, and violations of law alleged in the Complaint. In exchange for a release of liability from those Settlement Class members who choose to remain in the Settlement Class, Defendants have agreed to establish a common settlement cash fund of $25,500,000. Ex. 1, at ¶¶ 1(rr), 4-14. After payment of the costs to administer the Settlement Fund, taxes, attorneys' fees and Litigation Expenses, including any awards granted to Lead Plaintiffs pursuant to the PSLRA, the Settlement Administrator will distribute on a *pro rata* basis the Net Settlement Fund to Settlement Class Members who submit valid Proof of Claims. If the Settlement is approved, no portion of the Settlement Fund will be returned to Defendants.

### III.  ARGUMENT

Under Federal Rule of Civil Procedure 23(e), Court approval of a proposed class action settlement is a two-step process. *First*, the Court determines whether to grant preliminary approval of the settlement and allow notice of the Settlement to be disseminated to class members. *See* Fed. R. Civ. P. 23(e)(1). *Second*, following notice to the class, the Court determines whether to approve the settlement at a final approval hearing. *See* Fed. R. Civ. P. 23(e)(2).

Rule 23(e)(1) provides that a court should grant preliminary approval of a proposed settlement based on a finding that it "will likely be able" to (i) finally approve the Settlement under Rule 23(e)(2), and (ii) certify the class for purposes of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). As detailed below, the proposed Settlement warrants preliminary approval.

**A.  The Court Should Preliminarily Certify the Proposed Settlement Class**

The Parties have stipulated to certification of a proposed Settlement Class, for purposes of the Settlement only, consisting of all persons and entities who purchased GCE common stock during the Class Period and were damaged thereby. *See* Ex. 1 ¶¶ 1(ss), 2.[3] At the preliminary approval stage, the Court need only determine whether it "will likely be able to" grant certification to the Settlement Class at final approval. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). The proposed Settlement Class satisfies the applicable requirements of Rules 23(a) and 23(b)(3).

**1.  The Proposed Class Satisfies the Requirements of Rule 23(a)**

a.  <u>Numerosity</u>

The Settlement Class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). "[I]f the potential number of plaintiffs is more than forty, the first prong of Rule 23(a) has been met." *Norman v. Trans Union, LLC*, 479 F. Supp. 3d 98, 135 (E.D. Pa. 2020).[4] GCE had over 47 million shares of common stock outstanding during the Class Period. *See* Cain Rpt. ¶ 70, Cain Rpt. Ex. 10 (D.I. 131-5); *see also Hurwitz v. LRR Energy L.P.*, 2018

---

[3] Excluded from the Settlement Class are "(i) Defendants; (ii) the Immediate Family Members of any Individual Defendant; (iii) any person who is, or was during the Class Period, an Officer or director of Grand Canyon and any their Immediate Family Members; (iv) any affiliates or subsidiaries of Grand Canyon; (v) any entity in which any Defendant or any of their Immediate Family Members has or had a controlling interest; and (vi) the legal representatives, heirs, agents, affiliates, successors, or assigns of any such excluded persons and entities. Also excluded from the Settlement Class are any persons who exclude themselves by submitting a request for exclusion that is accepted by the Court." Ex. 1 ¶¶ 1(ss), 2.

[4] Unless otherwise indicated, internal quotation marks and citations are omitted.

WL 6804481, at *1 (D. Del. Jan. 2, 2018) (numerosity met where 15.4 million units issued). Further, GCE stock traded on the NASDAQ, supporting the "presumption that the numerosity requirement is satisfied when a class action involves a nationally traded security." *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 339-40 (D.N.J. 2018), *aff'd sub nom. Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. May 30, 2019).

           b. <u>Commonality</u>

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality element requires that plaintiffs "share at least one question of fact or law with the grievances of the prospective class." *Du ex rel. Enteromedics, Inc. v. Blackford*, 2018 WL 4691046, at *4 (D. Del. Sept. 28, 2018). However, commonality "does not require identical claims or facts among class member[s]," *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597-98 (3d Cir. 2012), and even a single common question will do. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Third Circuit courts "have recognized that securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made misrepresentations that inflated the price of its stock." *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 74-75 (D.N.J. 2019).

Here, common questions include, among others: (i) whether Defendants violated the federal securities laws; (ii) whether Defendants' public statements during the Class Period misrepresented or omitted material facts needed to make the statements not misleading under the circumstances; (iii) whether Defendants acted with scienter in issuing false and misleading statements; (iv) whether the price of GCE common stock was artificially inflated by Defendants' statements; and (v) whether Defendants' conduct caused Settlement Class members to sustain damages. *See Pope v. Navient Corp.*, 2021 WL 926611, at *6 (D.N.J. Mar. 11, 2021). These

common questions will "generate common answers apt to drive the resolution of the litigation." *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 299 (3d Cir. 2011). Thus, this element is met.

      c.   <u>Typicality</u>

"Where claims of the representative plaintiffs arise from the same alleged wrongful conduct on the part of the defendant, the typicality prong is satisfied." *Du*, 2018 WL 4691046, at *4 (citation omitted). "Factual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009). Here, Lead Plaintiffs' claims are typical of, if not virtually identical to, the claims of other members of the Settlement Class. The same course of conduct, *i.e.*, Defendants' series of alleged misstatements and omissions to investors, gives rise to the claims of Lead Plaintiffs and other investors in GCE's common stock. Likewise, Lead Plaintiffs and the other Settlement Class members share the same legal theory—namely, that Defendants' alleged misstatements and omissions violated the Exchange Act and caused Lead Plaintiffs and other Settlement Class members to purchase GCE stock at inflated prices. *See OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 401 (D. Del. 2014). Accordingly, Lead Plaintiffs' claims satisfy Rule 23(a)(3).

      d.   <u>Adequacy</u>

To meet the requirement under Rule 23(a)(4) that the class representatives "fairly and adequately protect the interests of the class," the district court must find that (1) the class representatives' interests do not "conflict with those of the class," and (2) the proposed class counsel are "capable of representing the class." *Newton v. Merrill Lynch, Pierce, Fenner &*

*Smith, Inc.*, 259 F.3d 154, 185 (3d Cir. 2001).

Here, Lead Plaintiffs are adequate class representatives because their substantial financial stake in the litigation provides "the ability and incentive represent the claims of the class vigorously[.]" *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001). If this case had gone to trial, in proving their own claims, Lead Plaintiffs would also have proven the claims of the Class. No facts suggest any conflict of interest or other antagonism between Lead Plaintiffs and the Settlement Class. *Cf. Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012) (noting that "minor conflicts alone" will not defeat party's claim to class certification).

Further, Lead Plaintiffs understand the fiduciary obligations owed to the Settlement Class and have demonstrated their commitment to "fairly and adequately protect the interests of the class" by vigorously prosecuting this action on behalf of themselves and all other Settlement Class members. *See* D.I. 131-1 & 131-2 (Lead Plaintiffs' Declarations in support of motion for class certification). Over the past three years, Lead Plaintiffs have been actively overseeing and involved in this litigation by, among other things, receiving and reviewing periodic updates and other correspondence from counsel, participating in discussions with counsel regarding the litigation, attending court hearings, reviewing drafts of filings and discovery responses, and conducting searches for materials responsive to discovery requests. D.I. 131-1 ¶ 5; D.I. 131-2 ¶ 5. Moreover, as institutional investors, Lead Plaintiffs are exactly the type of investor expressly "favor[ed]" by Congress to lead securities class actions. *In re Tyson Foods, Inc.*, 2003 WL 22316548, at *6 (D. Del. Oct. 6, 2003).

Lead Plaintiffs' selection of counsel further demonstrates adequacy. Bernstein Litowitz and Barrack are highly qualified and experienced in prosecuting securities class actions and, both jointly and independently, have recovered billions of dollars on behalf of investors in some of the largest and most complex securities class actions in history. D.I. 15 at 18-20; *see also*

*Allegheny Cnty. Emps. Ret. Sys. v. Energy Transfer LP*, 623 F. Supp. 3d 470, 511 (E.D. Pa. 2022) (finding the two firms adequate class counsel given their "extensive history litigating securities class actions" and competent representation throughout the action). Moreover, Lead Counsel "have spent significant time, effort, and resources on the case, demonstrating their commitment to the class." *Du*, 2018 WL 4691046, at *5. Accordingly, Lead Plaintiffs are adequate.

### 2.   The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

This Action also satisfies Rule 23(b)(3), which requires that: (i) common issues predominate over individual questions, and (ii) the class action is superior to other available means of adjudication. Fed. R. Civ. P. 23(b)(3). Both elements are met here.

### i.   Common Questions of Law and Fact Predominate

The Supreme Court has recognized that predominance is "readily met" in securities fraud suits like this one. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Where common questions of law or fact outnumber those affecting only individual class members, predominance is satisfied. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 371 (3d Cir. 2015). Common question may predominate even with differences between class members. *Id.*

Here, the Settlement Class's claims all arise from the same conduct and would have been proven through common evidence. The Settlement Class's injuries are predicated on the same alleged artificial inflation and subsequent decline in GCE's stock price after the corrective disclosures alleged in the Complaint. *See also In re Pharmaprint, Inc. Sec. Litig.*, 2002 WL 31056813, at *7 (D.N.J. Apr. 17, 2002) (common issues predominant based on "allegation that Defendants made material misrepresentations to the general investing public"). Moreover, Lead Plaintiffs' expert determined that damages can be calculated on a class-wide basis through one or more common methodologies, D.I. 131-5, Cain Rpt. ¶¶ 78-89, which suffices to meet the

predominance requirement. *See Roofer's*, 333 F.R.D. at 88; *In re Wilmington Trust Sec. Litig.*, 310 F.R.D. 243, 246 (D. Del. 2015).

Common questions further predominate here because, as Lead Plaintiffs submitted in their motion for class certification, the Settlement Class is entitled to a presumption of reliance. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) ("Whether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance."). Courts employ a rebuttable presumption of reliance for securities class actions where there has been a "fraud on the market." *Basic Inc. v. Levinson*, 485 U.S. 224, 241, 248 (1988). As discussed in Lead Plaintiffs' memorandum of law submitted in support of the class motion, had this case gone to trial, Lead Plaintiffs would have been entitled to a presumption of reliance based on the fraud-on-the-market theory. *See* D.I. 130, at 12-18.

### ii. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action

Rule 23(b)(3) directs courts to consider four factors in evaluating whether a class action is superior to other available methods of adjudication: (i) the interest of class members in individually controlling separate actions; (ii) the extent and nature of any litigation already underway; (iii) the desirability of concentrating the litigation in the forum; and (iv) the manageability of a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). Each favors certification here.

Superiority "is easily satisfied in securities fraud cases where there are many individual plaintiffs who suffer damages too small to justify a suit against a large corporate defendant." *In re Heckmann Corp. Sec. Litig.*, 2013 WL 2456104, at *8 (D. Del. June 6, 2013). Lead Plaintiffs are unaware of any Settlement Class member who would prefer to prosecute his or her claims individually or of any individual litigation seeking the same redress as this Action. In addition, the geographical dispersion of Settlement Class Members means that it is desirable for their claims to

be litigated in a single forum to avoid inconsistent adjudications and promote fairness and efficiency. Finally, this case presents no management difficulties, since the claims of Lead Plaintiffs and the Settlement Class center on common issues. Judicial economy and the best interests of the Settlement Class thus favor class certification. *See In re Res. Am. Sec. Litig.*, 202 F.R.D. 177, 191 (E.D. Pa. 2001) (finding superiority where "the costs of maintaining individual actions … would be prohibitive," and the class would not be "inefficient or unmanageable," as the "claims center on common questions of law and fact" and "require the same sort of proof").

Thus, all requirements for preliminary certification of the Settlement Class under Rule 23(a) and (b)(3) have been met.

### B.   Lead Counsel Should Be Appointed Class Counsel

Federal Rule of Civil Procedure 23(e) requires a court to appoint class counsel when certifying a class action. In appointing class counsel, courts consider counsel's work "in identifying or investigating potential claims," "experience in handling class actions," "knowledge of the applicable law," and "the resources that counsel will commit to representing the class." Rule 23(g)(1). Lead Plaintiffs ask that Lead Counsel, Barrack and Bernstein Litowitz, be appointed as Class Counsel. Lead Counsel have decades of experience handling securities class action litigation, have demonstrated a sound knowledge of the legal and factual issues pertaining to the challenged statements and omissions in this matter, having already successfully steered the Action past Defendants' motion to dismiss, undertaken extensive discovery, filed a comprehensive motion for class certification supported by their own memorandum of law and a market efficiency report from an expert that Lead Counsel retained, and negotiated the proposed Settlement. These facts amply support appointing Barrack and Bernstein Litowitz as Class Counsel pursuant to Rule 23(e).

In addition to their individual case achievements, these firms have worked together as co-lead counsel in achieving the largest recovery in a securities class action in this Circuit, in *Cendant*

($3.32 billion), as well as significant recoveries for investors in *WorldCom* (S.D.N.Y., $6.19 billion), *McKesson* (N.D. Cal., $1.05 billion), *DaimlerChrysler* (D. Del., $300 million), *Mills Corporation* (E.D. Va., $202.75 million), and *DFC Global* (E.D. Pa., $30 million), among others. *See* D.I. 15 at 18-20. Bernstein Litowitz and Barrack are, thus, eminently qualified to prosecute this Action and serve as Class Counsel for the proposed Settlement Class.[5]

### C.  The Court Should Grant Preliminary Approval of the Proposed Settlement

Under Federal Rule of Civil Procedure 23(e), a class action settlement may be approved upon a judicial finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) ("*NFL Players*"). There is a "strong presumption in favor of voluntary settlement" agreements. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010); *see also In re Gen. Motors Corp. Pick-Up Trucks Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("*GMC Trucks*"). The presumption in favor of settlement is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Ehrheart*, 609 F.3d at 595 (quoting *GMC Trucks*, 55 F.3d at 784).

The ultimate determination of whether a proposed class action settlement warrants approval lies within the court's discretion. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424-25 (1968); *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). "Courts judge

---

[5] Attached to the Motion as Exhibit 2 is a true and correct copy of an order issued in April 2021 in an unrelated action where Bernstein Litowitz served as lead counsel for a different lead plaintiff and as class counsel for a certified class. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996 (N.D. Cal. Apr. 20, 2021). This Order was previously submitted to the Court in connection with Lead Plaintiffs' motion for class certification (D.I. 131-10) and was discussed in the accompanying declaration (D.I. 131, at ¶ 9). It is being submitted again because the court in *Symantec* ordered Bernstein Litowitz to bring the Order to the attention of any court in which the firm seeks appointment as a lead counsel and/or as class counsel for a settlement class.

the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement…. They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n.14 (1981); *see also Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983). In determining the adequacy of a proposed settlement, a court should ascertain whether the settlement is within a range that responsible and experienced attorneys could accept, considering all relevant risks. *See Serrano v. Sterling Testing Sys., Inc*., 711 F. Supp. 2d 402, 414 (E.D. Pa. 2010). However, a proposed class action settlement is considered presumptively fair where, as here, the parties have engaged in arm's length negotiations through experienced counsel after sufficient discovery. *See, e.g.*, *NFL Players*, 821 F.3d at 436.

Federal Rule of Civil Procedure 23(e)(2) directs the Court to consider whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Girsh*, 521 F.2d at 157 (enumerating nine factors).

As shown below, the proposed Settlement Agreement is a favorable result for the Settlement Class in light of the risks, costs, and delays attendant to continued litigation, is presumptively fair, and the Rule 23(e)/*Girsh* factors weigh strongly in favor of preliminary approval of the Settlement Agreement. Accordingly, the Court should enter the [Proposed] Preliminary Approval Order.

### 1. The Proposed Settlement Is Presumptively Fair and Falls within a Range of Fairness

The first two factors under Rule 23(e)(2) are the adequacy of representation for the class and

the arm's-length nature of the settlement negotiations.  *See* Fed. R. Civ. P. 23(e)(2)(A)-(B).  These two factors overlap with the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed.  *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) (courts have held that "a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors.").

As discussed above (Sections III.A.1.d and III.B), Lead Plaintiffs and their counsel, firms that are highly experienced in prosecuting complex securities class actions and have done so together in several notable cases leading to very significant recoveries on behalf of investor classes, have adequately represented the members of the proposed Settlement Class, as required by Rule 23(e)(2)(A).  Rule 23(e)(2)(B) also looks at whether the Settlement was negotiated at arm's length. *See In re ViroPharma Inc. Sec. Litig.*, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016) (approving settlement after arm's length negotiation overseen by Phillips ADR Enterprises after the parties "had fully briefed the main issues in the case and conducted merits-based . . . discovery"). As detailed above, the first mediation—which did not result in a settlement—took place in November 2023. After further litigation in the Action, settlement discussions continued (including interim negotiations and discussions between mediation sessions) and culminated in a second mediation on February 21, 2024. At the conclusion of the second mediation session, the Parties each accepted the Mediator's proposal to settle the case for the Settlement Amount. The two mediation sessions were conducted with each side having full knowledge of the crucial issues in the case and the benefit of extensive document productions. All negotiations were difficult, adversarial, and vigorously conducted by both sides, as Defendants too are represented by highly sophisticated counsel with extensive experience in securities class action litigation.

"Participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'" *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011). The Parties chose to mediate with Ms. Yoshida because she is highly skilled and widely recognized as an effective mediator. This further attests to the hard-fought nature of the negotiations and the Parties' thorough understandings of the strengths and weaknesses of the case.

Since extensive litigation and discovery have already taken place, "counsel had an adequate appreciation of the merits of the case before negotiating" the Settlement Agreement. *Warfarin*, 391 F.3d at 537. As detailed above, Lead Plaintiffs knew what facts would be contested and what hurdles would need to be overcome at trial. All of this, combined with counsel's extensive securities class action litigation experience, was more than sufficient to evaluate the relative strengths and weaknesses of the claims and defenses in this case at the mediation. *See, e.g., Du*, 2018 WL 4691046, at *6. As such, Lead Plaintiffs and their counsel believe that the Settlement Agreement is in the best interests of the Settlement Class and their conclusion is to be afforded considerable weight. *See ViroPharma*, 2016 WL 312108, at *11 ("[W]hen the settlement results from arm's-length negotiations, the Court 'affords considerable weight to the views of experienced counsel regarding the merits of the settlement.'"); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000), *aff'd in relevant part,* 264 F.3d 201 (3d Cir. 2001).

### 2. The Proposed Settlement Is Adequate

Rule 23(e)(2)(C)(i), which overlaps *Girsh* factors 1 and 4-9, instructs the Court to consider the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal could inevitably impose. Fed. R. Civ. P. 23(e)(2)(C)(i); *Girsh*, 521 F.2d at 157 (factor one focuses on the complexity, expense, and likely duration of the litigation; factors four through nine focus on the risks). These factors likewise weigh in favor of preliminary approval of the Settlement Agreement.

15

This case, which was filed in early 2020, faces the same risks inherent in any federal litigation, compounded by the length of time that summary judgment, trial, and any appeals would consume. *See In re Wilmington Tr. Sec. Litig.*, 2018 WL 3369674, at *5 (D. Del. July 10, 2018) (finding "the settlement agreements facially provide a reasonable and substantial benefit to the class, especially in light of the complexity and likely duration of the case, the expense of bringing it to trial, and the risks to both sides that would be present at trial").

The negotiation of a common cash fund requiring Defendants to pay or cause to be paid $25.5 million is, Lead Plaintiffs and their counsel submit, fair, reasonable, and adequate considering the risks of continued litigation, which would require Lead Plaintiffs to prove their claims based on the alleged misrepresentations and omissions, and further prove loss causation attributable to both of the alleged curative disclosures, as well as damages issues at trial. *See Girsh*, 521 F.2d at 157 (risks of establishing liability and damages are factors that can support settlement approval). Defendants have been consistently zealous in their opposition to Lead Plaintiffs' claims, and to Lead Plaintiffs' position that a class would ultimately have been certified and sustained on appeal based on both of the alleged curative disclosures. The same degree of zealous defense can be expected at all future phases of these proceedings should the Settlement Agreement not be approved. For example, as noted above, Lead Plaintiff faced challenges in proving that Defendants made false statements with scienter.  Among other things, Defendants would argue that GCE's outside auditors and the SEC had reviewed and approved GCE's accounting treatment for GCU before Defendants made any related statements on that subject, and that Defendants' statement that the DOE's delay in approving the transaction was due to "understaffing" was not knowingly false because it was based on information provided to them by their advisors.

There is certainly no guarantee that Lead Plaintiffs would succeed on their motion for class

16

certification or the anticipated summary judgment and *Daubert* motions, let alone at trial. And as with any case that goes before a jury, there is significant risk of losing. Thus, while Lead Plaintiffs believe their case is strong, they and Class Counsel acknowledge the risks to the ultimate recovery if litigation continues. Settlement removes all risk, uncertainty, and delay, and confers immediate monetary and other benefits to the class. Thus, Lead Plaintiffs and their counsel respectfully submit that the Settlement Agreement is reasonable and should be preliminarily approved. *See Girsh*, 521 F.2d at 157.

Finally, Rule 23(e)(2)(C) requires the Court to consider the effectiveness of the proposed method for distributing relief, the terms of the proposed attorneys' fees, and the existence of any other "agreement[s]." Fed. R. Civ. P. 23(3)(2)(C)(ii)-(iv). The mechanics and efficacy of the distribution process are straight-forward: in return for the release of any claims challenging Defendants' alleged misrepresentations and omissions, Settlement Class Members who choose to remain in the Settlement Class are entitled to submit a proof of claim form and, thus, participate in the Settlement and receive a cash payment equal to their *pro rata* share of the Net Settlement Amount, subject to a minimum payment of $10. *See Wilmington Tr.*, 2018 WL 3369674, at *5 (granting preliminary approval of settlement using comparable method for distributing relief).

The Settlement Agreement provides that Lead Counsel, on behalf of all Plaintiffs' Counsel, will apply to this Court for an award of attorneys' fees and litigation expenses before the objection deadline and thus well in advance of the Settlement Hearing. As stated in the proposed Notice, Lead Counsel will request approval of attorneys' fees not to exceed 23% of the Settlement Fund, and payment of litigation expenses, including the requested PSLRA cost reimbursements to Lead Plaintiffs, only after the Court has issued such a fee and expense award and approved the Settlement. Ex. A-1 at ¶ 5. The Settlement is not conditioned on the Court's approval of these fee

17

and expense requests. Ex. 1 ¶¶15-16.

A 23% fee request is well within the norm for awards in common fund cases, since such fee awards "generally range from 19% to 45% of the settlement fund." *McDermid v. Inovio Pharms., Inc*., 2023 WL 227355 at *12 (E.D. Pa. Jan. 18, 2023) (quotation and citation omitted); *accord In re Ravisent Techs., Inc. Sec. Litig*., 2005 WL 906361, at *11 (E.D. Pa. Apr. 18, 2005) ("[C]ourts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses."). The Court should also take notice that the fee request has been approved by the duly-appointed Lead Plaintiffs, institutional investors that have supervised and overseen Class Counsel's litigation of this case.

In addition, Lead Plaintiffs have identified all agreements made in connection with Settlement. In addition to the Settlement Agreement, Lead Plaintiffs and Defendants have entered into a confidential Supplemental Agreement regarding requests for exclusion from the Settlement Class. *See* Ex. 1 ¶ 36. This agreement establishes the conditions under which Defendants may terminate the Settlement if the "opt-outs" from the Settlement Class exceed an agreed-upon threshold. "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020).[6]

### D.  The Court Should Set a Fairness Hearing, and Approve the Proposed Class Notice and Method for Sending Notice to Class Members

Under Rule 23, the Court "must direct notice in a reasonable manner to all class members

---

[6] As is standard in securities class actions, agreements of this kind are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact an individual settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts."). In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera* if the Court requests.

who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23 requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Here, the Parties have negotiated the form of the notice to be disseminated to all persons who fall within the definition of the Settlement Class, attached as Exhibit 1 to the proposed Preliminary Approval Order.

The proposed form of Notice apprises Settlement Class Members of, *inter alia*, the nature of the Action, the definition of the Settlement Class, the issues in the Action, and the claims that will be released. The Notice also: (i) advises that a Settlement Class Member may enter an appearance through counsel, if desired, but that no affirmative action is required to join the Settlement Class; (ii) describes the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3); (iii) states the procedures and deadlines for Settlement Class Members to exclude themselves from the Settlement Class and to file an objection to any aspect of the proposed Settlement, including the requested approval of the proposed Plan of Allocation and/or Class Counsel's attorneys' fees and expenses; (iv) states the basis, method of calculation, and timeline to recover from the Settlement; and (v) provides the date, time, and location of the Settlement Hearing. *Accord Inovio*, 2023 WL 227355, at *4; *Wilmington Tr.*, 2018 WL 3369674, at *6.

The Notice will be sent using the reliable mailing information obtained from GCE's transfer agent and will further be sent to over 4,000 brokerage and other firms that regularly serve as custodians and advisors of investors. Additionally, the Notice, along with the Proof of Claim Form, will be posted on a settlement website, and the Summary Notice will be published in the *Investor's Business Daily* and released over PRNewswire, to further apprise potential Settlement Class Members and their agents of the proposed settlement. Such manner of providing notice

represents the best way practicable under the circumstances and thus satisfies the requirements of due process and Rule 23. *See Wilmington Tr.*, 2018 WL 3369674, at *5-6; *Du*, 2018 WL 4691046, at *7.

Class Counsel also request that the Court appoint JND Legal Administration ("JND") as Claims Administrator to provide all notices approved by the Court to Settlement Class Members and to assist in administering the Settlement as provided in the Settlement Agreement. JND, which was selected pursuant to a "request for proposal" process undertaken by Class Counsel, is a recognized leader in legal administration services for class action settlements. *See* https://www.jndla.com/documents/fact-sheets/jnd-class-action-administration.pdf.

### E.    The Proposed Settlement Approval Deadlines

The Parties respectfully propose for the Court's consideration the schedule for Settlement-related events as set forth in Appendix A to this brief, which is incorporated into the [Proposed] Preliminary Approval Order. If the Court agrees with the proposed schedule, Lead Plaintiffs request that the Court schedule the Settlement Hearing for a date 100 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. If the Court grants preliminary approval as requested, the only date that the Court need schedule is the date for the final Settlement Hearing. The remaining dates will be determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled.

## IV.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs' Motion, which is unopposed and supported by Defendants, should be granted in its entirety.

Dated:  March 29, 2024

**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
Hannah G. Ross
Katherine M. Sinderson (*pro hac vice*)
Robert F. Kravetz (*pro hac vice*)
Michael M. Mathai (*pro hac vice*)
Sarah Schmidt
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
katiem@blbglaw.com
robert.kravetz@blbglaw.com
michael.mathai@blbglaw.com
sarah.schmidt@blbglaw.com

**BARRACK, RODOS & BACINE**
Jeffrey W. Golan (*pro hac vice*)
Robert A. Hoffman
Chad A. Carder (*pro hac vice*)
Jordan R. Laporta
3300 Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jgolan@barrack.com
rhoffman@barrack.com
ccarder@barrack.com
jlaporta@barrack.com

*Counsel for Lead Plaintiffs*
*and Lead Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
*/s/ Gregory V. Varallo*
Gregory V. Varallo (Bar No. 2242)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3601
greg.varallo@blbglaw.com

*Counsel for Lead Plaintiffs*
*and Lead Counsel for the Class*

**VANOVERBEKE, MICHAUD**
   **& TIMMONY, P.C.**
Aaron L. Castle (*pro hac vice*)
79 Alfred Street
Detroit, MI 48201
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
acastle@vmtlaw.com

*Additional Counsel for Lead Plaintiffs*
*Oakland County Employees' Retirement*
*System and Oakland County Voluntary*
*Employees' Beneficiary Association Trust*

21

**Appendix A**
**Proposed Schedule of Settlement Events**

| Event | Proposed Timing | Example Date[7] |
|---|---|---|
| Defendants' deadline to serve notices of the proposed Settlement in compliance with, the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715. | 10 calendar days after filing of Lead Plaintiffs' Motion for Preliminary Approval. | April 8, 2024 |
| Deadline for commencing mailing of the Notice to Settlement Class Members, and posting the Notice on the Settlement website (the "Notice Date"). | 15 business days after entry of the Preliminary Approval Order. | April 26, 2024 |
| Deadline for publication of the Summary Notice | 10 business days after the Notice Date | May 10, 2024 |
| Deadline for Lead Plaintiffs to file papers in support of final approval of Settlement and motion for attorneys' fees and expenses, including Lead Plaintiffs' PSLRA awards. | 35 days prior to the Settlement Hearing. | June 10, 2024 |
| Deadline for receipt of exclusion (opt out) requests and objections. | 21 days prior to the Settlement Hearing | June 24, 2024 |
| Deadline for Lead Plaintiffs to file reply papers in support of final approval, and submit proof of mailing of Notice. | 7 days prior to the Settlement Hearing. | July 8, 2024 |
| Settlement Hearing. | To be set by the Court at least 100 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. | July 15, 2024 |
| Deadline for Settlement Class Members to submit Claim Forms. | 120 days after the Notice Date | August 26, 2024 |

---

[7] The example dates provided are based on the assumptions that the Court enters the Preliminary Approval Order on April 5, 2024, and schedules the Settlement Hearing for July 15, 2024.