# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re Grand Canyon Education, Inc. Securities Litigation* | Civil Action No. 20-639-JLH-CJB |

## MEMORANDUM OF LAW IN SUPPORT OF
## LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
## <u>CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION</u>

**TABLE OF CONTENTS**

**Page No.**

I.   PRELIMINARY STATEMENT ......................................................................................1

II.  THE SETTLEMENT WARRANTS FINAL APPROVAL...............................................4

    A.   Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class.................................................................................................5

    B.   The Settlement Resulted from Extensive Arm's Length Negotiations Supervised by an Experienced Mediator .................................................................6

    C.   The Settlement Provides the Settlement Class with Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and Other Relevant Factors......................................................................................................7

        1.   The Complexity, Expense, and Likely Duration of the Litigation ..............8

        2.   The Risks of Continued Litigation................................................................8

        3.   Risks to Establishing Liability and Damages ..............................................9

        4.   Risks to Maintaining the Class Action Through Trial ...............................11

        5.   The Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and the Risks of Litigation .........................................11

        6.   Stage of the Proceedings and Amount of Discovery Completed...............13

        7.   The Ability of Defendants to Withstand a Greater Judgment....................13

        8.   The Reaction of the Settlement Class to Date ...........................................14

        9.   The Relevant *Prudential* Factors Also Support the Settlement.................14

    D.   The Remaining Rule 23(e)(2) Factors Support Approval of the Settlement .........15

III. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION............................17

IV.  THE NOTICE SATISFIED RULE 23, DUE PROCESS, AND THE PSLRA .................19

V.   CONCLUSION...........................................................................................................20

**TABLE OF AUTHORITIES**

**Cases**                                                                   **Page(s)**

*Alves v. Main*,
2012 WL 6043272 (D.N.J. Dec. 4, 2012), *aff'd,* 559 F. App'x 151 (3d Cir. 2014) ..............................................................................................................5, 7

*In re AT & T Corp., Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006)......................................................................................11

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013)......................................................................................20

*Beneli v. BCA Fin. Servs., Inc.*,
324 F.R.D. 89 (D.N.J. Feb. 6, 2018).........................................................................18

*Carter v. Vivendi Ticketing US LLC*,
2023 WL 8153712 (C.D. Cal. Oct. 30, 2023)............................................................7

*In re Cendant Corp.*,
264 F.3d 201 (3d Cir. 2001)......................................................................................13

*Dartell v. Tibet Pharms., Inc.*,
2017 WL 2815073 (D.N.J. June 29, 2017) ...............................................................13

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010)........................................................................................4

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)..................................................................................................19

*Fishoff v. Coty Inc.*,
2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd,* 634 F.3d 647 (2d Cir. 2011)......................9

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975)...............................................................................5, 8, 14

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................................10

*In re Hemispherx Biopharma, Inc., Sec. Litig.*,
2011 WL 13380384 (E.D. Pa. Feb. 14, 2011) ..........................................................12

*Ikon Office Sols. Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)................................................................................17

*Medoff v. CVS Caremark Corp.*,
2016 WL 632238 (D.R.I. Feb. 17, 2016)...................................................................12

ii

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950).................................................................................................19

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016)..................................................................................4, 14

*In re Ocean Power Techs., Inc., Sec. Litig.*,
  2016 WL 6778218 (D.N.J. Nov. 15, 2016) ...........................................................8, 20

*In re PAR Pharm. Sec. Litig.*,
  2013 WL 3930091 (D.N.J. July 29, 2013)......................................................8, 11, 17

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998)...................................................................................5, 14

*In re Schering-Plough Corp. Sec. Litig.*,
  2009 WL 5218066 (D.N.J. Dec. 31, 2009).................................................................13

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) .............................................................16

*Talone v. Am. Osteopathic Ass'n*,
  2018 WL 6318371 (D.N.J. Dec. 3, 2018).....................................................................8

*Utah Ret. Sys. v. Healthcare Svs. Grp., Inc.*,
  2022 WL 118104 (E.D. Pa. Jan. 12, 2022)..................................................................6

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
  2020 WL 3166456 (D.N.J. June 15, 2020), report and recommendation
  adopted by 2021 WL 358611, at *9 (D.N.J. Feb. 1, 2021), *aff'd in part sub
  nom. TIAA v. Valeant Pharms. Int'l, Inc.*, 2021 WL 6881210 (3d Cir. Dec. 20,
  2021) ......................................................................................................................5, 20

*Vataj v. Johnson*,
  2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) .............................................................12

*Vinh Du v. Blackford*,
  2018 WL 6604484 (D. Del. Dec. 18, 2018)..................................................................5

*In re ViroPharma Inc. Sec. Litig.*,
  2016 WL 312108 (E.D. Pa. Jan. 25, 2016).................................................................20

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
  2017 WL 4167440 (E.D. Pa. Sept. 20, 2017) ..............................................................9

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)....................................................................................6, 13

iii

*In re Wilmington Tr. Sec. Litig.*,
    2018 WL 6046452 (D. Del. Nov. 19, 2018) ..................................................................8, 12, 16

## Statutes & Other Authorities

15 U.S.C. § 78u-4(a)(7) ............................................................................................................20

Fed. R. Civ. P. 23 .......................................................................................................... *passim*

4 NEWBERG ON CLASS ACTIONS § 13:49 (5th Ed. 2021) ...............................................................7

Court-appointed Lead Plaintiffs Fire and Police Pension Association of Colorado ("Colorado FPPA"), Oakland County Employees' Retirement System ("Oakland County ERS"), and Oakland County Voluntary Employees' Beneficiary Association Trust (collectively with Oakland County ERS, "Oakland County," and together with Colorado FPPA, "Lead Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully move this Court, pursuant to Federal Rule of Civil Procedure 23, for: (i) final approval of the proposed settlement of the above-captioned action ("Action") on the terms set forth in the Stipulation and Agreement of Settlement dated March 25, 2024 (D.I. 140-1) ("Stipulation"); and (ii) approval of the proposed plan for allocating the net proceeds of the Settlement ("Plan of Allocation" or "Plan").[1]

## I.   PRELIMINARY STATEMENT

Lead Plaintiffs are pleased to present for the Court's approval their agreement to settle this securities class action in exchange for a cash payment of $25.5 million for the benefit of the Settlement Class. Lead Plaintiffs respectfully submit that the proposed Settlement is an excellent result given the serious risks they faced in proving the securities claims at issue and the significant delays of continued litigation. It is the culmination of four years of vigorous litigation by Lead Plaintiffs and Plaintiffs' Counsel, including through multiple motions to dismiss, submission of Lead Plaintiffs' opening class certification motion, and substantial fact and expert discovery. The

---

[1] Unless defined below, all capitalized terms have the meanings set forth in the Stipulation or the accompanying Joint Declaration of Jeffrey W. Golan and Katherine M. Sinderson in Support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Joint Declaration"), which is an integral part of this submission. For the sake of brevity, Lead Plaintiffs respectfully refer the Court to the Joint Declaration for a detailed summary of, *inter alia*: the claims asserted, the procedural history, the arm's length negotiations, the risks of continued litigation, compliance with the Court-approved notice plan, and the Plan of Allocation. Citations to "¶ __" refer to paragraphs in the Joint Declaration, and citations to "Ex. __" refer to its exhibits. Unless noted, all internal cites and punctuation are omitted, and emphasis is added.

proposed Settlement is also the product of extensive arm's length negotiations by experienced and well-informed counsel, including two full-day mediation sessions supervised by Michelle Yoshida of Phillips ADR Enterprises (the "Mediator")—an experienced mediator of complex litigation. As detailed in the accompanying Joint Declaration and summarized herein, the proposed Settlement provides a substantial, certain, and near-term recovery for Settlement Class Members and avoids the significant risks of continued litigation, including the risk of a diminished recovery or no recovery at all—after years of additional litigation, appeals, and delay.

The proposed Settlement is the direct result of Lead Plaintiffs' and Lead Counsel's substantial litigation efforts, in which they zealously represented Settlement Class Members' interests and gained a thorough understanding of the strengths and weaknesses of the case. As set forth in detail in the Joint Declaration, by the time the Parties reached the proposed Settlement, Lead Plaintiffs and Lead Counsel had conducted an extensive investigation, including interviews of over 40 former Grand Canyon employees, which culminated in the filing of three detailed amended complaints, and had litigated Defendants' motions to dismiss—which first resulted in the dismissal of all claims and the entire action. ¶¶ 10-20. Subsequently, Lead Plaintiffs were successful in resurrecting their claims after filing their Second Amended Complaint. ¶¶ 21-30. Lead Plaintiffs and Lead Counsel thereafter conducted substantial extensive fact discovery, which included the analysis of over 250,000 pages of documents produced by Defendants and the analysis of over 61,000 pages of documents produced by third parties. ¶¶ 32-37. They also briefed their opening class certification motion, which included the submission of a market efficiency and damages report from Lead Plaintiffs' expert. ¶¶ 38-39. As a result, Lead Plaintiffs and Lead Counsel had a well-developed understanding of the merits and risks of the claims when the Settlement was reached.

2

The proposed Settlement is also the product of extensive arm's-length negotiations between the Parties, including two formal mediation sessions before the Mediator in November 2023 and February 2024. Prior to both mediation sessions, the Parties exchanged and submitted detailed mediation statements to the Mediator. ¶¶ 41-44. Although the first mediation session ended without any agreement being reached, after the second session, the Mediator made a recommendation that the Action be settled for $25.5 million, which the Parties accepted. ¶ 45.

Lead Plaintiffs and Lead Counsel believe that the Settlement is in the best interests of the Settlement Class given the serious risks involved in continued litigation. As discussed below and in the Joint Declaration, the Action presented many significant risks to establishing both liability and damages through prolonged litigation that could have resulted in no recovery at all. The Settlement avoids these risks and provides a substantial and certain benefit rather than the mere possibility of a recovery after additional years of litigation, including the inevitable appeals.

Further, the Settlement has the full support of Lead Plaintiffs, which are sophisticated institutional investors that took an active role in supervising the litigation and participated directly in the arm's length settlement negotiations. Also, while the deadline to object to the Settlement has not yet passed, to date no Settlement Class Members have objected to the Settlement.[2]

As discussed herein, Lead Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and should be approved. Additionally, Lead Plaintiffs request that the Court approve the Plan of Allocation, which is set forth in the Notice mailed to potential Settlement Class Members. The Plan of Allocation, which Lead Counsel developed in consultation with Lead Plaintiffs' damages expert, provides a reasonable method for allocating the Net Settlement Fund

---

[2] The Court-ordered deadline for submission of objections is August 1, 2024. Should any objections be received, Lead Plaintiffs will address them in their reply papers.

among Settlement Class Members who submit valid claims based on damages they suffered on their transactions in Grand Canyon common stock during the Class Period.

## II.    THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e)(2) requires judicial approval of any class action settlement. Strong judicial policy favors settlement—particularly in "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010). Under Rule 23(e)(2), the Court should approve a proposed class action settlement if it finds it to be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) ("*NFL Players*"). In making this determination, Rule 23(e)(2) provides that a court should consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

  (i)    the costs, risks, and delay of trial and appeal;

  (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

  (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Consistent with Rule 23(e)(2), courts in the Third Circuit also consider the following nine factors enumerated in *Girsh v. Jepson* in deciding whether to approve a proposed settlement:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975) (alterations omitted). "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020), report and recommendation adopted by 2021 WL 358611, at *9 (D.N.J. Feb. 1, 2021), *aff'd in part sub nom. TIAA v. Valeant Pharms. Int'l, Inc.*, 2021 WL 6881210 (3d Cir. Dec. 20, 2021). Third Circuit courts also consider, as appropriate, the factors set forth in *In re Prudential Insurance Company America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998). As set forth below, all relevant factors favor approval.

### A.     Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

Lead Plaintiffs and Lead Counsel "have adequately represented the class," which weighs in favor of settlement. Fed. R. Civ. P. 23(e)(2)(A); *see also Vinh Du v. Blackford*, 2018 WL 6604484, at *4 (D. Del. Dec. 18, 2018) ("The Third Circuit applies a two-prong test to assess the adequacy of the proposed class representatives. First, the court must inquire into the qualifications of counsel to represent the class and, second, it must assess whether there are conflicts of interest between named parties and the class they seek to represent.").

First, Lead Counsel are highly experienced in securities litigation. *See* Exs. 5A, 5B. They have actively pursued the claims on behalf of the Settlement Class for nearly four years, resulting in a favorable Settlement through mediation. *See Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("courts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class"), *aff'd*, 559 F. App'x 151 (3d Cir. 2014). As detailed in the Joint Declaration, Plaintiffs' Counsel: (i) conducted an extensive

investigation into investors' claims, including, among other things, interviews of former Grand Canyon employees and a detailed review and analysis of publicly-available information regarding the Company (¶¶ 10-13); (ii) researched and drafted three detailed amended complaints (¶¶ 14-25); (iii) opposed, through extensive briefing, two rounds of motions to dismiss filed by Defendants—overcoming the initial dismissal of the entire action (¶¶ 15-30); (iv) conducted substantial fact discovery, which included the analysis of over 250,000 pages of documents produced by Defendants and over 61,000 pages of documents produced by third parties, along with the service of and response to extensive written discovery (¶¶ 32-37); and (v) fully briefed their opening class certification motion, which included a report from Lead Plaintiffs' expert on market efficiency and damages (¶¶ 38-39).

Second, Lead Plaintiffs' claims, which are based on a common course of alleged wrongdoing by Defendants, are typical of other Settlement Class Members. In proving their securities claims, Lead Plaintiffs likewise would prove the same claims of Settlement Class Members—and no conflicts existed between the interests of Lead Plaintiffs and the other Settlement Class Members. As such, "Lead Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the class since they all raise the same claims and seek the same relief." *Utah Ret. Sys. v. Healthcare Svs. Grp., Inc.*, 2022 WL 118104, at *4 (E.D. Pa. Jan. 12, 2022).

B.     **The Settlement Resulted from Extensive Arm's Length Negotiations Supervised by an Experienced Mediator**

As detailed herein and in the Joint Declaration, Lead Plaintiffs and Lead Counsel negotiated the Settlement "at arm's length," Fed. R. Civ. P. 23(e)(2)(B), following substantial fact discovery, which provided them with a full opportunity to understand and evaluate the case. *See generally In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). Approval of a

6

settlement is warranted "[w]here a court can conclude that the parties had sufficient information to make an informed decision about settlement." 4 NEWBERG ON CLASS ACTIONS § 13:49 (5th Ed. 2021).

Courts also recognize that the participation of an experienced, respected mediator in the settlement process weighs heavily in favor of a proposed settlement's procedural fairness. *See Alves*, 2012 WL 6043272, at *22. Here, the Parties participated in two formal mediation sessions with Michelle Yoshida, a highly experienced mediator. *See, e.g.*, *Carter v. Vivendi Ticketing US LLC*, 2023 WL 8153712, at *2-3 (C.D. Cal. Oct. 30, 2023) (unpublished) (calling Ms. Yoshida a "well-regarded private mediator" and affirming settlement approval in part due to her involvement). First, on November 14, 2023, counsel for the Parties participated in a full-day mediation session before the Mediator. ¶ 43. In advance of that session, the Parties exchanged and submitted detailed mediation statements to the Mediator. ¶ 42. The session ended without any agreement being reached. ¶ 43. On February 21, 2024, the Parties participated in a second full-day mediation session before the Mediator. ¶ 45. In advance of the mediation session, the Parties again exchanged and submitted mediation statements to the Mediator. ¶ 44. At the conclusion of this second mediation session, the Mediator made a recommendation that the Action be settled for $25.5 million, which the Parties accepted. ¶ 45.

### C.   The Settlement Provides the Settlement Class with Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and Other Relevant Factors

Rule 23(e)(2)(C) overlaps considerably with many of the factors articulated by the Third Circuit in *Girsh*, which evaluate the fairness of the "relief that the settlement is expected to provide to" the Settlement Class. Fed. R. Civ. P. 23(e)(2), adv. cmt. notes to 2018 amendments, subdivision (e)(2), ¶¶ (C) and (D). These factors support approval here.

### 1.    The Complexity, Expense, and Likely Duration of the Litigation

Courts consistently recognize that the expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *Girsh*, 521 F.2d at 157. Settlement is favored where, as here, continuing to litigate through trial would require "extensive pretrial motions addressing complex factual and legal questions" and then "a complicated, lengthy trial." *Talone v. Am. Osteopathic Ass'n*, 2018 WL 6318371, at *14 (D.N.J. Dec. 3, 2018). In that regard, courts regularly acknowledge that securities class actions are "notably complex, lengthy, and expensive cases to litigate," *In re PAR Pharm. Sec. Litig.*, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013) (citing examples). This case was no exception. As discussed in the Joint Declaration and below, continued litigation of this Action presented numerous risks. ¶¶ 58-76. Continuing to prosecute the Action through a ruling on Lead Plaintiffs' class certification motion, Defendants' expected motions for summary judgment, the Parties' respective *Daubert* motions, a complex trial, and the inevitable post-trial appeals would have imposed significant risks and substantial additional costs on the Settlement Class and delayed the Settlement Class's ability to recover. *See In re Ocean Power Techs., Inc., Sec. Litig.*, 2016 WL 6778218, at *12 (D.N.J. Nov. 15, 2016) ("Settlement is favored under this factor if litigation is expected to be complex, expensive and time consuming."). In contrast, the Settlement avoids the risk, expense, and delay of continued litigation while providing a substantial, near-term recovery for the Class.

### 2.    The Risks of Continued Litigation

In assessing a settlement, a court should also consider the "risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial." *Girsh*, 521 F.2d at 157. "These [*Girsh*] factors balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." *In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *5 (D. Del. Nov. 19, 2018). As discussed

8

below, absent the proposed Settlement, Lead Plaintiffs faced significant risks in continued litigation. *See W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2017 WL 4167440, at *5-6 (E.D. Pa. Sept. 20, 2017) (approving settlement where "[e]stablishing liability would be difficult for the Class[ and] [e]stablishing damages would also be no picnic;" finding that "these factors weigh heavily in favor of approving the settlement").

### 3.   Risks to Establishing Liability and Damages

While Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants in the Action are meritorious, they recognize that this Action presented several substantial risks to establishing both liability and damages.

First, Lead Plaintiffs faced significant risk in proving the falsity of certain of the alleged misstatements, which would have dramatically impacted possible damages. ¶¶ 65-66. Defendants insisted that they made no misstatements at all. For example, Defendants argued that their outside auditors and the SEC reviewed and approved the Company's accounting treatment of GCU and therefore, that their statements regarding Grand Canyon's independence from GCU were not false or misleading when made. Specifically, Defendants argued that GCU sought pre-clearance from the SEC of GCE's decision not to consolidate GCU's results and that, in the submission to the SEC, GCE's outside auditor, KMPG, approved GCE's analysis of the issue and the preclearance request, and that the SEC raised no objections to GCE's plans or GCE's subsequent financial reporting. ¶¶ 65-66. Thus, Defendants would have had a strong argument that, in light of auditor and SEC approval, their accounting was appropriate.

Second, Lead Plaintiffs faced challenges to proving that Defendants acted with scienter—a notoriously difficult element to prove. *See Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011); ¶¶ 65-66. For example, Defendants argued that their statement that the DOE's delay in approving the transaction was due to "understaffing" was

9

not false based on information provided to them by their advisors. ¶ 66. Likewise, Defendants could likely have relied on the approval of GCE's auditor and the SEC as evidence that, at minimum, they had a reasonable basis to believe that their accounting treatment was appropriate and thus they did not intend to deceive investors. ¶ 65.

Finally, Lead Plaintiffs faced formidable challenges with respect to proving loss causation and damages. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) (stating that disentangling the market's reaction to various pieces of news is a "complicated concept, both factually and legally"). Lead Plaintiffs faced numerous significant risks to proving loss causation in connection with the Citron Report—the corrective disclosure responsible for the majority of the Settlement Classes' damages. First, multiple courts have held that short seller and analyst reports can only serve as corrective disclosures when they present new facts to the market. ¶ 68. At the motion to dismiss stage, Defendants argued that the Citron Report could not serve as a corrective disclosure because it did not reveal any new facts to the market that were not previously made public by the DOE's decision. At the time, Lead Plaintiffs and Lead Counsel pointed out that, even if new facts were required (which the law did not necessarily require), Citron Research itself had identified nonpublic documents and information as key sources for its analysis. Although the Court accepted that latter argument at the motion to dismiss stage, it nevertheless endorsed the premise that disclosure of nonpublic facts (not analysis of public facts) was necessary to establish a corrective disclosure. ¶ 68. Thus, at the class certification and summary judgment stages, Lead Plaintiffs could have been required to show specific facts in the Citron Report were sourced from nonpublic information, or else argue that Citron's *analysis* of this public data provided new information to the market and thus properly served as a disclosure event—an argument that the Third Circuit may foreclose entirely when it decides a pending Rule 23(f) appeal

10

on this very issue. ¶ 69.

While Lead Plaintiffs believe that they had compelling responses to Defendants' arguments, all these issues would have presented significant risks at class certification, summary judgment, and trial, which weighs strongly in favor of approval of the Settlement.

### 4.    Risks to Maintaining the Class Action Through Trial

Lead Plaintiffs' motion for class certification was pending when the Settlement was reached. Defendants advanced multiple arguments that, if successful, would have resulted in substantially less recovery for the Settlement Class—or, indeed, no recovery at all. The Settlement removes all of these significant risks and uncertainty through a substantial and certain payment of $25.5 million in cash without the attendant trial delays and the inevitable appeals. *See* Fed. R. Civ. P. 23(c)(1)(C). Thus, this factor also supports approval of the proposed Settlement.

### 5.    The Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and the Risks of Litigation

The eighth and ninth *Girsh* factors—the reasonableness of the settlement in light of the best possible recovery and the risks of litigation—also weigh in favor of approving the Settlement. "In making [an] assessment [of these factors], the Court compares the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, with the amount of the proposed settlement." *PAR Pharm.*, 2013 WL 3930091, at *7; *In re AT & T Corp., Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006) (first alteration in original) ("[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. . . . [r]ather, the percentage recovery, must represent a material percentage recovery to plaintiff in light of all the risks"). The $25.5 million Settlement meets this threshold.

As set forth in the Joint Declaration, if Lead Plaintiffs overcame all the significant risks to

liability and damages and prevailed on every single disputed issue in the Action, then Lead Plaintiffs' expert estimated that the maximum possible damages were approximately $419 million. ¶ 73. Even under this aggressive, best-case scenario—which assumes complete success in proving liability at trial and on any appeal—the Settlement represents approximately 6% of the maximum damages, which is a level of recovery that exceeds the typical recovery percentage of settlements in comparable cases. *See, e.g.*, *Wilmington Tr.*, 2018 WL 6046452, at * 8 (noting "Third Circuit median recovery of 5% of damages in class action securities litigation"); *In re Hemispherx Biopharma, Inc., Sec. Litig.*, 2011 WL 13380384, at *6 (E.D. Pa. Feb. 14, 2011) (approving settlement representing 5.2% of the maximum damages and finding that it "falls squarely within the range of reasonableness approved in other securities class action settlements").[3]

Moreover, as explained above, there were significant risks that Lead Plaintiffs might establish lower damages (or none at all) after further litigation. If Lead Plaintiffs failed to establish loss causation with respect to the Citron Report, then maximum damages (resulting only from the earlier corrective disclosure) would be no more than $116.5 million, and the Settlement would be 22% of the reduced amount. ¶ 74. Even that $116.5 million amount assumes that Grand Canyon's stock price was inflated by the maximum amount from Day 1 of the Class Period—an assumption that would be difficult to credit given the changing events during the Class Period, including the spin-off of GCU, which did not occur until six months into the Class Period. ¶ 74. Moreover, as noted above there were many substantial risks concerning falsity, scienter, and loss causation that

---

[3] *See also, e.g., Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement of "slightly more than 2% of [] estimated damages" as consistent with the "average recovery that the parties identified in other securities class action settlements"); *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016) (approving settlement recovering 5.33% of maximum damages and noting that it was "well above the median percentage of settlement recoveries in comparable securities class action cases").

could have eliminated all or most of the class's recovery. Thus, this factor strongly supports approval of the Settlement.

### 6.    Stage of the Proceedings and Amount of Discovery Completed

As described in detail above and in the Joint Declaration, the Settlement occurred after extensive fact and expert discovery, after Lead Plaintiffs briefed their opening motion for class certification, after Lead Counsel had extensively reviewed hundreds of thousands of pages of documents produced by Defendants and following two arm's-length negotiations with an experienced mediator. Thus, the record demonstrates that, when the Settlement was reached, Lead Plaintiffs and Lead Counsel had a complete picture of the "strengths and weaknesses of their case." *Dartell v. Tibet Pharms., Inc.*, 2017 WL 2815073, at *5 (D.N.J. June 29, 2017) (finding, in a securities class action, the third *Girsh* factor weighed in favor of settlement where the parties had "fully briefed motions to dismiss, a motion for class certification, and [had] engaged in discovery," as well as the "engage[ment of] two experts"). This factor supports approval.

### 7.    The Ability of Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *In re Cendant Corp.*, 264 F.3d 201, 240 (3d Cir. 2001). But even the "fact that [Defendants] could afford to pay more does not mean that [they are] obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached." *Warfarin Sodium*, 391 F.3d at 538; *see also In re Schering-Plough Corp. Sec. Litig.*, 2009 WL 5218066, at *5 (D.N.J. Dec. 31, 2009) ("pushing for more in the face of risks and delay would not be [in] the interests of the class"). Here, even if Defendants could afford to pay more, that factor does not outweigh the numerous factors strongly favoring Settlement, including the serious risks to continued litigation and the certain, immediate, and substantial recovery for the Settlement Class.

13

### 8.    The Reaction of the Settlement Class to Date

In assessing a settlement, courts in the Third Circuit also consider "the reaction of the class to the settlement." *Girsh*, 521 F.2d at 157; *NFL Players*, 821 F.3d at 438. The deadline for Settlement Class Members to object to the Settlement is August 1, 2024. ¶ 82. To date, the Settlement has received no objections. ¶ 82. Lead Plaintiffs will address any objections to the Settlement that may be received in their reply papers.

### 9.    The Relevant *Prudential* Factors Also Support the Settlement

Courts in this Circuit also consider various *Prudential* factors, as appropriate to the specifics of the litigation. As relevant here, these factors support approval of the proposed Settlement. *See* 148 F.3d at 323 (these factors include: the maturity of the substantive issues; the existence of other possible claims by class members; the comparison of the results achieved to those of other class members or potential class members; the ability of class members to opt out of settlement; the reasonableness of attorneys' fees; and the reasonableness of the claims processing procedure).

First, the substantive issues had matured at the time of the Settlement given the comprehensive record in the Action, which had proceeded to the class certification stage. Lead Plaintiffs and Lead Counsel thus had a clear understanding of the strengths and weaknesses of the case based on their extensive litigation of the Settlement Class's claims (as set forth in detail in the Joint Declaration and herein), which supports approval of the proposed Settlement. Second, Lead Plaintiffs are not aware of *any* settlements that have been "achieved—or [are] likely to be achieved" by any individuals or other potential Settlement Class Members related to the claims in this case. *Prudential*, 148 F.3d at 323. For example, there have been no other securities claims brought by separate classes or claimants within the Class Period. *Id.*

14

Finally, other relevant *Prudential* factors, including the ability of Settlement Class Members to opt out of the Settlement, the reasonableness of attorneys' fees, and the reasonableness of the procedure for processing individual claims, *id.* at 323, also favor the Settlement. Settlement Class Members are being afforded the opportunity to opt out, and to date just one request for exclusion has been received. ¶ 82. Lead Counsel's request for attorneys' fees is also reasonable, as set forth below in § II.D and in the accompanying Fee Memorandum, and the Plan of Allocation, which was developed with Lead Plaintiffs' damages expert and which will govern the allocation of the Net Settlement Fund, is fair and reasonable. *See* § III, *infra*; ¶¶ 88-90.

**D.       The Remaining Rule 23(e)(2) Factors Support Approval of the Settlement**

In evaluating the proposed Settlement, Rule 23(e)(2) instructs courts to also consider: (i) the effectiveness of the proposed method of distributing the relief provided to the class, including the method of processing class member claims; (ii) the terms of any proposed award of attorney's fees, including the timing of payment; (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) & (e)(2)(D). These factors also support final approval.

First, the proposed method of distribution and claims processing ensures equitable treatment of Settlement Class Members. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii) & (e)(2)(D). Settlement Class Members' claims will be processed, and the Net Settlement Fund will be distributed, pursuant to a standard method routinely approved in securities class actions. The Court-authorized Claims Administrator, JND Legal Administration ("JND"), will review and process all Claims received, provide Claimants with an opportunity to cure any deficiency or request judicial review of the denial of their Claims, if applicable, and will ultimately mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund, as calculated under the Plan. Importantly, one

hundred percent of the Net Settlement Fund will be distributed pursuant to the Plan of Allocation and none of the Settlement proceeds will revert to Defendants. *See* Stipulation ¶ 13.

Second, as further discussed in the accompanying Fee Memorandum, the requested attorneys' fees of 23% of the Settlement Fund, to be paid only upon the Court's approval, are reasonable in light of the efforts devoted by Lead Counsel over the past four years, the recovery obtained for the Settlement Class, and the significant risks that Lead Counsel shouldered at every step. The request for attorneys' fees is also consistent with attorneys' fee percentages awarded to counsel in other complex class actions in this Circuit. *See Wilmington Tr.*, 2018 WL 6046452, at *9 (finding 28% to be a "typical fee percentage" in the Third Circuit). Of note, the approval of attorneys' fee awards is separate from the approval of the Settlement, and neither Lead Plaintiffs nor Lead Counsel may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. Stipulation ¶ 16.[4]

Third, as previously disclosed, the only agreement the Parties entered into—other than the Stipulation (which supersedes the Parties' initial Term Sheet)—was a confidential Supplemental Agreement, which sets forth the conditions under which Defendants would have been able to terminate the Settlement if the Settlement Class Members who requested exclusion reached a certain threshold. *See* Stipulation ¶ 36; *see also* Fed. R. Civ. P. 23(e)(2)(C)(iv). This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020).

---

[4] Pursuant to the Stipulation, Court-awarded attorneys' fees may be paid upon issuance of such an award. Stipulation ¶ 16.

16

For the reasons herein and in the Joint Declaration, the proposed Settlement is fair, reasonable, and adequate under any relevant standard or factor and, thus, should be approved.

## III.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

Approval of a "plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *PAR Pharm.*, 2013 WL 3930091, at *3. To meet this standard, a plan of allocation recommended by experienced and competent class counsel "need only have a reasonable and rational basis." *Id.* at *8. Generally, a plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *See Ikon Office Sols. Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000). In determining whether a plan of allocation is reasonable, "courts give great weight to the opinion of qualified counsel." *Valeant Pharms.*, 2021 WL 358611, at *3.

Here, the Plan, which is set forth in full in the Notice, *see* Segura Decl. (Ex. 4), at Ex. A ("Notice"), at pp. 16-21, was developed by Lead Counsel in consultation with Lead Plaintiffs' damages consultant, Dr. Matthew D. Cain, an expert financial economist, and his team. The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing in the Action. Notice ¶ 75.

The Plan calculates a Recognized Loss Amount for each purchase or acquisition of Grand Canyon common stock during the Class Period that is listed on the Claim Form and for which adequate documentation is provided. Notice ¶ 79. Lead Plaintiffs' damages expert calculated the estimated amount of artificial inflation in the price of Grand Canyon common stock during the Class Period that allegedly was proximately caused by Defendants' alleged materially false and misleading statements and omissions by considering the price change in Grand Canyon common

17

stock in reaction to the alleged corrective disclosures, adjusting for price changes attributable to market or industry factors. Notice ¶ 76.

In general, Recognized Loss Amounts under the Plan are calculated as the lesser of: (a) the difference between the amount of alleged artificial inflation at the time of purchase or acquisition and the time of sale, or (b) the difference between the purchase price and the sale price for the shares. Notice ¶¶ 78, 80. Claimants who purchased and then sold Grand Canyon shares before the first corrective disclosure occurred on November 6, 2019 or between two subsequent alleged corrective disclosure dates will have no Recognized Loss Amount under the Plan of Allocation with respect to those transactions, because any loss suffered on those sales would not be the result of the alleged misstatements in the Action. Notice ¶¶ 78, 80.[5]

The sum of a claimant's Recognized Loss Amounts for all purchases and acquisitions of Grand Canyon common stock during the Class Period is the Claimant's "Recognized Claim." Notice ¶ 81. Recognized Claim amounts are further capped at the amount of a Claimant's overall market loss in Grand Canyon common stock during the Class Period. Notice ¶¶ 88-89. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. Notice ¶ 90; *see also Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 105 (D.N.J. Feb. 6, 2018) ("pro rata distributions are consistently upheld . . . .").

Under the Plan of Allocation, the entire Net Settlement Fund will be distributed to Authorized Claimants. If any funds remain after the initial *pro rata* distribution, as a result of uncashed or returned checks or other reasons, subsequent distributions to Authorized Claimants

---

[5] In addition, consistent with the PSLRA, Recognized Loss Amounts for shares of Grand Canyon common stock sold during the 90-day period after the end of the Class Period, or held to the end of that 90-day period, are further limited to the difference between the purchase price and the average closing price of the stock during that period. Notice ¶¶ 80(C)(ii), (D)(ii).

18

will be conducted. Only when the residual amount left for re-distribution to Settlement Class Members is so small that a further re-distribution would not be cost effective, will those funds be donated to one or more non-sectarian, not-for-profit, 501(c)(3) organizations, to be recommended by Lead Counsel and approved by the Court. Notice ¶ 92.

Lead Plaintiffs and Lead Counsel believe that the proposed Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the conduct alleged in the Action. ¶ 89. Moreover, the Plan was fully disclosed in the Notice, and following mailing of the Notice to more than 73,000 potential Settlement Class Members, to date, no objections to the Plan have been received. ¶¶ 79-82. Accordingly, Lead Plaintiffs and Lead Counsel believe the Plan is fair, reasonable, and adequate and should be approved. Fed. R. Civ. P. 23(e)(2)(C)(ii) & (e)(2)(D).

## IV.    THE NOTICE SATISFIED RULE 23, DUE PROCESS, AND THE PSLRA

Lead Plaintiffs have provided the members of the Settlement Class with adequate notice of the Settlement. Here, the notice satisfied both: (i) Rule 23, as it was "the best notice . . . practicable under the circumstances" and directed "in a reasonable manner to all class members who would be bound by the" Settlement, Fed. R. Civ. P. 23(c)(2)(B) & (e)(1)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974); and (ii) due process, as it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

In accordance with the Court's Preliminary Approval Order, on May 22, 2024, JND began mailing copies of the Notice Packet to potential Settlement Class Members and nominees. *See* Segura Decl. (Ex. 4), at ¶¶ 5-8. Through July 17, 2024, JND has mailed a total of 73,716 Notice Packets. *Id.* ¶ 12. In addition, JND caused the Summary Notice to be published in *Investor's*

*Business Daily* and transmitted over *PR Newswire* on June 3, 2024. *Id.* ¶ 15.

The Notice apprised Settlement Class Members of, *inter alia*: (i) the amount of the Settlement; (ii) the reasons why the Parties proposed the Settlement; (iii) the estimated average recovery per affected share of Grand Canyon common stock; (iv) the maximum amount of attorneys' fees and expenses sought; (v) the identity and contact information for a representative of Lead Counsel available to answer questions concerning the Settlement; (vi) the right of Settlement Class Members to object to the Settlement or request exclusion from the Settlement Class; (vii) the binding effect of a judgment on Settlement Class Members; (vii) the dates and deadlines for certain Settlement-related events; and (ix) information on how to submit a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. § 78u-4(a)(7). The content disseminated through this notice campaign "contain[ed] sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights." *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013).

In sum, this combination of sending individual first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate publication, transmission over a newswire, and publication on internet websites, was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Comparable notice programs are routinely approved by Courts in this Circuit. *See, e.g.*, *Valeant*, 2020 WL 3166456, at *6; *Ocean Power*, 2016 WL 6778218, at *10; *In re ViroPharma Inc. Sec. Litig.*, 2016 WL 312108, at *5-6 (E.D. Pa. Jan. 25, 2016).

## V.    CONCLUSION

For the reasons set forth herein and in the Joint Declaration, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement and the Plan of Allocation.

20

Dated: July 18, 2024

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
Hannah G. Ross
Katherine M. Sinderson (*pro hac vice*)
Robert F. Kravetz (*pro hac vice*)
Michael M. Mathai (*pro hac vice*)
Sarah Schmidt
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
katiem@blbglaw.com
robert.kravetz@blbglaw.com
michael.mathai@blbglaw.com
sarah.schmidt@blbglaw.com

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
*/s/ Gregory V. Varallo*
Gregory V. Varallo (Bar No. 2242)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3601
greg.varallo@blbglaw.com

*Counsel for Lead Plaintiffs*
*and Lead Counsel for the Settlement Class*

**BARRACK, RODOS & BACINE**
Jeffrey W. Golan (*pro hac vice*)
Chad A. Carder (*pro hac vice*)
Jordan R. Laporta
3300 Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jgolan@barrack.com
ccarder@barrack.com
jlaporta@barrack.com

*Counsel for Lead Plaintiffs*
*and Lead Counsel for the Settlement Class*

**VANOVERBEKE, MICHAUD**
  **& TIMMONY, P.C.**
Aaron L. Castle (*pro hac vice*)
79 Alfred Street
Detroit, MI 48201
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
acastle@vmtlaw.com

*Additional Counsel for Lead Plaintiffs*
*Oakland County Employees' Retirement*
*System and Oakland County Voluntary*
*Employees' Beneficiary Association Trust*

21

**CERTIFICATION OF SERVICE**

I HEREBY CERTIFY that on July 18, 2024, I caused the Memorandum of Law in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation to be filed and submitted electronically, served via email on all counsel of record, and to be made available for viewing and downloading from the CM/ECF system.

*/s/ Gregory V. Varallo*
Gregory V. Varallo