**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re Grand Canyon Education, Inc. Securities Litigation* | Civil Action No. 20-639-JLH-CJB |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S
<u>MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ......................................................................................................................4

I.     THE STANDARD GOVERNING THE AWARD OF ATTORNEYS' FEES IN
       COMMON FUND CASES.......................................................................................... 4

       A.     Lead Counsel Are Entitled to Compensation from the Common Fund...................4

       B.     The Requested Fee Enjoys a Presumption of Reasonableness Because It
              Has Been Authorized by Court-Appointed Lead Plaintiffs Pursuant to a
              Pre-Litigation Agreement .......................................................................................5

II.    THE REQUESTED FEE IS REASONABLE UNDER EITHER THE
       PERCENTAGE-OF-RECOVERY METHOD OR THE LODESTAR METHOD............ 6

       A.     The Requested Fee Is Reasonable Under the Percentage-of-Recovery
              Method ....................................................................................................................6

       B.     A Lodestar Cross-Check Confirms the Reasonableness of the Requested
              Fee ...........................................................................................................................8

III.   THE OTHER FACTORS CONSIDERED BY COURTS IN THE THIRD
       CIRCUIT ALSO CONFIRM THAT THE REQUESTED FEE IS FAIR AND
       REASONABLE ....................................................................................................... 10

       A.     The Size of the Common Fund Created and the Number of Persons
              Benefited Support Approval of the Fee Request ...................................................11

       B.     The Reaction of the Settlement Class to Date Supports Approval ........................12

       C.     The Skill and Efficiency of Counsel Support Approval of the Fee Request .........12

       D.     The Complexity and Duration of the Litigation Support Approval.......................13

       E.     The Risk of Non-Payment Supports Approval of the Fee Request .......................14

       F.     The Significant Time Devoted to this Case by Lead Counsel Supports
              Approval of the Fee Request..................................................................................15

       G.     The Requested Fee of 23% of the Settlement Fund is within the Range of
              Fees Typically Awarded in Actions of this Nature................................................16

       H.     The Settlement Is Attributable to the Efforts of Lead Counsel ............................16

i

I.      The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request ................................................................................................17

IV.   LEAD COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED ................................. 17

V.    LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. § 78u-4(a)(4)......................................... 18

CONCLUSION ..................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                               **Page(s)**

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002) .........................................................................................8, 12

*In re AT & T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006) .......................................................................................6, 8, 16

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) .............................................................................................................5

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..............................................................................10

*Blum v. Stenson*,
    465 U.S. 886 (1984) ...........................................................................................................17

*Bodnar v. Bank of Am. N.A.*,
    2016 WL 4582084 (E.D. Pa. Aug. 4, 2016) .......................................................................7

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .............................................................................................................4

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ............................................................................................3, 5

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005) ............................................................................................4, 6

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
    2016 WL 10570211 (D.N.J. Sept. 29, 2016) .....................................................................7

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000) .......................................................................................12

*Demaria v. Horizon Healthcare Servs., Inc.*,
    2016 WL 6089713 (D.N.J. Oct. 18, 2016) .........................................................................7

*Dickerson v. York Int'l Corp.*,
    2017 WL 3601948 (M.D. Pa. Aug. 22, 2017) ..................................................................10

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
    582 F.3d 524 (3d Cir. 2009) ..................................................................................4, 11, 17

*Esslinger v. HSBC Bank Nev., N.A.*,
    2012 WL 5866074 (E.D. Pa. Nov. 20, 2012) .....................................................................7

*Fogarazzo v. Lehman Bros., Inc.*,
   2011 WL 671745 (S.D.N.Y. Feb. 23, 2011)......................................................13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995).............................................................................6

*In re Genta Sec. Litig.*,
   2008 WL 2229843 (D.N.J. May 28, 2008) .......................................................13

*In re Gilat Satellite Networks, Ltd.*,
   2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) .................................................19

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000)........................................................................4, 10

*In re Heckmann Corp. Sec. Litig.*,
   No. 1:10-cv-00378-LPS-MPT, slip op. (D. Del. June 26, 2014)........................7

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)......................................................................................11

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)......................................................5, 6, 13, 17

*In re Ins. Brokerage Antitrust Litig.*,
   297 F.R.D. 136 (D.N.J. 2013)..........................................................................6

*Lanni v. New Jersey*,
   259 F.3d 146 (3d Cir. 2001)..........................................................................10

*In re Linerboard Antitrust Litig.*,
   2004 WL 1221350 (E.D. Pa. June 2, 2004), *amended*, 2004 WL 1240775
   (E.D. Pa. June 4, 2004)............................................................................11, 12

*Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
   2009 WL 4730185 (D.N.J. Dec. 4, 2009)......................................................6, 7

*In re Lucent Techs., Inc. Sec. Litig.*,
   327 F. Supp. 2d 426 (D.N.J. 2004) ...............................................................5, 6

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................................................19

*Missouri v. Jenkins*,
   491 U.S. 274 (1989).....................................................................................10

*O'Hern v. Vida Longevity Fund, LP*,
   2023 WL 3204044 (D. Del. May 2, 2023).......................................................10

*In re Ocean Power Techs., Inc.*,
 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ...................................................6, 17

*In re Par Pharm. Sec. Litig.*,
 2013 WL 3930091 (D.N.J. July 29, 2013) ................................................19

*In re Processed Egg Prods. Antitrust Litig.*,
 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) ...............................................17

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
 148 F.3d 283 (3d Cir. 1998)................................................9, 11, 16, 17

*Rihn v. Acadia Pharm. Inc.*,
 2018 WL 513448 (S.D. Cal. Jan. 22, 2018)................................................9

*In re Rite Aid Corp. Sec. Litig.*,
 146 F. Supp. 2d 706 (E.D. Pa. 2001) .......................................................8

*In re Rite Aid Corp. Sec. Litig.*,
 362 F. Supp. 2d 587 (E.D. Pa. 2005) .......................................................8

*In re Rite Aid Corp. Sec. Litig.*,
 396 F.3d 294 (3d Cir. 2005)...............................................................6, 8

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
 2008 WL 9447623 (D.N.J. Dec. 9, 2008) .................................................19

*In re Safety Components, Inc. Sec. Litig.*,
 166 F. Supp. 2d 72 (D.N.J. 2001) .........................................................17

*San Antonio Fire & Police Pension Fund v. Dole Food Co.*,
 No. 1:15-cv-1140-LPS, slip op. (D. Del. July 18, 2017) ........................8, 19

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
 2012 WL 1964451 (D.N.J. May 31, 2012) ...............................................14

*In re Schering-Plough Corp. ENHANCE Sec. Litig.*,
 2013 WL 5505744 (D.N.J. Oct. 1, 2013)...............................................9, 10

*Schuler v. Medicines Co.*,
 2016 WL 3457218 (D.N.J. June 24, 2016) ..............................................5, 11

*Stevens v. SEI Invs. Co.*,
 2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ................................................9

*Sullivan v. DB Invs.*,
 667 F.3d 273 (3d Cir. 2011)...............................................................6, 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).................................................................................................5

*In re The Bancorp Inc. Sec. Litig.*,
   2016 WL 7741727 (D. Del. Dec. 16, 2016).........................................................7

*Trief v. Dun & Bradstreet Corp.*,
   840 F. Supp. 277 (S.D.N.Y. 1993) .....................................................................14

*In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*,
   2022 WL 525807 (D.N.J. Feb. 22, 2022) .............................................................7

*In re Veritas Software Corp. Sec. Litig.*,
   No. 1:04-cv-00831-SLR, slip op. (D. Del. Aug. 5, 2008), *aff'd*, 396 Fed.
   App'x 815 (3d Cir. 2010)..............................................................................7, 19

*In re Viropharma Inc. Sec. Litig.*,
   2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ...................................................11, 17

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
   2017 WL 4167440 (E.D. Pa. Sept. 20, 2017) .......................................................7

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) .............13, 14

*In re Wilmington Tr. Sec. Litig.*,
   2018 WL 6046452 (D. Del. Nov. 19, 2018) ..........................................................7

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................4

**Statutes & Other Authorities**

15 U.S.C. § 78u–4(a)(4)...........................................................................................18, 19

Edward Flores & Svetlana Starykh, NERA Economic Consulting,
   Recent Trends in Securities Class Action: 2023 Full-Year Review
   (2024)................................................................................................................7, 8

Court-appointed Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Barrack, Rodos & Bacine ("Barrack Rodos"), respectfully submit this memorandum of law in support of their motion for: (i) an award of attorneys' fees for all Plaintiffs' Counsel[1] in the total amount of 23% of the Settlement Fund; (ii) an award of $358,689.66 in litigation expenses reasonably and necessarily incurred by Lead Counsel in prosecuting and resolving the Action; and (iii) awards for Lead Plaintiffs in the total amount of $42,817.27 to reimburse Lead Plaintiffs for their costs incurred in representing the Settlement Class.[2]

## PRELIMINARY STATEMENT

Lead Counsel have vigorously litigated this securities class action over the last four years on a fully contingent basis, without receiving any compensation to date. The litigation was hard-fought and faced material risks. As such, Lead Counsel had to—and did—dedicate substantial effort to the Action from its outset. Indeed, Lead Counsel fought two heavily contested rounds of motions to dismiss, prevailing in resurrecting the Action after the case was initially dismissed. Lead Counsel also prepared and filed Lead Plaintiffs' motion for class certification and conducted substantial fact discovery, including the review and analysis of hundreds of thousands of pages of documents.

---

[1] Bernstein Litowitz and Barrack Rodos are referred to collectively as "Lead Counsel." The term "Plaintiffs' Counsel" refers to Lead Counsel and VanOverbeke, Michaud & Timmony, P.C., additional counsel for Lead Plaintiffs Oakland County Employees' Retirement System, and Oakland County Voluntary Employees' Beneficiary Association Trust.

[2] Unless otherwise defined, capitalized terms have the same meanings as set forth in the Stipulation and Agreement of Settlement dated March 25, 2024 (D.I. 140-1) ("Stipulation") or in the accompanying Joint Declaration of Jeffrey W. Golan and Katherine M. Sinderson in Support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Joint Declaration"), Citations to "¶ __" refer to paragraphs in the Joint Declaration, and citations to "Ex. __" refer to its exhibits. Unless noted, all internal cites, footnotes, and punctuation are omitted, and emphasis is added.

Lead Counsel's vigorous and sustained litigation effort in the face of substantial litigation risks led to the $25.5 million Settlement achieved for the benefit of the Settlement Class. It represents an excellent result for the Settlement Class because it provides substantial and prompt compensation to members of the Settlement Class while avoiding the significant risks and delay of continued litigation, including the risk that there may be no recovery at all. Having achieved this significant monetary recovery after four years of litigating this case without any payment, Lead Counsel seek attorneys' fees in the amount of 23% of the Settlement Fund (including interest), as well as payment of the litigation expenses that Lead Counsel incurred in prosecuting the Action for the benefit of the Settlement Class.

Lead Counsel respectfully submit that the quality of the result obtained and their effort, skill, and persistence merit the requested 23% fee award here. First, the requested fee is well within the range of fees awarded on a percentage basis in securities class actions with comparable recoveries. The requested fee percentage is also reasonable under the relevant factors, including the quality of the result achieved, the extent and quality of counsel's effort, the complexity and duration of the litigation and the risk of non-payment, and the lodestar cross-check. Lead Counsel faced multiple risks in the Action from the outset. Even after Lead Plaintiffs prevailed in defeating a second motion to dismiss, there were serious risks that Defendants might prevail—in whole or in part—in opposition to class certification, at summary judgment, at trial, or on appeal. As discussed below and in the Joint Declaration, Defendants vigorously contested every element of Lead Plaintiffs' securities law claims. Through their diligence and efforts, Lead Counsel overcame these obstacles to secure a meaningful recovery for the Settlement Class.

Second, Lead Counsel dedicated a total of 13,250 hours of attorney and other professional staff time over four years of litigation to bring the Action to this favorable resolution for the

Settlement Class. ¶ 104. In class actions like this one, which are prosecuted on a contingent-fee basis, courts typically award fees representing a positive "multiplier" of counsel's lodestar (often one to four times the amount of their lodestar) to compensate counsel for taking the risks of non-recovery and other factors. Here, Lead Counsel's requested fee represents a "negative" lodestar multiplier of 0.68. *Id.* This means that the requested 23% fee represents just 68% of Lead Counsel's total lodestar, which further supports the reasonableness of the requested fee.

Third, the fee request has the full support of Lead Plaintiffs, who are sophisticated institutional investors that actively supervised and participated in the Action. *See* Ex. 2, at ¶¶ 3-6; Ex. 3, at ¶¶ 2-7. Both Lead Plaintiffs have fully endorsed the fee request and believe that a 23% fee award is reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of continued litigation. *See* Ex. 2, at ¶¶ 9-10; Ex. 3, at ¶ 9. Moreover, the 23% request is consistent with the more restrictive of two fee agreements entered into with Lead Plaintiffs at the outset of the Action. Thus, as discussed below, the fee request is entitled to a "presumption of reasonableness." *In re Cendant Corp. Litig.* ("*Cendant I*"), 264 F.3d 201, 282 (3d Cir. 2001).

Lead Counsel also seek to recover the litigation expenses they incurred in prosecuting and resolving this litigation, which total $358,689.66 during the four years of litigation. As discussed below, these expenses were reasonable and necessary for the prosecution and resolution of this complex litigation and are of the type that are routinely charged to clients in non-contingent litigation. The largest component of the expenses, roughly 45%, relates to expert costs, including accounting experts and financial experts in loss causation and damages. Finally, Lead Counsel also request that Lead Plaintiffs be granted awards as provided for under the PSLRA in the total amount

of $42,817.27, in reimbursement for the substantial time that their employees dedicated to the Action.

For all the reasons set forth herein, Lead Counsel respectfully request that the Court award Plaintiffs' Counsel attorneys' fees in the amount of 23% of the Settlement Fund, payment of Lead Counsel's litigation expenses in the amount of $358,689.66, and PSLRA awards for Lead Plaintiffs in the amount of $42,817.27.

## ARGUMENT

I.   **THE STANDARD GOVERNING THE AWARD OF ATTORNEYS' FEES IN COMMON FUND CASES**

A.   **Lead Counsel Are Entitled to Compensation from the Common Fund**

It is well-settled law that an attorney whose effort in a lawsuit creates a fund for the benefit of others is entitled to a reasonable fee from that common fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Cendant Corp. Sec. Litig.* ("*Cendant II*"), 404 F.3d 173, 205 (3d Cir. 2005) (attorneys "whose efforts create, discover, increase, or preserve a [common] fund" are entitled to attorneys' fees); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund ensure that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel … it is necessary to provide appropriate financial incentives."). The Supreme Court has emphasized that private securities

actions, such as the instant action, provide "a most effective weapon in the enforcement" of the securities laws and are "necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318-19 (2007).

Courts in this Circuit consistently endorse these principles. *See, e.g., Schuler v. Medicines Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (stating that the common fund doctrine encourages the recovery of litigation costs and attorneys' fees); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members.").

### B. The Requested Fee Enjoys a Presumption of Reasonableness Because It Has Been Authorized by Court-Appointed Lead Plaintiffs Pursuant to a Pre-Litigation Agreement

While approval of the fee is left to the sound discretion of the Court, the fact that the fee request is based on an *ex ante* fee agreement entered into between one of the Lead Plaintiffs and its counsel at the outset of the Action creates a "presumption of reasonableness" as to the fee. *See, e.g., Cendant I*, 264 F.3d at 282 (*ex ante* fee agreements in securities class actions should be given "a presumption of reasonableness"); *id*. at 220 ("courts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly-selected lead plaintiff and properly-selected lead counsel").

Moreover, both Lead Plaintiffs, who took an active role in the litigation and closely supervised the work of Lead Counsel, support the approval of the requested fee based on, among other things, the significant recovery obtained for the Settlement Class, the work performed, and the risks of the Action. *See* Ex. 2, at ¶¶ 9-10, Ex. 3, at ¶ 9. Lead Plaintiffs' endorsement of the fee request further supports its approval. *See, e.g., In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp.

2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").

## II.   THE REQUESTED FEE IS REASONABLE UNDER EITHER THE PERCENTAGE-OF-RECOVERY METHOD OR THE LODESTAR METHOD

In the Third Circuit, the percentage-of-recovery method is "generally favored" in cases like this one involving a settlement that creates a common fund. *See Sullivan v. DB Invs.*, 667 F.3d 273, 330 (3d Cir. 2011) (favoring percentage-of-recovery method "because it allows courts to award fees from the [common] fund 'in a manner that rewards counsel for success and penalizes it for failure'"); *In re AT & T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005); *Cendant II*, 404 F.3d at 188 n.7. This is because the percentage-of-recovery method most closely aligns the interests of counsel and the class. *See Rite Aid*, 396 F.3d at 300; *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *24 (D.N.J. Nov. 15, 2016). The Third Circuit also recommends that the percentage award be "cross-check[ed]" against the lodestar method to ensure its reasonableness. *See Sullivan*, 667 F.3d at 330. As explained below, the requested fee is reasonable under either method.

### A.   The Requested Fee Is Reasonable Under the Percentage-of-Recovery Method

The requested fee of 23% of the Settlement Fund is reasonable under the percentage-of-recovery method. Indeed, it is toward the low end of the range of fees commonly awarded in the Third Circuit—where courts have observed that fee awards generally range from 19% to 45% of the settlement fund. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995); *Ikon*, 194 F.R.D at 196; *see also In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery"); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL

4730185, at *8 (D.N.J. Dec. 4, 2009) (same); *In re Wilmington Tr. Sec. Litig.,* 2018 WL 6046452, at *9 (D. Del. Nov. 19, 2018) (finding 28% to be a "typical fee percentage" in the Third Circuit).

A review of attorneys' fees awarded in class actions with comparable sized settlements in this District and Circuit strongly supports the reasonableness of the requested 23% fee. *See, e.g.*, *In re Advanced Auto Parts, Inc. Sec. Litig.*, No. 1:18-cv-0212-RTD-SRF, slip op. at 2 (D. Del. June 13, 2022), D.I. 367 (Ex. 7A) (awarding 25% of $49.25 million settlement); *In re The Bancorp Inc. Sec. Litig.*, 2016 WL 7741727, at *1 (D. Del. Dec. 16, 2016) (awarding 23% of $17.5 million settlement); *In re Heckmann Corp. Sec. Litig.*, No. 1:10-cv-00378-LPS-MPT, slip op. at 2 (D. Del. June 26, 2014), D.I. 308 (Ex. 7B) (awarding 33.3% of $27 million settlement); *In re Veritas Software Corp. Sec. Litig.*, No. 1:04-cv-00831-SLR, slip op. at 2 (D. Del. Aug. 5, 2008), D.I. 143 (Ex. 7C), *aff'd*, 396 Fed. App'x 815 (3d Cir. 2010) (awarding 30% of $21.5 million settlement); *see also In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*, 2022 WL 525807, at *8 (D.N.J. Feb. 22, 2022) (awarding 30% of $23,125,000 settlement); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2017 WL 4167440, at *9 (E.D. Pa. Sept. 20, 2017) (awarding 25% of $30 million settlement); *Demaria v. Horizon Healthcare Servs., Inc.*, 2016 WL 6089713, at *4 (D.N.J. Oct. 18, 2016) (awarding 33.3% of $33 million settlement and noting that "a contingency fee of 33.33% is fairly standard for the size of the Settlement"); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2016 WL 10570211, at *1 (D.N.J. Sept. 29, 2016) (awarding 30% of $33 million settlement); *Bodnar v. Bank of Am. N.A.*, 2016 WL 4582084, at *5-6 (E.D. Pa. Aug. 4, 2016) (awarding 33% of $27.5 million settlement and noting that the "fee request is consistent with other awards in this Circuit"); *Esslinger v. HSBC Bank Nev., N.A.*, 2012 WL 5866074, at *14 (E.D. Pa. Nov. 20, 2012) ("a fee award of 30% of the [$23.5 million] settlement here is reasonable and in keeping with similar precedent"); *see generally* EDWARD FLORES &

Svetlana Starykh, NERA Economic Consulting, Recent Trends in Securities Class Action: 2023 Full-Year Review, at 29 (2024) (Ex. 7D) (analysis showing that, from 2014 through 2023, the median fee award in securities class action settlements between $25 million and $100 million was 25%, and that in settlements ranging from $10 million to $25 million, the median fee award was 27.5%).

Even in much larger settlements, percentage fees higher than the requested fee here are often awarded in this District and Circuit. *See, e.g., Wilmington Tr.*, 2018 WL 6046452, at *9 (awarding 28% of $210 million settlement); *San Antonio Fire & Police Pension Fund v. Dole Food Co.*, No. 1:15-cv-1140-LPS, slip op. at 2 (D. Del. July 18, 2017), D.I. 100 (Ex. 7E) (awarding 25% of $75 million settlement); *In re Rite Aid Corp. Sec. Litig.,* 362 F. Supp. 2d 587, 590-91 (E.D. Pa. 2005) (awarding 25% of $126.6 million settlement); *In re AremisSoft Corp. Sec. Litig.,* 210 F.R.D. 109, 130-31 (D.N.J. 2002) (awarding 28% of $194 million settlement); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 734-36 (E.D. Pa. 2001) (awarding 25% of $193 million settlement). Thus, the percentage-of-recovery analysis strongly supports approval.

### B.     A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

The Third Circuit recommends that district courts use counsel's lodestar as a "cross-check" to determine whether the fee that would be awarded under the percentage approach is reasonable. *See Sullivan*, 667 F.3d at 330; *AT & T*, 455 F.3d at 164.[3] "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method." *Rite Aid*, 396 F.3d at 306. "Conversely,

---

[3] Under the "lodestar method," a court multiplies the number of hours each timekeeper spent on the case by the hourly rate, then adjusts that lodestar figure by applying a multiplier to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorneys' work. The multiplier is intended to "account for the contingent nature or risk involved in a particular case and the quality" of the work. *Rite Aid*, 396 F.3d at 305-06.

where the ratio . . . is relatively low, the cross-check can confirm the reasonableness of the potential award under the [percentage-of-recovery] method." *In re Schering-Plough Corp. ENHANCE Sec. Litig.*, 2013 WL 5505744, at *33 (D.N.J. Oct. 1, 2013).

Fee awards in class actions with contingency risks, such as this one, typically represent *positive* multipliers of counsel's lodestar to account for the possibility of non-payment. *See Rihn v. Acadia Pharm. Inc.*, 2018 WL 513448, at *6 (S.D. Cal. Jan. 22, 2018) ("Courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases" because, in doing so, it provides a "financial incentive to accept contingent-fee cases which may produce nothing."). Indeed, courts often approve fees in class cases that correspond to positive multiples of one to four times the lodestar, and sometimes more. *See Prudential*, 148 F.3d at 341 ("[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied"); *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (approving multiplier of 6.16 and noting that lodestar multipliers "ranging from 1 to 8 are often used in common fund cases" to "compensate counsel for the risk of assuming the representation on a contingency fee basis").

Here, the lodestar cross-check further demonstrates the reasonableness of the requested fee percentage because the fee request is substantially below Lead Counsel's total lodestar. As detailed in the Joint Declaration, Plaintiffs' Counsel spent 13,250 hours of attorney and other professional time prosecuting the Action. ¶ 104. Lead Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney or other professional by his or her current hourly rate,[4] is $8,567,328.75. *Id.*

---

[4] The Supreme Court and Third Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation,

Thus, the requested fee of 23% of the Settlement Fund, or $5,865,000 (plus interest), represents a negative multiplier of 0.68 on counsel's lodestar. In other words, Lead Counsel will recover just 68% of the value of the time that they dedicated to the Action. ¶ 104. The fact that the requested fee is substantially less than the lodestar strongly supports its reasonableness. *See O'Hern v. Vida Longevity Fund, LP*, 2023 WL 3204044, at *10 (D. Del. May 2, 2023) (a "negative multiplier of 0.83" was "well under the generally accepted range and provides strong additional support for approving the attorneys' fee request"); *Dickerson v. York Int'l Corp.*, 2017 WL 3601948, at *11 (M.D. Pa. Aug. 22, 2017) (alteration omitted) ("A negative multiplier reflects that counsel is requesting only a fraction of the billed fee; negative multipliers thus 'favor approval.'"); *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (a negative multiplier was a "strong indication of the reasonableness of the proposed fee").

Accordingly, the 23% fee request here is reasonable under both the percentage-of-recovery approach and based on a lodestar cross-check.

## III.   THE OTHER FACTORS CONSIDERED BY COURTS IN THE THIRD CIRCUIT ALSO CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

Under Third Circuit law, district courts have discretion in setting an appropriate percentage-based fee award in traditional common fund cases. *See, e.g., Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees."). The Third Circuit has noted that a district court should consider the following factors in exercising its discretion to award fees:

(1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms

---

and the loss of interest. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001); *Schering-Plough ENHANCE*, 2013 WL 5505744, at *33 n.28 ("[i]n utilizing the blended billing rates to calculate the lodestar, the courts allow the use of current billing rates at the time the calculation is made").

and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*Diet Drugs*, 582 F.3d at 541*; In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998). These fee award factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Diet Drugs*, 582 F.3d at 545; *Schuler*, 2016 WL 3457218, at *9. Here, each of these factors supports the award of the requested 23% fee.

## A.    The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request

Courts have consistently recognized that the result achieved is the "most critical factor." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016).

Here, Lead Counsel secured a Settlement that provides for a substantial and certain payment of $25,500,000 in cash for the Settlement Class. As set forth at length in the Joint Declaration, this recovery also represents from 6% to 22% of the maximum possible damages calculated by Lead Plaintiffs' damages expert—and a meaningfully higher percentage of the reasonably likely possible damages. ¶¶ 73-75.

The Settlement will also benefit a large number of investors. To date, the Claims Administrator has mailed 73,716 copies of the Notice Packet to potential Settlement Class Members and their nominees. *See* Segura Decl. (Ex. 4), at ¶ 12. Accordingly, while the claim-submission deadline is not until September 19, 2024, many Settlement Class Members can be expected to benefit from the Settlement Fund. *See In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004), *amended*, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (size

of benefitted population "is best estimated by the number of entities that were sent the notice describing the [Settlement]").

**B.      The Reaction of the Settlement Class to Date Supports Approval**

The Notice, which has been mailed to all members of the Settlement Class who could be identified, provides a summary of the terms of the Settlement and states that Lead Counsel would apply for attorneys' fees in an amount not to exceed 23% of the Settlement Fund. *See* Notice, attached as Exhibit 1 to the Segura Decl. (Ex. 4), at ¶¶ 5, 55. The Notice also advised Settlement Class Members that they could object to the Settlement or fee request and explained the procedures for doing so. *See id.* at 3 and ¶¶ 63-64. While the August 1, 2024 objection deadline has not yet passed, to date, no objections have been received. Lead Counsel will address any objections that may be received in their reply papers.

**C.      The Skill and Efficiency of Counsel Support Approval of the Fee Request**

Lead Counsel's substantial effort resulted in a favorable outcome for the benefit of the Settlement Class. *See AremisSoft*, 210 F.R.D. at 132 (*quoting Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000)) ("the single clearest factor reflecting the quality of class counsels' services to the class are the results obtained"). The substantial and certain recovery obtained for the Settlement Class is the direct result of the significant efforts of highly skilled attorneys with substantial experience in the prosecution of complex securities class actions. Lead Counsel overcame Defendants' motions to dismiss and conducted substantial discovery. In addition, Lead Counsel's reputation as attorneys who will zealously carry a meritorious case through trial and appeal further enabled them to negotiate the very favorable recovery for the benefit of the Settlement Class. The success of Lead Counsel at each stage, against formidable defense counsel, led directly to the $25.5 million Settlement.

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Plaintiffs' Counsel. *See, e.g., Ikon*, 194 F.R.D. at 194; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."). Here, Defendants were zealously represented by Alston & Bird LLP and DLA Piper LLP (US), both top-tier defense firms with extensive experience and skill. The ability of Lead Counsel to obtain a favorable outcome for the Settlement Class in the face of this formidable legal opposition further confirms the quality of counsel's representation.

### D.      The Complexity and Duration of the Litigation Support Approval

Securities litigation is regularly acknowledged to be particularly complex and expensive litigation. *See, e.g., Fogarazzo v. Lehman Bros., Inc.*, 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("securities actions are highly complex"); *In re Genta Sec. Litig.*, 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive."). The $25,500,000 recovery is substantial in light of the complexity of this case and the significant risks and expense that the class would have faced by litigating through trial and the inevitable appeals.

For example, this Action concerned complex issues of accounting, damages, and loss causation—all of which required detailed expert analysis. And, if the litigation had continued, Lead Plaintiffs and Lead Counsel would have been required to advance the case through the completion of fact and expert discovery and anticipated motions for summary judgment. Lead Plaintiffs and Lead Counsel would have also expended substantial time and resources in litigating pretrial issues and preparing for trial, and the trial itself would have been lengthy, expensive, and uncertain.

Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of post-trial motions and a complex multi-year appellate process. In complex securities cases, "[e]ven a victory at trial is not a guarantee of ultimate success." *See Warner Commc'ns*, 618 F. Supp. at 747-48 ("If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself."). Considering the magnitude, expense, and complexity of this securities case—especially when compared against the significant and certain recovery achieved by the Settlement—Lead Counsel's fee request is reasonable. Accordingly, this factor weighs in favor of approval of the requested fee.

E.     **The Risk of Non-Payment Supports Approval of the Fee Request**

Lead Counsel undertook this Action on an entirely contingent fee basis, taking the risk that the litigation would yield no or very little recovery and leave them uncompensated for their time, as well as for their out-of-pocket expenses. As explained in detail in the Joint Declaration, Lead Counsel faced numerous significant risks in this case that could have resulted in no recovery at all or a recovery significantly smaller than the Settlement amount. *See In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) (recognizing that the risks created by undertaking an action on a contingency fee basis militates in favor of approval). Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See, e.g., Warner Commc'ns*, 618 F. Supp. at 747-49 (citing cases). This is particularly true in securities litigation like here, which are regarded as "notably difficult and notoriously uncertain" cases. *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993).  The risk was particularly acute in this case, where the first amended complaint was dismissed in its entirety.

As discussed in the Joint Declaration and the Settlement Memorandum, there were numerous significant risks in this litigation from the outset, including risks in establishing falsity, scienter, and loss causation on Lead Plaintiffs' claims. Among other things, Defendants contended that GCE's outside auditors and the SEC had reviewed and approved GCE's accounting treatment for GCU before Defendants made any related statements on that subject. Therefore, Lead Plaintiffs faced significant hurdles in showing that Defendants' statements of accounting judgment (even if proven to be incorrect) were made with scienter. Similarly, Defendants had a substantial argument that their statement that the DOE's delay in approving the transaction was due to "understaffing" was not knowingly false, because it was based on information provided to them by their advisors. Finally, Lead Plaintiffs faced a significant risk that the Court might conclude that the Citron Report—the disclosure that caused the majority of Lead Plaintiffs' damages—could not serve as a corrective disclosure because it did not reveal any new facts to the market.

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result, and that such a result would be realized only after considerable and difficult effort. Thus, this factor strongly favors approval of the requested fee.

### F.    The Significant Time Devoted to this Case by Lead Counsel Supports Approval of the Fee Request

As set forth above, Lead Counsel have expended 13,250 hours prosecuting this Action for the benefit of the Settlement Class. As more fully discussed above and in the Joint Declaration, Lead Counsel vigorously litigated this Action, including by:

- expending considerable time in the initial investigation of the case;
- working extensively with experts;
- seeking out and interviewing former employees with key information that would be used to support the allegations in the amended complaints;
- preparing and filing three amended complaints;

- researching and briefing complex legal issues in connection with Defendants' two motions to dismiss;

- conducting substantial fact discovery, including requests for production of documents and interrogatories directed to Defendants, subpoenas served on multiple third parties, and the review and analysis of over 300,000 pages of documents;

- preparing and filing Lead Plaintiffs' motion for class certification, including an accompanying report from a financial economics expert; and

- engaging in extended settlement negotiations, including two full-day mediation sessions led by a highly experienced mediator.

At all times, Lead Counsel conducted their work with skill and efficiency, while conserving resources and avoiding any duplication of efforts. The foregoing represents a very significant commitment of time, personnel, and expenses by Lead Counsel, while taking on the substantial risk of recovering nothing for their efforts. This factor supports approval.

### G.     The Requested Fee of 23% of the Settlement Fund is within the Range of Fees Typically Awarded in Actions of this Nature

As discussed above in Part III, the requested fee of 23% of the Settlement Fund is well within the range of fees awarded in comparable cases, when considered as a percentage of the fund or on a lodestar basis. Accordingly, this factor strongly supports approval of the requested fee.

### H.     The Settlement Is Attributable to the Efforts of Lead Counsel

Third Circuit courts also consider whether class counsel benefited from a governmental investigation or enforcement action concerning the alleged wrongdoing. *See Prudential*, 148 F.3d at 338. Here, there was no parallel enforcement action by the SEC or Department of Justice into the alleged securities fraud that benefitted class counsel in any way. Thus, this factor further supports the requested fee.  *See AT & T*, 455 F.3d at 173 ("Here, class counsel was not aided by the efforts of any governmental group, and the entire value of the benefits accruing to class members is properly attributable to the efforts of class counsel. This strengthens the . . . conclusion that the fee award was fair and reasonable.").

**I.**     **The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request**

A 23% fee is also consistent with—or below—the typical attorneys' fees in non-class cases. *See Ocean Power*, 2016 WL 6778218, at *29. If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery. *See, e.g., id.*; *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984) (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."). Lead Counsel's requested fee of 23% of the Settlement Fund is lower than these private standards, which also supports a finding of reasonableness regarding the proposed fee.

\*               \*               \*

In sum, the application of the Third Circuit's factors makes clear that Lead Counsel's requested fee of 23% of the Settlement Fund is fair and reasonable.[5] Lead Counsel, supported by Lead Plaintiffs, respectfully request that the Court approve the requested fee in full.

**IV.**    **LEAD COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED**

Counsel in a class action are also entitled to recover expenses that were "'adequately documented and reasonable and appropriately incurred in the prosecution of the class action.'" *ViroPharma*, 2016 WL 312108, at *18; *accord In re Safety Components, Inc. Sec. Litig.*, 166 F.

---

[5] Another factor courts consider is whether the settlement contains "any innovative terms." *Diet Drugs*, 582 F.3d at 541; *Prudential*, 148 F.3d at 339. This Settlement does not because Lead Counsel believe that an all-cash recovery is the best remedy for the injury allegedly suffered by the Settlement Class. As such, the lack of innovative terms "neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Prods. Antitrust Litig.*, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

Supp. 2d 72, 108 (D.N.J. 2001). Accordingly, Lead Counsel respectfully request that this Court approve payment of $358,689.66 for litigation expenses that they incurred in connection with this Action. A complete breakdown by category of the expenses incurred by Lead Counsel is set forth in Exhibit 6 to the Joint Declaration. These expense items are billed separately by Lead Counsel, and such charges are not duplicated in the firms' hourly billing rates. All these expenses, which are set forth in declarations submitted by Lead Counsel (Exs. 5A and 5B), were reasonably necessary for the prosecution and settlement of this Action.

The expenses for which Lead Counsel seeks payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, document management costs, expert fees, online research, court reporting and transcripts, photocopying, postage expenses, and mediation costs. The largest category of expenses, which totaled $161,636.88—or approximately 45% of the total expenses—was for the retention of Lead Plaintiffs' experts in fields such as financial economics and accounting. These expenses were essential to prosecuting the Action effectively.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for payment of litigation expenses in an amount not to exceed $600,000. *See* Notice ¶¶ 5, 55. The total amount of Litigation Expenses, $401,506.93 (including $358,689.66 in Lead Counsel's expenses and $42,817.27 for Lead Plaintiffs' PSLRA awards, discussed below), is substantially below the amount listed in the Notice. To date, there have been no objections related to the expense application.

## V.   LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. § 78U-4(A)(4)

In this motion, Lead Counsel also seek reimbursement of the costs and incurred directly by Lead Plaintiffs.  The PSLRA specifically provides that an "award of reasonable costs and expenses

(including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).

Numerous courts have approved reasonable awards to compensate lead plaintiffs for the time and effort they spent on behalf of a class. In *In re Marsh & McLennan Cos., Inc. Securities Litigation*, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009), the court awarded $144,657 to the New Jersey Attorney General's Office and $70,000 to certain Ohio pension funds, to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id*. at *21. As the court noted, their efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives."  *Id*.; *see also In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 WL 9447623, at *29 (D.N.J. Dec. 9, 2008) (awarding "$150,000 to Lead Plaintiffs to compensate them for their reasonable costs and expenses directly relating to their representation of the Class pursuant to 15 U.S.C. § 78u–4(a)(4)"); *San Antonio Fire & Police Pension Fund v. Dole Food Co.*, No. 1:15-cv-1140-LPS, slip op. at 3-3 (D. Del. July 18, 2017), D.I. 100 (Ex. 7E) (awarding $32,437, $18,500, and $4,058 to three lead plaintiffs in PSLRA case); *In re Veritas Software Corp. Sec. Litig.*, No. 1:04-cv-00831-SLR, slip op. at 1 (D. Del. Aug. 5, 2008), D.I. 144 (Ex. 7F) (awarding each lead plaintiff $15,000 in PSLRA case); *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *11 (D.N.J. July 29, 2013) ($18,000 award to lead plaintiff in PSLRA case based on time and effort devoted to the case); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007) (granting PSLRA awards where, as here, "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks and rates appear reasonable to the furtherance of the litigation").

Here, for time spent by their employees supervising and participating in the prosecution of the Action, Oakland County seeks an award of $6,533.52 and Colorado FPPA seeks an award of $36,283.75. *See* Ex. 2, at ¶¶ 13-15; Ex. 3, at ¶¶ 12-14. Employees of Lead Plaintiffs took an active role in the litigation, including reviewing significant pleadings and briefs in the Action, communicating regularly with Lead Counsel, searching for and collecting documents, participating actively in the mediation process, and approving the Settlement. *See* Ex. 2, at ¶¶ 4-5, 13-15; Ex. 3, at ¶¶ 7, 12-14. The requested reimbursement amounts are based on the number of hours that Lead Plaintiffs' employees committed to these activities, multiplied by a reasonable hourly rate for their time. Moreover, as noted above, the Notice informed potential Settlement Class Members that Lead Counsel's request for reimbursement of expenses might include the reasonable costs and expenses of Lead Plaintiffs related to their representation of the Settlement Class, and there has been no objection to that request. The awards sought by Lead Plaintiffs are reasonable and justified under the PSLRA based on their involvement in the Action from inception to the Settlement, and should be granted.

## CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 23% of the Settlement Fund; $358,689.66 in payment of the reasonable litigation expenses that Lead Counsel incurred in connection with the prosecution and resolution of the Action; and $42,817.27 in total PSLRA awards for Lead Plaintiffs.

Dated: July 18, 2024

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
Hannah G. Ross
Katherine M. Sinderson (*pro hac vice*)
Robert F. Kravetz (*pro hac vice*)
Michael M. Mathai (*pro hac vice*)
Sarah Schmidt
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
katiem@blbglaw.com
robert.kravetz@blbglaw.com
michael.mathai@blbglaw.com
sarah.schmidt@blbglaw.com

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
*/s/ Gregory V. Varallo*
Gregory V. Varallo (Bar No. 2242)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3601
greg.varallo@blbglaw.com

*Counsel for Lead Plaintiffs
and Lead Counsel for the Settlement Class*

**BARRACK, RODOS & BACINE**
Jeffrey W. Golan (*pro hac vice*)
Chad A. Carder (*pro hac vice*)
Jordan R. Laporta
3300 Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jgolan@barrack.com
ccarder@barrack.com
jlaporta@barrack.com

*Counsel for Lead Plaintiffs
and Lead Counsel for the Settlement Class*

**VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.**
Aaron L. Castle (*pro hac vice*)
79 Alfred Street
Detroit, MI 48201
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
acastle@vmtlaw.com

*Additional Counsel for Lead Plaintiffs
Oakland County Employees' Retirement
System and Oakland County Voluntary
Employees' Beneficiary Association Trust*

21

## **CERTIFICATION OF SERVICE**

I HEREBY CERTIFY that on July 18, 2024, I caused the Memorandum of Law in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses to be filed and submitted electronically, served via email on all counsel of record, and to be made available for viewing and downloading from the CM/ECF system.

*/s/ Gregory V. Varallo*
Gregory V. Varallo