# Exhibit 7

**EXHIBIT 7**

*In re Grand Canyon Education, Inc. Securities Litigation*,
Civil Action No. 20-639-JLH-CJB (D. Del.)

**COMPENDIUM OF UNPUBLISHED AUTHORITY
CITED IN FEE MEMORANDUM**

| Exhibit | |
|---------|---|
| 7A | *In re Advanced Auto Parts, Inc. Sec. Litig.*, No. 1:18-cv-0212-RTD-SRF, slip op. (D. Del. June 13, 2022), D.I. 367 |
| 7B | *In re Heckmann Corp. Sec. Litig.*, No. 1:10-cv-00378-LPS-MPT, slip op. (D. Del. June 26, 2014), D.I. 308 |
| 7C | *In re Veritas Software Corp. Sec. Litig.*, No. 1:04-cv-00831-SLR, slip op. (D. Del. Aug. 5, 2008), D.I. 143 |
| 7D | EDWARD FLORES & SVETLANA STARYKH, NERA ECONOMIC CONSULTING, RECENT TRENDS IN SECURITIES CLASS ACTION: 2023 FULL-YEAR REVIEW (2024) |
| 7E | *San Antonio Fire & Police Pension Fund v. Dole Food Co.*, No. 1:15-cv-1140-LPS, slip op. (D. Del. July 18, 2017), D.I. 100 |
| 7F | *In re Veritas Software Corp. Sec. Litig.*, No. 1:04-cv-00831-SLR, slip op. (D. Del. Aug. 5, 2008), D.I. 144 |

# Exhibit 7A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE ADVANCE AUTO PARTS, INC. SECURITIES LITIGATION | Case No. 1:18-cv-00212-RTD-SRF |

**ORDER AWARDING ATTORNEYS' FEES**
**AND LITIGATION EXPENSES**

This matter is before the Court on Class Counsel's motion for an award of attorneys' fees and Litigation Expenses. The Court having considered all matters submitted to it; and it appearing that notice substantially in the form approved by the Court, which advised of Class Counsel's request for an award of attorneys' fees and Litigation Expenses, was mailed to all Class Members who or which could be identified with reasonable effort, and that a summary notice substantially in the form approved by the Court was published in *The Wall Street Journal* and was transmitted over *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the attorneys' fees and Litigation Expenses requested;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement, dated December 23, 2021 (D.I. 355-1) (the "Stipulation") and all capitalized terms not otherwise defined herein shall have the same meaning as they have in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Class Members.

1

3. Notice of Class Counsel's motion for an award of attorneys' fees and Litigation Expenses was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the motion for an award of attorneys' fees and Litigation Expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto.

4. Plaintiff's Counsel are hereby awarded attorneys' fees in the amount of 25% of the Settlement Fund, which sum the Court finds to be fair and reasonable. Plaintiff's Counsel are also hereby awarded $2,373,807.51 in payment of litigation expenses to be paid from the Settlement Fund, which sum the Court finds to be fair and reasonable. Class Counsel shall allocate the attorneys' fees awarded amongst Plaintiff's Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5. In making this award of attorneys' fees and payment of litigation expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a) The Settlement has created a fund of $49,250,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiff's Counsel;

(b) The fee sought has been reviewed and approved as reasonable by Class Representative, a sophisticated institutional investor that actively supervised the Action;

2

(c) A total of 94,462 Postcard Notices and 329 Notices were mailed to potential Class Members and nominees stating that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund and for payment of Litigation Expenses in an amount not to exceed $2,400,000, and not one objection to the requested fee and expense application has been received;

(d) Class Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

(e) The Action raised a number of complex issues;

(f) Had Class Counsel not achieved the Settlement there would remain a significant risk that Class Representative and the other members of the Class may have recovered less or nothing from Defendants;

(g) Plaintiff's Counsel devoted over 36,416 hours to the Action, with a lodestar value of $16,982,276.00, to achieve the Settlement; and

(h) The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6. Class Representative the Public Employees' Retirement System of Mississippi is hereby awarded $13,737.50 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

7. Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

8. In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

9. There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this 13th day of June 2022.

The Honorable Robert T. Dawson
United States District Judge

# Exhibit 7B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE HECKMANN CORPORATION
SECURITIES LITIGATION

Case No. 1:10-cv-00378-LPS-MPT

## ORDER AWARDING ATTORNEYS' FEES AND EXPENSES

This matter having come before the Court for hearing on June 26, 2014 (the "Final Approval Hearing") on Co-Lead Counsel's Application for an Award of Attorneys' Fees and Litigation Expenses and Reimbursement of Costs to Lead Plaintiff (D.I. 297), and the Court having considered all matters submitted to it at the Final Approval Hearing and otherwise; and it appearing that notice of the Final Approval Hearing substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *Investor's Business Daily* and was transmitted over *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the application for an award of attorneys' fees, litigation expenses and reimbursement of costs to Lead Plaintiff, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      This Order incorporates by reference the definitions in the Stipulation of Settlement dated as of March 4, 2014 (D.I. 287) (the "Stipulation") and all terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the Litigation and all parties to the Litigation, including all Settlement Class Members.

1

3. Notice of Co-Lead Counsel's Application for an Award of Attorneys' Fees and Litigation Expenses and Reimbursement of Costs to Lead Plaintiff was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the application for an award of attorneys' fees and reimbursement of litigation expenses and reimbursement of costs to Lead Plaintiff satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended, including by the Private Securities Litigation Reform Act of 1995, and the requirements of due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4. Co-Lead Counsel are hereby awarded attorneys' fees in the amount of 33 1/3% of the Cash Settlement Amount (totaling $4,500,000) and 33 1/3% of the Settlement Shares (totaling 282,663 shares), which sum the Court finds to be fair and reasonable, and $1,007,747.74 in reimbursement of Litigation Expenses, plus interest earned on this amount at the same rate as the Settlement Fund. The foregoing fees and expenses shall be paid from the Settlement Fund in accordance with the terms of the Stipulation.

5. Lead Plaintiff Matthew H. Haberkorn is hereby awarded $58,065.00 from the Settlement Fund as reimbursement for his reasonable costs and expenses directly relating to his representation of the Settlement Class.

6. In making this award of attorneys' fees and reimbursement of Litigation Expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a) The Settlement has created a fund consisting of: (i) $13.5 million in cash; and (ii) 847,990 shares of Nuverra Environmental Solutions, Inc. (f/k/a Heckmann Corporation)

common stock.  Numerous Settlement Class Members who submit acceptable Proofs of Claim will benefit from the Settlement that occurred because of the efforts of Co-Lead Counsel;

(b)     The fee sought by Co-Lead Counsel has been reviewed and approved as fair and reasonable by the Court-appointed Lead Plaintiff, a sophisticated investor that was actively involved in the prosecution and resolution of the Litigation;

(c)     Copies of the Notice were mailed to over 11,500 potential Settlement Class Members and nominees stating that Co-Lead Counsel would apply for attorneys' fees in an amount not to exceed 33 1/3% of the Settlement Fund, reimbursement of Litigation Expenses paid or incurred by Co-Lead Counsel in connection with the prosecution and resolution of the Litigation in an amount not to exceed $1,500,000, plus interest, and reimbursement from the Settlement Fund for costs and expenses incurred by Lead Plaintiff in connection with his representation of the Settlement Class, in an amount not to exceed $60,000.  There were no objections to the requested award of attorneys' fees, costs and expenses.

(d)     Co-Lead Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(e)     The Litigation involves complex factual and legal issues and was actively prosecuted for over 3 ½ years;

(f)     Had Co-Lead Counsel not achieved the Settlement there would remain a significant risk that Plaintiffs and the other members of the Settlement Class may have recovered less or nothing from the Defendants;

(g)     Co-Lead Counsel devoted over 26,800 hours, with a lodestar value of $11,174,447.75, to achieve the Settlement; and

(h)    The amount of attorneys' fees awarded and Litigation Expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

7.    Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

8.    Exclusive jurisdiction is hereby retained over the parties and the Settlement Class Members for all matters relating to this Litigation, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

9.    In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

10.    The Court finds no reason for delay in the entry of this Order and directs the Clerk to immediately enter this Order.

June 26, 2014

THE HONORABLE MARY PAT THYNGE
UNITED STATES MAGISTRATE JUDGE

# Exhibit 7C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | : | |
| | : | |
| IN RE VERITAS SOFTWARE CORP. | : | Case No:  04-CV-831 (SLR) |
| SECURITIES LITIGATION | : | Consolidated Action |
| | : | |
| | : | |
| | : | |
| | : | |
| This Document Relates to: | : | |
| | : | |
| ALL ACTIONS | : | |
| | : | |

## ORDER AWARDING ATTORNEYS' FEES
## AND REIMBURSEMENT OF EXPENSES

The Stipulation of Settlement, dated April 8, 2008 (the "Stipulation"), of the above-captioned consolidated civil action (the "Action"), pursuant to the order preliminarily approving the same entered herein on April 16, 2008 (the "Preliminary Approval Order"), which Stipulation was joined and consented to by all parties to the Action (the "Parties") and which (along with the defined terms therein) is incorporated herein by reference;

The Court, having determined that notice of said hearing was given in accordance with the Preliminary Approval Order to members of the Class as certified by the Court in the Preliminary Approval Order, and that said notice was the best notice practicable and was adequate and sufficient; and the Parties having appeared by their attorneys of record; and the attorneys for the respective Parties having been heard in support of the Stipulation and the settlement of the Action provided therein (the "Settlement"); and an opportunity to be heard having been given to all other persons and entities desiring to be heard as provided in the notice; and the entire matter of the Settlement having been considered by the Court;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

1.    The Court, for purposes of this Order, adopts all defined terms as set forth in the Stipulation.

2.    Co-Lead Counsel are hereby awarded attorneys' fees in the amount of $6,450,000 and reimbursement of expenses in the amount of $403,395.07. The attorneys' fees and expenses shall be paid to Co-Lead Counsel from the Settlement Fund with interest from the date such Settlement Fund was funded to the date of payment at the same net rate that the Settlement Fund earns. The awarded fees, costs and expenses shall be allocated among plaintiffs' counsel in such fashion agreed to by Co-Lead Counsel.

**SO ORDERED** this __5th__ day of August, 2008.

_____
JUDGE SUE L. ROBINSON
UNITED STATES DISTRICT JUDGE

# Exhibit 7D

# NERA

# RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION:
# 2023 FULL-YEAR REVIEW

By Edward Flores and Svetlana Starykh[1]

23 January 2024

# FOREWORD

I am excited to share NERA's "Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review" with you. This year's edition builds on work carried out over more than three decades by many of NERA's securities and finance experts. Although space does not permit us to present all the analyses the authors have undertaken while working on this year's edition or to provide details on the statistical analysis of settlement amounts, we hope you will contact us if you want to learn more about our research or our work in securities litigations. On behalf of NERA's securities and finance experts, I thank you for taking the time to review this year's report and hope you find it informative.

**DAVID TABAK, PhD**
Senior Managing Director

# INTRODUCTION

There were 228 new federal securities class action suits filed in 2023, ending a four-year decline in filings seen from 2019 to 2022. The increase in filings was mainly driven by an increase in the number of suits alleging Rule 10b-5 violations. Fueled by turmoil in the banking industry, filings in the finance sector more than doubled in 2023, comprising 18% of new filings. The number of filings related to the environment quadrupled in 2023 compared to 2022.

For the sixth consecutive year, there was a decline in the number of resolutions. There were 190 cases resolved in 2023, consisting of 90 settlements and 100 dismissals, marking the lowest recorded level of resolutions in the last 10 years. More than half of the decline in resolutions was driven by a decrease in the number of settled cases with Rule 10b-5, Section 11, and/or Section 12 claims.

Aggregate settlements totaled $3.9 billion in 2023, with the top 10 settlements of the year accounting for over 66% of this amount. Aggregate plaintiffs' attorneys' fees and expenses totaled $972 million, accounting for 24.9% of the 2023 aggregate settlement value. The average settlement value increased by 17% in 2023 to $46 million, though this was largely driven by the presence of a $1 billion settlement. The median settlement value for 2023 was $14 million, a nominal 7% increase from the inflation-adjusted median settlement value in 2022.



# TRENDS IN FILINGS

From 2019 to 2022, there was a decline in the number of federal filings. In 2023, there were 228 new cases filed, an increase from the 206 cases filed in 2022 (see Figure 1).[2] Standard cases, which contain alleged violations of Rule 10b-5, Section 11, and/or Section 12, accounted for most new filings with 206.[3] In particular, filings involving only Rule 10-5 claims increased by 34% from 137 in 2022 to 184 in 2023. On the other hand, there were only seven merger-objection suits filed in 2023, marking a 10-year low. There was also a decline in filings involving crypto unregistered securities, dropping to 11 in 2023 from the 16 observed in 2022.[4] See Figure 2.

Figure 1.  Federal Filings and Number of Companies Listed in the United States
January 1996–December 2023



Note: Listed companies include those listed on the NYSE and Nasdaq. Listings data obtained from World Federation of Exchanges (WFE). The 2023 listings data are as of October 2023.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 2.  Federal Filings by Type
January 2014–December 2023



Excluding merger-objection and crypto unregistered securities cases, the electronic technology and technology services sector accounted for 22% of new filings, the largest proportion of any sector. After hitting a five-year low in 2022, there was a resurgence in filings in the finance sector in 2023, accounting for 18% of new filings. This is more than double the percentage in 2022 and was partly due to the banking crisis in early 2023. On the other hand, the percentage of suits in the health technology and services sector declined from 27% in 2022 to 19% in 2023, partially driven by a decline in COVID-19-related suits. See Figure 3.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 3. **Percentage of Federal Filings by Sector and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2019–December 2023



Note: This analysis is based on the FactSet Research Systems, Inc. economic sector classification. Some of the FactSet economic sectors are combined for presentation.

The Second, Third, and Ninth Circuits continue to be the jurisdictions with the most cases filed, together accounting for 155 of the 210 non-merger-objections, non-crypto unregistered securities filings. The Ninth Circuit witnessed 66 new filings, marking a 22% increase from 2022. The number of filings in the Second Circuit declined by 24% to 54, marking a five-year low. The Third Circuit accounted for 35 filings, more than double the number of cases in 2022. Elsewhere, there were 14 cases filed in the Eleventh Circuit, marking a five-year high. See Figure 4.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 4.  **Federal Filings by Circuit and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2019–December 2023



Among filings of standard cases, 31% included an allegation related to missed earnings guidance and 29% included an allegation related to misled future performance.[5] Meanwhile, the percentage of standard cases containing an allegation related to merger-integration issues declined by one-third to 11%, partially driven by a decline in SPAC-related filings. See Figure 5.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 5.  **Allegations**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2019–December 2023



# FILINGS AGAINST FOREIGN COMPANIES

Historically, foreign companies with securities listed on US exchanges have been targeted with securities class action suits at a higher rate than their proportion of US listings, though this trend has reversed over the past two years.[6] In 2023, 18.9% of filings of standard cases were against foreign companies, compared to 24.1% of US listings represented by foreign companies. See Figure 6.

In 2023, there were 39 standard suits filed against foreign companies, a slight increase from 2022 (see Figure 7). Suits against companies in Asia accounted for 19 filings, while another 14 filings were against European companies. Nearly 36% of cases involving foreign companies had an allegation related to regulatory issues, compared to 23% for US companies. See Figure 8.

Figure 6.  **Foreign Companies: Share of Filings and Share of Companies Listed on US Exchanges**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2014–December 2023



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 7.  Filings Against Foreign Companies

Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, or Section 12 by Region
January 2014–December 2023



Note: Foreign issuer status determined based on location of principal executive offices.



Figure 8.  Allegations by US and Foreign Companies
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2023–December 2023

# EVENT-DRIVEN AND OTHER SPECIAL CASES

In this section, we summarize trends in filings in potential development areas that we have identified for securities class actions over the past five years (see Figures 9 and 10). Due to the small number of cases in some categories, the findings summarized here may be driven by one or two cases.

## Crypto Cases

Since 2020, there have been at least 10 crypto-related federal filings each year, comprised of cases involving unregistered securities and shareholder suits involving companies operating in or adjacent to the cryptocurrency sector. In 2023, there were 16 crypto-related federal filings, a 28% decline from the 26 filings observed in 2022.

Figure 9.   **Number of Crypto Federal Filings**
January 2016–December 2023



## 2023 Banking Turmoil

The first securities class action suit alleging problems in the banking industry was filed on 7 December 2022 against bank holding company Silvergate Capital Corporation, which provided a banking platform through its subsidiary, Silvergate Bank.[7] Silvergate Bank's voluntary liquidation on 8 March 2023 started a rapid chain of bank failures that intensified during the spring, which saw the collapse of Silicon Valley Bank, Signature Bank, and First Republic Bank,[8] and continued through 3 November 2023, when Citizens Bank of Sac City was closed by the Iowa Division of Banking.[9] Between December 2022 and October 2023, there were 12 securities class action suits filed against banking institutions. Of those, 11 cases were filed in 2023, representing nearly 30% of all filings in the finance sector. Four of the 11 cases were filed against Credit Suisse Group AG, after Credit Suisse, the second-largest bank in Switzerland, collapsed in March 2023 and was bought by rival UBS Group AG.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

## Environment

In recent years, there has been an increased focus by governments and regulators on issues related to the environment, fossil fuel emissions, quality of drinking water, and climate change. During the past five years, there have been 20 environment-related securities class action suits filed. Eight of these cases were filed in 2023, quadruple the number from the two cases filed in 2022. Among the cases filed in 2023 include a suit against Hawaiian Electric Industries, Inc. in connection with wildfires in Hawaii, two cases related to train derailments with severe environmental consequences against Norfolk Southern Corporation, and three cases involving telecommunication companies AT&T, Verizon Communications, and Lumen Technologies for ownership of thousands of miles of lead-covered cables.

## Cannabis

In 2019, there were 13 securities class action suits filed against defendants in the cannabis industry. The number of filings has declined in subsequent years, with only one suit filed per year in each of 2022 and 2023.

## Money Laundering

In each of 2019 and 2020, three cases were filed with claims related to money laundering. In 2021, there were no such cases filed, while in 2022 and 2023, only one such suit was filed in each year.

## Cybersecurity and Customer Privacy Breach

Since 2019, there have been at least three securities class action suits filed each year related to a cybersecurity and/or customer privacy breach. While there were seven such filings in 2021, there were only three filings in 2023.

## COVID-19

Since March 2020, there have been 85 securities class actions filed with claims related to the COVID-19 pandemic. Of these, 33 cases were filed in 2020. In 2021 and 2022, the number of suits declined to 20 each year, while in 2023, there were only 12 such filings.

## SPAC

Filings related to special purpose acquisition companies (SPACs) peaked in 2021 with 31 securities class action suits filed that year. Since then, new federal filings related to SPACs have declined each year to 24 in 2022 and 14 in 2023.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 10.  Event-Driven and Other Special Cases by Filing Year
January 2019–December 2023



Number of Filings

# TRENDS IN RESOLUTIONS

In 2023, the number of resolved cases declined by 15% to 190 from 223 in 2022, continuing a six-year decline in resolutions seen since 2018 and marking the lowest recorded level of resolutions in the last 10 years. Of these resolved cases, 90 were settlements and 100 were dismissals.[10] While resolutions declined across all categories of cases, more than half of this decline was due to

a reduction in the number of settled standard cases, which had a record-setting year in 2022. The number of merger-objection cases resolved declined to nine in 2023, consistent with the reduced number of filings of such cases in recent years. See Figure 11.

Since 2015, more cases filed have been dismissed than settled. This is consistent with historical trends, which indicate that dismissals tend to occur earlier in the litigation cycle and settlements occur later (see Figure 12). For cases filed in 2023, 5% of cases have been dismissed while 95% remain pending as of December 2023.

For cases filed and resolved over the past 20 years, over two-thirds were resolved within three years of the filing of the first complaint, while 16% of cases take longer than four years to resolve (see Figure 13). The median time to resolution is 2.1 years.

Figure 11.   **Number of Resolved Cases: Dismissed or Settled**
January 2014–December 2023



Figure 12.  **Status of Cases as Percentage of Federal Filings by Filing Year**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2014–December 2023



Note: Dismissals may include dismissals without prejudice and dismissals under appeal. Component values may not add to 100% due to rounding.

The number of resolved cases decreased by 15% to 190 from 223 in 2022, continuing a six-year decline in resolutions seen since 2018 and marking the lowest recorded level of resolutions in the last 10 years.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 13.   **Time from First Complaint Filing to Resolution**
Excluding Merger Objections and Crypto Unregistered Securities
Cases Filed January 2004–December 2019 and Resolved January 2004–December 2023



# ANALYSIS OF MOTIONS

NERA's federal securities class action database tracks filing and resolution activity as well as decisions on motions to dismiss, motions for class certification, and the status of any motion as of the resolution date. For this analysis, we include securities class actions that were filed and resolved over the 2014–2023 period in which purchasers of common stock are part of the class and in which a violation of Rule 10b-5, Section 11, and/or Section 12 is alleged.

## Motion to Dismiss

A motion to dismiss was filed in 96% of the securities class action suits filed and resolved. A decision was reached in 74% of these cases, while 17% were voluntarily dismissed by plaintiffs, 8% settled before a court decision was reached, and 1% of motions were withdrawn by defendants. Among the cases in which a decision was reached, 60% of motions were granted (with or without prejudice) while 40% were denied either in part or in full. See Figure 14.

Figure 14.  Filing and Resolutions of Motions to Dismiss
Cases Filed and Resolved January 2014–December 2023



## Motion for Class Certification

A motion for class certification was filed in only 18% of the securities class action suits filed and resolved, as most cases are either dismissed or settled before the class certification stage is reached. A decision was reached in 60% of the cases in which a motion for class certification was filed, while nearly all remaining 40% of cases were resolved with a settlement. Among the cases in which a decision was reached, the motion for class certification was granted (with or without prejudice) in 86% of cases. See Figure 15.

Approximately 64% of decisions on motions for class certification occur within three years of the filing of the first complaint, with nearly all decisions occurring within five years (see Figure 16). The median time is about 2.7 years.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 15.  Filing and Resolutions of Motions for Class Certification
Cases Filed and Resolved January 2014–December 2023



Figure 16.  Time from First Complaint Filing to Class Certification Decision
Cases Filed and Resolved January 2014–December 2023



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# TRENDS IN SETTLEMENT VALUES[11]

Aggregate settlements for 2023 totaled $3.9 billion, which marks a slight decline from the inflation-adjusted total of $4.2 billion from 2022.[12]  In 2023, the average settlement value was approximately $46 million, a 17% increase over the 2022 inflation-adjusted average settlement value of $39 million and the second consecutive year that this value has increased (see Figure 17). The increase in the average settlement value is largely driven by a $1 billion settlement by Wells Fargo & Company.[13]

Figure 17.  **Average Settlement Value**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2014–December 2023



When excluding settlements of $1 billion or higher, the average settlement value was $34 million, a decrease of 12% from the $39 million inflation-adjusted amount in 2022 (see Figure 18). The median settlement value was $14.4 million, which is a slight increase from the $13.5 million inflation-adjusted value seen in 2022 (see Figure 19). Aside from a decrease in the percentage of settlements between $10 and $19.9 million and a roughly similar increase in the percentage of settlements between $20 to $49.9 million in 2023, the distribution of settlement values in 2023 looks similar to that of 2022 (see Figure 20).

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 18.  Average Settlement Value
Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2014–December 2023



When excluding settlements of $1 billion or higher, the average settlement value was $34 million in 2023, a decrease of 12% from the $39 million inflation-adjusted amount in 2022.

19     ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 19.  **Median Settlement Value**
Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2014–December 2023



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 20.  **Distribution of Settlement Values**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2019–December 2023



Aggregate settlements for 2023 totaled $3.9 billion, which marks a slight drop relative to the inflation-adjusted total of $4.2 billion from 2022.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# TOP SETTLEMENTS

The 10 largest settlements in 2023 ranged from $90 million to $1 billion and together accounted for over 66% of the $3.9 billion aggregate settlement amount reached in 2023. Wells Fargo & Company appears twice on this list, taking the top spot in a $1 billion settlement in a case involving misrepresentations regarding its progress in overhauling its internal controls[14] as well as the third-highest spot in a $300 million settlement in a matter involving allegations of misconduct in its auto insurance practices.[15] The Second, Seventh, and Ninth circuits accounted for nine of the top 10 settlements.

Table 1. **Top 10 2023 Securities Class Action Settlements**

| Rank | Defendant | Filing Date | Settlement Date | Total Settlement Value ($Million) | Plaintiffs' Attorneys' Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|
| 1 | Wells Fargo & Company (2020) (S.D.N.Y.) | 11 Jun 2020 | 8 Sep 2023 | $1,000.0 | $181.1 | 2nd | Finance |
| 2 | The Kraft Heinz Company (N.D. Ill.) | 24 Feb 2019 | 12 Sep 2023 | $450.0 | $92.7 | 7th | Consumer Non-Durables |
| 3 | Wells Fargo & Company (2018) | 14 Feb 2019 | 17 Aug 2023 | $300.0 | $77.0 | 9th | Finance |
| 4 | Exelon Corporation (2019) | 16 Dec 2019 | 7 Sep 2023 | $173.0 | $45.3 | 7th | Utilities |
| 5 | McKesson Corporation | 25 Oct 2018 | 2 Jun 2023 | $141.0 | $36.3 | 9th | Distribution Services |
| 6 | Alexion Pharmaceuticals, Inc. (D. Conn.) | 17 Nov 2016 | 20 Dec 2023 | $125.0 | $32.8 | 2nd | Health Technology |
| 7 | Cardinal Health, Inc. (2019) | 1 Aug 2019 | 11 Sep 2023 | $109.0 | $33.4 | 6th | Distribution Services |
| 8 | Micro Focus International plc (S.D.N.Y.) (SEC 11) | 28 Mar 2018 | 27 Jul 2023 | $107.5 | $36.7 | 2nd | Technology Services |
| 9 | Grupo Televisa S.A.B. | 5 Mar 2018 | 8 Aug 2023 | $95.0 | $29.6 | 2nd | Communications |
| 10 | The Allstate Corporation | 10 Nov 2016 | 19 Dec 2023 | $90.0 | $27.1 | 7th | Finance |
| | **Total** | | | **$2,590.0** | **$591.9** | | |

Table 2 lists the 10 largest federal securities class action settlements through 31 December 2023. Since the Valeant Pharmaceuticals partial settlement of $1.2 billion in 2020, this list has remained unchanged, with settlements ranging from $1.1 to $7.2 billion.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Table 2. **Top 10 Federal Securities Class Action Settlements (As of 31 December 2023)**

| Rank | Defendant | Filing Date | Settlement Year(s) | Total Settlement Value ($Million) | Financial Institutions Value ($Million) | Accounting Firms Value ($Million) | Plaintiffs' Attorney's Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|---|---|
| 1 | ENRON Corp. | 22 Oct 2001 | 2003–2010 | $7,242 | $6,903 | $73 | $798 | 5th | Industrial Services |
| 2 | WorldCom, Inc. | 30 Apr 2002 | 2004–2005 | $6,196 | $6,004 | $103 | $530 | 2nd | Communications |
| 3 | Cendant Corp. | 16 Apr 1998 | 2000 | $3,692 | $342 | $467 | $324 | 3rd | Finance |
| 4 | Tyco International, Ltd. | 23 Aug 2002 | 2007 | $3,200 | No codefendant | $225 | $493 | 1st | Producer Manufacturing |
| 5 | Petroleo Brasileiro S.A.-Petrobras | 8 Dec 2014 | 2018 | $3,000 | $0 | $50 | $205 | 2nd | Energy Minerals |
| 6 | AOL Time Warner Inc. | 18 July 2002 | 2006 | $2,650 | No codefendant | $100 | $151 | 2nd | Consumer Services |
| 7 | Bank of America Corp. | 21 Jan 2009 | 2013 | $2,425 | No codefendant | No codefendant | $177 | 2nd | Finance |
| 8 | Household International, Inc. | 19 Aug 2002 | 2006–2016 | $1,577 | Dismissed | Dismissed | $427 | 7th | Finance |
| 9 | Valeant Pharmaceuticals International, Inc.* | 22 Oct 2015 | 2020 | $1,210 | $0 | $0 | $160 | 3rd | Health Technology |
| 10 | Nortel Networks | 2 Mar 2001 | 2006 | $1,143 | No codefendant | $0 | $94 | 2nd | Electronic Technology |
| | **Total** | | | $32,334 | $13,249 | $1,017 | $3,358 | | |

* Denotes a partial settlement, which is included here due to its sizeable amount. Note that this case is not included in any of our resolution or settlement statistics.

# NERA-DEFINED INVESTOR LOSSES

To estimate the potential aggregate loss to investors as a result of investing in the defendant's stock during the alleged class period, NERA has developed a proprietary variable, NERA-Defined Investor Losses, using publicly available data. The NERA-Defined Investor Loss measure is constructed assuming investors had invested in stocks during the class period whose performance was comparable to that of the S&P 500 Index. Over the years, NERA has reviewed and examined more than 2,000 settlements and found, of the variables analyzed, this proprietary variable to be the most powerful predictor of settlement amount.[16]

A statistical review reveals that while settlement values and NERA-Defined Investor Losses are highly correlated, the relationship is not linear. The ratio is higher for cases with lower NERA-Defined Investor Losses than for cases with higher Investor Losses. For instance, in cases with less than $20 million in Investor Losses, the median settlement value comprises 23% of Investor Losses, while in cases with more than $50 million in Investor Losses, the median settlement value is less than 4% of Investor Losses. See Figure 21.

Since 2014, annual median Investor Losses have ranged from a low of $358 million to a high of $984 million. For cases settled in 2023, the median Investor Losses were $923 million, a 6% decline from 2022 and the second highest recorded value during the 2014–2023 period. Since 2021, the median ratio of settlement amount to Investor Losses has remained stable at 1.8%. See Figure 22.

Figure 21.  **Median Settlement Value as a Percentage of NERA-Defined Investor Losses**
By Level of Investor Losses
Cases Settled January 2014–December 2023



The median Investor Losses were $923 million, a 6% decline relative to 2022 and the second highest recorded value during the 2014–2023 period.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 22.  **Median NERA-Defined Investor Losses and Median Ratio of Settlement to Investor Losses by Settlement Year**
January 2014–December 2023



NERA has identified the following key factors as driving settlement amounts:

- NERA-Defined Investor Losses;

- The market capitalization of the issuer immediately after the end of the class period;

- The types of securities (in addition to common stock) alleged to have been affected by the fraud;

- Variables that serve as a proxy for the merit of plaintiffs' allegations (e.g., whether the company has already been sanctioned by a government or regulatory agency or paid a fine in connection with the allegations);

- The stage of litigation at the time of settlement; and

- Whether an institution or public pension fund is named lead plaintiff (see Figure 23).

Among cases settled between January 2012 and December 2023, these factors in NERA's statistical model can explain over 70% of the variation observed in actual settlements.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 23.   **Predicted vs. Actual Settlements**
Investor Losses Using S&P 500 Index
Cases Settled January 2012–December 2023



# TRENDS IN PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES

Over the past 10 years, annual aggregate plaintiffs' attorneys' fees and expenses have ranged from a low of $489 million in 2017 to a high of $1.6 billion in 2016. In 2023, aggregate plaintiffs' attorneys' fees and expenses totaled $972 million, a slight decline from the $1.0 billion seen in 2022 (see Figure 24). Plaintiffs' attorneys' fees and expenses comprised roughly 24.9% of the $3.9 billion aggregate settlement value in 2023.

A historical analysis of plaintiffs' attorneys' fees and expenses for cases that have settled since the passage of the PSLRA in 1996 reveals that fees and expenses as a percentage of the settlement amount decline as the settlement size increases. For instance, for cases settled during the 2014–2023 period, median percent fees and expenses ranged from 36.1% in settlements of $5 million or lower to 18.6% in settlements of $1 billion or higher.

In the past 10 years, median percent attorneys' fees have increased for settlements under $5 million and for settlements over $500 million relative to the 1996–2013 period. This increase is more pronounced for settlements of $1 billion or higher, although this is partly due to this category having only five cases in the post-2013 period (see Figure 25).

Figure 24.    Aggregate Plaintiffs' Attorneys' Fees and Expenses by Settlement Size
January 2014–December 2023



Plaintiffs' attorneys' fees and expenses comprised roughly 24.9% of the $3.9 billion aggregate settlement value in 2023.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 25.   **Median of Plaintiffs' Attorneys' Fees and Expenses by Size of Settlement**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class



Note: Component values may not add to total value due to rounding.

# CONCLUSION

In 2023, federal filings increased by 11% from 206 in 2022 to 228 in 2023, ending a four-year period of annual declines in filings from 2019 to 2022. Of the 228 cases filed in 2023, 206 were standard cases with alleged violations of Rule 10b-5, Section 11, and/or Section 12, and 18.9% of standard cases were against foreign companies. Filings against companies in the information technology and technology services, health technology and services, and the finance sectors accounted for 59% of non-merger objections, non-crypto unregistered securities filings.

The number of resolved cases declined by 15% from 223 in 2022 to 190 in 2023. There were 90 settlements and 100 dismissals, marking the lowest level of both settlements and dismissals in the last 10 years. Excluding the presence of settlements of $1 billion or higher, the average settlement value for 2023 was $34 million and the median settlement value was $14 million. Aggregate settlements totaled $3.9 billion in 2023, with aggregate plaintiffs' attorneys' fees and expenses accounting for $972 million, or 24.9%, of the 2023 aggregate settlement value. Over the last 10 years, the median plaintiffs' attorneys' fees and expenses as a percentage of settlement value has ranged from 18.6% for settlements of $1 billion or higher to 36.1% for settlements of $5 million or lower.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

## NOTES

1   This edition of NERA's report on "Recent Trends in Securities Class Action Litigation" expands on previous work by our colleagues Lucy P. Allen, Dr. Vinita Juneja, Dr. Denise Neumann Martin, Dr. Jordan Milev, Robert Patton, Dr. Stephanie Plancich, Janeen McIntosh, and others. The authors thank Dr. David Tabak and Benjamin Seggerson for helpful comments on this edition. We thank Vlad Lee, Daniel Klotz, and other of NERA's securities and finance researchers for their valuable assistance. These individuals receive credit for improving this report; any errors and omissions are those of the authors. NERA's proprietary securities class action database and all analyses reflected in this report are limited to federal case filings and resolutions.

2   NERA tracks securities class actions that have been filed in federal courts. Most of these cases allege violations of federal securities laws; others allege violations of common law, including breach of fiduciary duty, as with some merger-objection cases; still others are filed in federal court under foreign or state law. If multiple actions are filed against the same defendant, are related to the same allegations, and are in the same circuit, we treat them as a single filing. The first two actions filed in different circuits are treated as separate filings. If cases filed in different circuits are consolidated, we revise our count to reflect the consolidation. Therefore, case counts for a particular year may change over time. Different assumptions for consolidating filings would probably lead to counts that are similar but may, in certain circumstances, lead observers to draw a different conclusion about short-term trends in filings. Data for this report were collected from multiple sources, including Institutional Shareholder Services, Dow Jones Factiva, Bloomberg Finance, FactSet Research Systems, Nasdaq, Intercontinental Exchange, US Securities and Exchange Commission (SEC) filings, complaints, case dockets, and public press reports. IPO laddering cases are presented only in Figure 1.

3   Federal securities class actions that allege violations of Rule 10b-5, Section 11, and/or Section 12 have historically dominated federal securities class action dockets and have often been referred to as "standard" cases. In the analyses of this report, standard cases involve registered securities and do not include cases involving crypto unregistered securities, which will be considered as a separate category.

4   In this study, crypto cases consist of two mutually exclusive subgroups: (1) crypto shareholder class actions, which include a class of investors in common stock, American depositary receipts/American depositary shares (ADR/ADS), and/or other registered securities, along with crypto- or digital-currency-related allegations; and (2) crypto unregistered securities class actions, which do not have class investors in any registered securities that are traded on major exchanges (New York Stock Exchange, Nasdaq). We include crypto shareholder class actions in all our analyses that include standard cases. Crypto unregistered securities class actions are excluded from some analyses, which is noted in the titles of our figures.

5   Most securities class action complaints include multiple allegations. For this analysis, all allegations from the complaint are included and thus the total number of allegations exceeds the total number of filings.

6   In our analysis, a company is defined as a foreign company based on the location of its principal executive office.

7   Class Action Complaint for Violations of the Federal Securities Laws, *In re Silvergate Capital Corporation Securities Litigation*, 7 December 2023.

8   Madeleine Ngo, "A Timeline of How the Banking Crisis Has Unfolded," *The New York Times*, 1 May 2023, available at https://www.nytimes.com/2023/05/01/business/banking-crisis-failure-timeline.html.

9   "Iowa Trust & Savings Bank, Emmetsburg, Iowa, Assumes All of the Deposits of Citizens Bank, Sac City, Iowa," FDIC Press Release, 3 November 2023, available at https://www.fdic.gov/news/press-releases/2023/pr23091.html.

10  "Dismissed" is used here as shorthand for all class actions resolved without settlement; it includes cases in which a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, or an ultimately unsuccessful motion for class certification.

11  Unless otherwise noted, the analyses in this section exclude the 2020 partial settlement involving Valeant Pharmaceuticals.

12  For our analysis, NERA includes settlements that have had the first settlement-approval hearing. We do not include partial settlements or tentative settlements that have been announced by plaintiffs and/or defendants. As a result, although we include the 2020 Valeant Pharmaceuticals partial settlement in Table 2 due to its settlement size, this case is not included in any of our resolution, settlement, or attorney fee statistics.

13  While annual average settlement values can be a helpful statistic, these values may be affected by one or a few very high settlement amounts. Unlike averages, the median settlement value is unaffected by these very high outlier settlement amounts. To understand what more typical cases look like, we analyze the average and median settlement values for cases with a settlement amount under $1 billion, thus excluding these outlier settlement amounts. For the analysis of settlement values, we limit our data to non-merger-objection and non–crypto unregistered securities cases with settlements of more than $0 to the class.

14  Jon Hill and Jessica Corso, "Wells Fargo Inks $1B Deal to End Investors' Compliance Suit," *Law360.com*, 16 May 2023, available at https://www.law360.com/articles/1677976/.

15  Lauren Berg, "Wells Fargo Investors Ink $300M Deal in Auto Insurance Suit," *Law360.com*, 7 February 2023, available at https://www.law360.com/articles/1573911/.

16  NERA-Defined Investor Losses is only calculable for cases involving allegations of damages to common stock based on one or more corrective disclosures moving the stock price to its alleged true value. As a result, we have not calculated this metric for cases such as merger objections.

## RELATED EXPERTS



**Edward Flores**
Senior Consultant
New York City: +1 212 345 2955
edward.flores@nera.com



**Svetlana Starykh**
Associate Director, Securities Class Actions Database
New York City: +1 914 448 4123
svetlana.starykh@nera.com



SUBSCRIBE

To receive publications, news, and insights from NERA, please visit
**www.nera.com/subscribe**.

*The opinions expressed herein do not necessarily represent the views of NERA or any other NERA consultant.*

## ABOUT NERA

Since 1961, NERA has provided unparalleled guidance on the most important market, legal, and regulatory questions of the day. Our work has shaped industries and policy around the world. Our field-leading experts and deep experience allows us to provide rigorous analysis, reliable expert testimony, and data-powered policy recommendations for the world's leading law firms and corporations as well as regulators and governments. Our experience, integrity, and economic ingenuity mean you can depend on us in the face of your biggest economic and financial challenges.



www.nera.com

© Copyright 2024
National Economic Research Associates, Inc.
All rights reserved. Printed in the USA.

# Exhibit 7E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SAN ANTONIO FIRE AND POLICE
PENSION FUND, FIRE AND POLICE
HEALTH CARE FUND, SAN ANTONIO,
PROXIMA CAPITAL MASTER FUND LTD.,
and THE ARBITRAGE FUND,

        Plaintiffs,

        v.

DOLE FOOD COMPANY, INC., DAVID H.
MURDOCK and C. MICHAEL CARTER,

        Defendants.

Civil Action No. 1:15-cv-1140-LPS

## [PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

This matter came on for hearing on July 18, 2017 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *The Wall Street Journal* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Amended Stipulation and Agreement of Settlement dated March 29, 2017 (D.I. 88-1) (the "Stipulation") and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3.      Notice of Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(a)(7)), due process, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 25% of the Settlement Fund and $638,890.06 in reimbursement of Plaintiffs' Counsel's litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution and settlement of the Action.

5.      In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a)      The Settlement has created a fund of $74,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Lead Counsel;

(b)     The fee sought by Lead Counsel has been reviewed and approved as reasonable by Lead Plaintiffs, institutional investors that oversaw the prosecution and resolution of the Action;

(c)     Copies of the Notice were mailed to over 28,000 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not exceed 25% of the Settlement Fund and reimbursement of Litigation Expenses in an amount not to exceed $1,300,000, and no objections to the requested attorneys' fees and expenses were received;

(d)     Lead Counsel conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(e)     The Action raised a number of complex issues;

(f)     Had Lead Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiffs and the other members of the Settlement Class may have recovered less or nothing from Defendants;

(g)     Plaintiffs' Counsel devoted over 16,000 hours, with a lodestar value of approximately $8,530,000, to achieve the Settlement; and

(h)     The amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.     Lead Plaintiff Proxima Capital Master Fund Ltd. is hereby awarded $18,500.00 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

7.     Lead Plaintiff San Antonio Fire and Police Pension Fund is hereby awarded $4,058.70 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly

3

related to its representation of the Settlement Class.

8.    Lead Plaintiff The Arbitrage Fund is hereby awarded $32,437.50 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

9.    Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

10.    Exclusive jurisdiction is hereby retained over the parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

11.    In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

12.    There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this _____ day of _____, 2017.

_____
The Honorable Leonard P. Stark
Chief United States District Judge

4

# Exhibit 7F

Case 1:04-cv-00831-SLR    Document 142    Filed 08/01/2008    Page 1 of 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **IN RE VERITAS SOFTWARE CORP.** | : | **Case No: 04-CV-831 (SLR)** |
| **SECURITIES LITIGATION** | : | **Consolidated Action** |
|  | : |  |
|  | : |  |
| **This Document Relates to:** | : |  |
|  | : |  |
| **ALL ACTIONS** | : |  |
|  | : |  |

## ORDER REGARDING AWARD PURSUANT TO
## 15 U.S.C. §78u-4(a)(4)

This matter having come before the Court on July 31, 2008, on Motion for an Application for an Award to Lead Plaintiffs Mark Leonov and Tay Siew Choon ("Lead Plaintiffs") pursuant to 15 U.S.C. §78u-4(a)(4), and the Court, having considered all papers filed and proceedings conducted herein, having found the settlement of this litigation to be fair, reasonable, and adequate, and otherwise being fully informed in the premises and good cause appearing therefore:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1.    Pursuant to 15 U.S.C. §78u-4(a)(4), Lead Plaintiffs are each awarded $15,000, to be paid from the Settlement Fund.

**SO ORDERED** this **5th** day of August, 2008.

_____
Judge Sue L. Robinson
United States District Court